WILMER CUTLER PICKERING
  HALE AND DORR LLP
BENJAMIN A. POWELL (SBN 214728)
  Benjamin.Powell@wilmerhale.com
DAVID W. BOWKER (SBN 200516)
  David.Bowker@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice pending*)
  Molly.Jennings@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:   (202) 663-6363

SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 600-5051
Facsimile:  (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

*Counsel for Defendants listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                Defendants. | Case No. 3:21-cv-09078-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Hearing Date: March 17, 2022<br>Time: 10:00 am<br>Judge: Hon. James Donato |

Pursuant to Civil Local Rule 16-9 and the Scheduling Order entered by the Court, Plaintiff Apple Inc. and Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (together, "Defendants"), respectfully submit this Joint Case Management Statement.

**1.     Jurisdiction and Service.**  Jurisdiction is contested, so the parties' respective positions are set forth below. The parties agree that Defendants have waived service. Dkt. No. 17.

**Plaintiff's Position:**  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1331, as this action alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a). This Court also has subject matter jurisdiction under 28 U.S.C. § 1367 over Apple's state law claims. Defendants' sovereign immunity argument lacks merit and is foreclosed by the Ninth Circuit's decision in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021). Even if Defendants could claim immunity as a general matter, which they cannot, this Court would still have subject matter jurisdiction because there are well-settled exceptions to immunity in cases of waiver, commercial activities, and torts in the United States.

This Court is the proper venue for this action. This is the forum where Apple is located and was attacked, abused, and otherwise injured. Moreover, Defendants agreed to Apple's iCloud Terms, which include a mandatory and exclusive choice of forum and jurisdiction in the courts of Santa Clara County, California. The existence of a binding and enforceable forum selection clause obviates the *forum non conveniens* analysis and requires that Defendants accept the jurisdiction of this Court. Even in the absence of that clause, Defendants' *forum non conveniens* argument would fail because the balance of the private and public factors weighs falls well short of satisfying Defendants' heavy burden of showing that those factors "strongly favor" dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118-19 (9th Cir. 2002). Defendants purposefully directed their unlawful conduct at Apple and its servers located in the United States and in this forum; Defendants caused harm to Apple in the United States and in this forum; Plaintiff, its witnesses, and much of the physical evidence are located in this district; and any judgment rendered by this Court would be enforceable in both the United States and in Israel. As to the public interest factors, the United States, California, and this Court have very strong interests in the enforcement of U.S. and California statutes enacted to prevent, deter, and punish computer fraud and abuse and other

torts; protect the victims of such misconduct; and ensure that victims receive adequate relief and redress from such wrongs. It also has greater familiarity than any foreign court as to the U.S. federal laws and California state laws governing Plaintiff's claims.

Defendants' arguments to the contrary lack merit. The Israeli government has never expressed any public interest in protecting Defendants from accountability in the United States for alleged computer fraud and abuse aimed at a U.S. company in violation of U.S. law. To the extent Israeli law is relevant to Defendants' arguments, this Court can interpret and apply foreign law as contemplated by Rule 44.1 of the Federal Rules of Civil Procedure.

**Defendants' Position:**

1. The Court lacks subject-matter jurisdiction because Defendants, as agents of foreign governments that acted entirely on behalf of those government customers, are entitled to common law sovereign immunity. Statement of Interest of the United States at 8, 10, *Matar v. Dichter*, No. 05-cv-10270 (S.D.N.Y. Nov. 17, 2006); *Belhas v. Ya'alon*, 515 F.3d 1279, 1285 (D.C. Cir. 2008); *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000). This argument was addressed by the Ninth Circuit in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021), but the Ninth Circuit has stayed its mandate while Defendants file a petition to the U.S. Supreme Court for a writ of certiorari. On that basis, Defendants assert this argument here.

2. Venue is improper, and the complaint should be dismissed for *forum non conveniens*. As explained in Defendants' Motion to Dismiss (Dkt. No. 28), this action has no material connection to California and should be brought in Israel. NSO's *forum non conveniens* argument is set out in its motion to dismiss (Dkt. No. 28) and summarized briefly below.

First, Israel is an adequate alternative forum because Defendants are amenable to process in Israel and Israel can provide some remedy for Apple's claims. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1225-26 (9th Cir. 2011). Second, the relevant factors favor Defendants. The burden on Defendants to litigate in California is great, Defendants' potential witnesses and evidence are located in Israel and will likely be unable or unwilling to testify in this Court, and no conduct Apple challenges was carried out by Defendants in California. California has little interest in this lawsuit beyond Apple's

residence, and Apple's "choice of forum must be discounted substantially because" Apple is a massive international corporation with "a significant business presence" in Israel. *Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *2 (N.D. Cal. May 4, 2009). Israel, in contrast, has strong national-security interests in a lawsuit against an Israeli defense-technology company, including protecting information governed by Israel's export control laws or related to the Israeli government's decisions whether to approve particular NSO customers.

### 2. Facts

**Plaintiff's Position:** Defendants NSO Group and Q Cyber are notorious hackers, renowned for their creation, development, and deployment of highly sophisticated and destructive spyware technology. Plaintiffs assert that Defendants designed, developed, tested, deployed, marketed, sold, operated, maintained, and facilitated the use of their technology to maliciously target and harm Apple users, Apple products, and Apple itself. Defendants knowingly sold and facilitated the use of their malware and spyware to enable clients to attack a significant number of victims, including journalists, activists, dissidents, and even U.S. citizens. Defendants' misconduct has resulted in the U.S. Government blacklisting NSO Group, and instigated calls around the world for the imposition of additional sanctions and investigations into the pervasive misuse of Defendants' products to commit human rights abuses and other violations of law.

Apple's commitment to product security and privacy is at the core of its products and services—and one of the reasons why Apple's customers continue to invest in and rely upon Apple products and services. In light of Apple's formidable security features and defenses, it is very difficult to deploy Pegasus on any individual Apple device. Nonetheless, NSO has developed, tested, marketed, sold, deployed, used, and serviced Pegasus to enable targeting of Apple equipment and devices in order to surveil Apple users, including those of human rights activists and journalists. From at least February through September 2021, Defendants enabled and facilitated the deployment of their Pegasus spyware through an exploit that security researchers named "FORCEDENTRY." Unlike exploits that require some action by the victim for the victim's device to be compromised, FORCEDENTRY is a "zero-click" exploit, meaning that Defendants or their clients can hack into the victim's device without any action—or awareness—by the victim.

Apple has reason to believe that Defendants created or facilitated the creation of more than one hundred Apple IDs using Apple's systems and servers to deploy FORCEDENTRY. After obtaining these Apple IDs, Apple understands that Defendants executed or facilitated the execution of the FORCEDENTRY exploit first by using their computers to contact Apple servers in the United States and abroad to identify other Apple devices. After confirming that a target was using an Apple device, Defendants would then send abusive data through Apple servers in the United States and abroad using Apple's iMessage service. The abusive data would disable logging on a targeted Apple device so that Defendants could surreptitiously deliver the Pegasus payload via a larger file. That larger file would be temporarily stored in an encrypted form unreadable to Apple on one of Apple's iCloud servers in the United States or abroad for delivery to the target. Once Pegasus was installed, cybersecurity researchers report that Pegasus would begin transmitting personal data to a command-and-control server supplied by Defendants and operated by either Defendants or their clients. The operator was then able to issue commands to the device, including turning on the device's microphone or camera to record.

Defendants' exploitative activities have harmed Apple users and damaged Apple's goodwill, products, and property. Apple has devoted thousands of hours to investigate Defendants' attacks, diagnose the extent of the impact and exploitation, and develop and deploy the necessary patches to ensure that Apple servers, products, platforms, and applications remain safe and secure for the more than a billion individuals and entities who comprise the global Apple community.

**Defendants' Position:** Defendants are not hackers. NSO is an Israeli technology company that designs and markets a highly-regulated technology to government agencies for use in counterterrorism investigations and the investigations of child exploitation, cartel drug trafficking, and other serious crimes. Q Cyber, also an Israeli corporation, is NSO's sole director and majority shareholder. Defendants have no offices, employees, or other presence in California.

Defendants license their technology exclusively to government agencies for use in investigating and preventing terrorism and serious crime. Violent criminals and some of the world's most brutal and dangerous terrorists use Apple's services to plan and execute their crimes, while Apple disclaims responsibility and leaves it to others—governments and innocent victims—

to deal with the crimes Apple facilitates. NSO's technology allows government agencies to prevent serious crimes and terrorism that Apple's technology would otherwise facilitate. The export of NSO's technology is regulated under Israel's Defense Export Control Law, and Defendants' customers are exclusively governments and their authorized agencies.

NSO's contracts with its customers require the customers to agree that they will use NSO's technology only for the prevention or investigation of serious crimes and terrorism, and that they will immediately notify NSO of any potential misuse. Defendants contractually can suspend or terminate—and *have* suspended and terminated—service to customers engaged in improper use of NSO's technology outside these parameters. Moreover, Israel may deny or revoke export licenses if the Israeli government learns of an abuse of the technology or non-compliance with the intended use, such as using the technology to violate human rights. NSO's technology also includes technical safeguards, such as general and customer-specific geographic limitations. For example, NSO's Pegasus technology cannot be used against U.S. mobile phone numbers or against a device within U.S. geographic bounds.

Apple's allegations about Defendants' conduct are false. Most importantly, Defendants do not operate their technology to surveil devices of third parties. Instead, the technology is operated exclusively by Defendants' government customers, with NSO acting in a purely tech-support capacity at its customers' direction. If any of Defendants' government customers installed NSO's technology on any particular device, then that government would have been acting on its own behalf—without Defendants' involvement. Defendants do not participate in any customer's installation of NSO's technology on any device. If a government ever misused NSO's technology to investigate Apple users other than serious criminals or terrorists, it would have been a violation of that government's contract with NSO.

If anyone installed technology on any third-party Apple user's devices, therefore, it was not Defendants. And notably, Apple does not claim that Defendants unlawfully accessed any computer owned by Apple. Apple claims ownership only over its operating system, which is software, not a computer.

**3.    Legal Issues**

1. Whether Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a);
2. Whether Defendants violated California's Business and Professions Code § 17200;
3. Whether Defendants breached the iCloud Terms;
4. Whether Defendants' alleged conduct constitutes unjust enrichment;
5. Whether Defendants are immune under common-law conduct-based immunity;
6. Whether Defendants' government customers are required parties under Rule 19;
7. Whether venue is proper in this District; and
8. Whether Apple can assert unjust enrichment as a separate cause of action or seek equitable relief.

**4. Motions.** Apple's motion for admission of Molly Jennings *pro hac vice* is pending. Dkt. No. 6.

Defendants filed their motion to dismiss on March 3, 2022. Dkt. No. 28. Apple will file its opposition by April 18, 2022, and Defendants will file their reply by May 18, 2022. Dkt. No. 27.

If necessary, Defendants anticipate filing a motion to stay discovery pending their petition for certiorari in the *WhatsApp* litigation. If the parties cannot agree to a stipulated protective order, Defendants will move for the entry of a protective order.

The parties also anticipate that there will be further motions, including dispositive motions, motions to exclude expert testimony, and motions in limine. The parties reserve the right to file other motions not identified in this section.

**5. Amendment of Pleadings.** Apple has not amended the complaint under Federal Rule of Civil Procedure 15(a)(1)(A). Apple reserves the right to amend its complaint under Fed. R. Civ. P. 15(a)(1)(B), and to seek leave to amend the complaint as needed.

**6. Evidence Preservation.** The parties each separately certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The parties met and conferred as required by Rule 26(f) on January 31, 2022, and addressed in detail the requirements to preserve relevant evidence.

**7. Disclosures**

**Plaintiff's Position:** Apple planned to produce its initial disclosures by the deadline set

forth in the Court's standing order. Prior to that deadline, however, Defendants informed Apple that they could not provide initial disclosures until a protective order had been entered. Apple accordingly proposed that the parties exchange initial disclosures on an outside counsel's eyes only basis pending entry of a protective order. Despite that accommodation, Defendants continued to maintain that they do not intend to provide initial disclosure until after their motion to dismiss is decided. Defendants' position is unacceptable. Discovery is not presently stayed, and Defendants have an obligation to produce initial disclosures. Apple needs Defendants' initial disclosures to assist it in forming appropriate discovery requests, making strategic decisions, and adhering to other deadlines in the case. Apple willing to work with Defendants on a reasonable protective order – but cannot do so until Defendants provide the draft they promised during the January 31 Rule 26(f) conference.

Notwithstanding Defendants' refusal to exchange the disclosures as required by the Federal Rules and this Court's standing order, Apple served its Initial Disclosures on March 4, 2022.

**Defendants' Position:**  Defendants objected to making initial disclosures in the parties' initial case management statement, on the ground that initial disclosures are not appropriate before the Supreme Court resolves Defendants' petition for certiorari in the *WhatsApp* litigation and this Court resolves the jurisdictional and venue issues Defendants have raised in their motion to dismiss. Apple then proposed—without being asked by Defendants—to extend the deadline for initial disclosures. Defendants never represented that their objection was only to the deadline for disclosures or only to providing disclosures without a protective order. Nor did Defendants ever represent that they would provide initial disclosures if a protective order were entered, and any suggestion otherwise is false. Instead, Defendants maintained their objection, following which Apple unilaterally served its disclosures on March 4, 2022. Defendants are currently subject to other legal obligations that affect their ability to provide disclosures even on an outside counsel's eyes–only basis.

**8.**     **Discovery.**  The parties have not propounded any discovery. The parties have discussed the need for a protective order and intend to make a joint stipulation for the Court's consideration. The parties also plan to negotiate and submit a stipulated e-discovery order.

**Plaintiff's Position:** Apple is awaiting a draft protective order, which Defendants said during the Rule 26(f) conference that they would provide. Apple intends to seek documents and testimony from the Defendants regarding, among other things: Defendants' development, testing, marketing, and selling of the FORCEDENTRY exploit and/or Pegasus and other exploits or products targeting Apple servers, equipment, and devices; Defendants' use or deployment of the FORCEDENTRY exploit and/or Pegasus, and any other exploits or products, against Apple servers, equipment, and devices and/or Apple users; Defendants' interactions with their clients in connection with the use or deployment of FORCEDENTRY and/or Pegasus, and any other exploits or products, against Apple servers, equipment, and devices and/or Apple users; the identities of Defendants' clients and victims; representations Defendants made concerning FORCEDENTRY and/or Pegasus and/or other exploits or products; the relationship between NSO Group and Q Cyber; revenue and profits earned from Pegasus and/or other exploits or products; NSO's reported purchase of critical components from the United States; NSO's contacts with U.S.-based clients and potential clients; and financing NSO has received from U.S.-based entities.

**Defendants' Position:** Defendants do not believe that discovery is appropriate until the Supreme Court resolves their petition for certiorari in the *WhatsApp* litigation and this Court resolves the jurisdictional and venue issues raised in Defendants' motion to dismiss. In any event, the discovery Apple claims to seek is overbroad and unreasonable and includes information that is not relevant to Apple's allegations, information that is not within Defendants' custody or control, and/or information that Defendants are prohibited from disclosing under applicable law. Until the parties agree to a protective order and Apple serves actual, targeted discovery requests, Defendants cannot determine whether they will be able or willing to produce the information Apple describes.

9. **Class Action.** This case is not a class action.

10. **Related Cases.** The parties are not aware of any cases that satisfy the standard for relation in L.R. 3-12(a). The parties do, however, wish to bring to the Court's attention *WhatsApp LLC et al. v, NSO Group Technologies Limited, et al.*, No. 4:19-cv-7123-PJH (N.D. Cal.), which involves some legal and factual issues that overlap with this case.

11. **Relief**

**Plaintiff's Position:** Apple seeks compensatory damages based on the thousands of hours it spent investigating the attacks, remediating them, and notifying affected users. The formula for calculating those damages includes (but may not be limited to) the total number of hours spent and the value of those hours, which is based on, *inter alia*, the fully-loaded salary expenses for the relevant individuals and the time spent by each individual. The product of this damages formula exceeds the $75,000 minimum for diversity jurisdiction. Apple may rely on expert testimony to calculate the fully-loaded value of those hours. Apple's damages also include hard costs associated with the investigation. Apple provided further detail on its damages computation and supporting evidence in its Initial Disclosures, which it served on March 4. Apple continues to sustain damages, which must be added to this computation, because on information and belief Defendants continue their abusive and illegal conduct against Apple. Apple is also seeking punitive damages, an accounting of each Defendant's profits, and disgorgement of the profits associated with Defendants' illegal attacks on Apple, of which the amounts will be informed by discovery. Apple has suffered additional harms described in the Complaint and also seeks injunctive relief.

**Defendants' Position:** Plaintiffs' statement of the relief sought is inadequate because it does not identify "the amount of any damages sought"—as the Court's Standing Order requires—other than the bare statement that it exceeds $75,000. Defendants contend that Apple is not entitled to most of the damages described in its statement. Apple is also not entitled to the equitable remedy of disgorgement because it seeks an adequate legal remedy. Apple's requested injunction seeks relief that only Defendants' government customers can provide, making those customers required parties under Rule 19.

**12. Settlement and ADR.** No settlement discussions have occurred. The parties discussed ADR during the Rule 26(f) conference and elected to discuss options during the CMC.

**13. Consent to Magistrate Judge For All Purposes.** The parties do not consent to proceed before a magistrate judge for all purposes.

**14. Other References.** This case is not suitable for reference to arbitration, a special master, or the JPML.

**15. Narrowing of Issues.** The parties do not believe that any issues can be narrowed

by agreement at this time.

**16.** **<u>Expedited Trial Schedule.</u>** The parties agree that this case is not amenable to the Expedited Trial Procedure.

**17.** **<u>Scheduling</u>**

**Plaintiff's position:** Apple respectfully proposes the following pretrial schedule:

| Event | Deadline |
|---|---|
| Fact discovery cut-off | December 9, 2022 |
| Expert Disclosures | January 18, 2023 |
| Responses to Expert Disclosures | February 17, 2023 |
| Expert discovery cut-off | March 10, 2023 |
| Last day to file dispositive and *Daubert* motions | April 10, 2023 |
| Summary judgment opposition due | May 10, 2023 |
| Summary judgment replies due | June 9, 2023 |
| Pretrial conference | July 13, 2023 |
| Jury Trial | August 7, 2023 |

**Defendants' Position:** Defendants believe the Court should hold a further conference to set the pretrial schedule only if and after the Court determines that is has subject-matter jurisdiction and that venue is appropriate in this District. If the Court wishes to set a pretrial schedule at the initial case-management conference, Defendants do not believe discovery can reasonably be completed before December 2023 due to the potential for an extended motion-briefing schedule, the multi-jurisdictional nature of the discovery in this case, and the need for the involvement of multiple third parties. Israeli law will also impose delays and restrictions on Defendants' production of evidence. After the Court enters a protective order, Defendants will be able to describe in more detail the basis for its position. Otherwise, Defendants believe the spacing of deadlines proposed by Apple to be generally reasonable.

**18.** **<u>Trial.</u>** Apple requests a jury trial and estimates that the trial will take two weeks.

**19.** **<u>Disclosure of Non-Party Interested Entities or Persons.</u>** Both parties have filed their disclosures and recertify the truth of those disclosures.

**20.** **<u>Professional Conduct.</u>** All attorneys of record have reviewed the District's Guidelines for Professional Conduct.

| | | |
|---|---|---|
| 1 | Dated: March 10, 2022 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2 | | |
| 3 | | By: */s/* David W. Bowker<br>DAVID W. BOWKER |
| 4 | | |
| 5 | | *Attorneys for Plaintiff*<br>APPLE INC. |
| 6 | Dated: March 10, 2022 | |
| 7 | | KING & SPALDING LLP |
| 9 | | By:   */s/* Joseph N. Akrotirianakis<br>JOSEPH N. AKROTIRIANAKIS |
| 11 | | *Attorneys for Defendants*<br>NSO GROUP TECHS. LTD. and Q CYBER TECHS. LTD. |

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatories have concurred in this filing.

Dated: March 10, 2022       By:   */s/* David W. Bowker
                                          David W. Bowker