WILMER CUTLER PICKERING
  HALE AND DORR LLP
BENJAMIN A. POWELL (SBN 214728)
  Benjamin.Powell@wilmerhale.com
DAVID W. BOWKER (SBN 200516)
  David.Bowker@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice pending*)
  Molly.Jennings@wilmerhale.com
JULIAN M. BEACH (SBN 312988)
  Julian.Beach@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000

SONAL N. MEHTA (SBN 222086)
  Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone: (650) 600-5051

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>   v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>                    Defendants. | Case No. 3:21-cv-09078-JD<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: June 2, 2022<br>Hearing Time: 10:00 a.m.<br>Judge: Hon. James Donato |

1

## **TABLE OF CONTENT**

2
Page

3
TABLE OF AUTHORITIES ............................................................................................ ii

4
FACTUAL BACKGROUND ........................................................................................2

5
ARGUMENT ................................................................................................................3

6
I.      Defendants' Immunity Defense is Foreclosed by Ninth Circuit Precedent .........................3

7
II.     This Court is the Proper Venue for this Litigation .............................................................4

8
III.    Defendants' Unidentified Customers Are Not Indispensable Parties................................9

9
IV.     Defendants' Creation And Use Of Abusive Exploits Violated The CFAA.......................10

10

11
V.      Defendants' CFAA Violations Also Violate The California UCL's
        Unlawful Prong......................................................................................................13

12
VI.     Apple Adequately States a Claim in the Alternative for Unjust Enrichment ...................15

13
CONCLUSION............................................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**TABLE OF AUTHORITIES**</u>

2

Page(s)

3

### **CASES**

4
*Adobe Systems Inc. v. Blue Source Group, Inc.*,
  125 F. Supp. 3d 945 (N.D. Cal. 2015) ...............................................................14

5
*Air Turbine Technology, Inc. v. Atlas Copco AB*, 217 F.R.D. 545 (S.D. Fla. 2003) ......................7

6
*Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (Fed. Cir. 2013)....................................14

7
*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)..................................................12

8
*Argoquest Holdings, LLC v. Israel Discount Bank, Ltd.*,
9  228 F. App'x 733 (9th Cir. 2007) ........................................................................5

10
*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015)............................................15

11
*Atlantic Marine Construction Co. v. United States District Court for Western*
12  *District of Texas*, 571 U.S. 49 (2013) ................................................................4

13
*AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174 (E.D. Cal. 2010) ..........................12

14
*Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) ...........................................................13

15
*Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008)........................................................................4

16
*Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1986)................................................................................4

17
*Bloate v. United States*, 559 U.S. 196 (2010) ................................................................................12

18
*Broidy Capital Management, LLC v. Qatar*, No. 18-cv-2421-JFW,
19  2018 WL 6074570 (C.D. Cal. Aug. 8, 2018).......................................................9

20
*Butters v. Vance International, Inc.*, 225 F.3d 462 (4th Cir. 2000).................................................4

21
*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011)......................................6

22
*Cave Consulting Group, Inc. v. Truven Health Analytics Inc.*,
23  No. 15-cv-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017)...............................14

24
*Clarke v. Pacific Gas & Electric Co.*, 501 F. Supp. 3d 774 (N.D. Cal. 2020) ............................14

25
*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
  918 F.2d 1446 (9th Cir. 1990) ............................................................................7

26
*Dawavendewa v. Salt River Project*, 276 F.3d 1150 (9th Cir. 2002) .............................................9

27
*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)................................................................6

28

*Dongxiao Yue v. Chun-Hui Miao*, No. 18-3467-MGL-PJG,
    2019 WL 5872142 (D.S.C. June 27, 2019)............................................................14

*EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010)............................................9

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016)........................................12

*Facebook, Inc. v. Rankwave Co.*, No. 19-cv-03738-JST,
    2019 WL 8895237 (N.D. Cal. Nov. 14, 2019) ..............................................................6

*Facebook, Inc. v. Studivz Ltd.*, No. C-08-3468-JF,
    2009 WL 1190802 (N.D. Cal. May 4, 2009) ..................................................................8

*Fahrner-Miller Associates, Inc. v. Mars Antennas & RF Systems, Ltd.*,
    No. 14-cv-03668-PSG, 2014 WL 6871550 (N.D. Cal. Dec. 4, 2014) ..............................6

*Flextronics International, Ltd. v. Parametric Technology Corp.*,
    No. 13-cv-00034-PSG, 2014 WL 2213910 (N.D. Cal. May 28, 2014) ..........................12

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984)......................................................8

*Gerritsen v. Warner Brothers Entertainment Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) ......................................................................10

*Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ...........................................................................4, 6, 7

*In re California Gasoline Spot Market Antitrust Litigation*, No 20-cv-03131-JSC,
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)..............................................................15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
    Liability Litigation*, MDL No. 15-md-02672-CRB,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .....................................................................7

*Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651 (C.D. Cal. 2007) ..............................6

*Kimberlite Corp. v. John Does 1-20*, No. C08-2147-TEH,
    2008 WL 2264485 (N.D. Cal. June 2, 2008) ..............................................................12

*Lundy v. Facebook Inc.*, No. 18-cv-06793-JD,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ............................................................15

*Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010) ............................12

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) ............................12

*Nowak v. Xapo, Inc.*, No. 20-cv-03643-BLF,
    2020 WL 6822888 (N.D. Cal. Nov. 11, 2020) ............................................................12

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) ..............................................................................6

*Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009) ....................................................5

*Sajfr v. BBG Communications, Inc.*, No. 10-cv-2341-AJB,
    2012 WL 398991 (S.D. Cal. Jan. 10, 2012) ...................................................14

*San Francisco Herring Ass'n v. Pacific Gas & Electric Co.*,
    No. 14-cv-04393-WHO, 2020 WL 6736930 (N.D. Cal. June 15, 2020) .........................15

*Shierkatz Rllp v. Square, Inc*., No. 15-cv-02202-JST, 2015 WL 9258082
    (N.D. Cal. Dec. 17, 2015) ...................................................5

*Shular v. United States*, 140 S. Ct. 779 (2020) ....................................................13

*Silicon Labs Integration, Inc. v. Melman*, No. C-08-0430-RMW,
    2009 WL 2044663 (N.D. Cal. July 9, 2009) ...................................................8

*Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011) ....................................................14

*Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981) ....................................................8

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) ...................................1, 10, 11

*Ticketmaster L.L.C. v. Prestige Entertainment West, Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...................................................12

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016) ....................................................5

*United States v. Gomez Lopez*, 62 F.3d 304 (9th Cir. 1995) ....................................................3

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) ....................................................13

*Van Buren v. United States*, 141 S. Ct. 1648 (2021) ...................................1, 12, 13

*WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021) ....................3, 4

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ...................................7, 9, 10, 11, 12

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
    407 F. Supp. 3d 931 (S.D. Cal. 2019) ...................................................5

*Yes To, Ltd. v. Hur*, 779 F. Supp. 2d 1054 (N.D. Cal. 2011) ....................................................5

## STATUTES AND RULES

18 U.S.C. § 1030(a)(5) ....................................................11

18 U.S.C. § 1030(e)(8) ...................................................10, 11

18 U.S.C. § 1030(e)(11) ....................................................12

18 U.S.C. § 1030(g) ....................................................10

28 U.S.C. §1603 ..................................................................................................................3

28 U.S.C. §1605 ..................................................................................................................3

Fed. R. Civ. P. 37(d)(1)(A) ................................................................................................7

Fed. R. Civ. P. 44.1 ............................................................................................................8

The Motion to Dismiss ("Motion") should be denied because Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited are twenty-first century mercenaries who have created sophisticated cyber-surveillance machinery targeting Apple, a U.S. company based in this jurisdiction.  Apple has rights under U.S. law, California law, and binding Terms of Service to redress in this Court for its injuries.

Defendants claim to have the sovereign immunity of the government customers that purchase their hacking tools, but the Ninth Circuit rejected that very argument when these same Defendants made it in a similar computer fraud and abuse case.  And for good reason.  Private companies engaged in computer fraud and abuse for profit have no claim to the immunity that U.S. law grants to foreign states for their sovereign acts.  In any case, Defendants waived any jurisdictional objections when they affirmatively agreed to Apple's Terms of Service and thereby agreed to exclusive jurisdiction in this Court.

Defendants' *forum non conveniens* argument fares no better.  The relevant public and private factors overwhelmingly favor this Court as the proper forum and, in any case, Defendants waived any claim to convenience when they affirmatively agreed that jurisdiction in this Court is both mandatory and exclusive.

Defendants' "indispensable parties" argument also fails because every issue in this litigation can be adjudicated between Apple and the Defendants, without the involvement of any of Defendants' government customers.  Indeed, this Court can afford complete relief by awarding damages and enjoining Defendants' conduct without binding or requiring action by any third party.

Defendants are also wrong that Apple cannot bring a CFAA claim for unlawful access to devices owned by its users.  The Ninth Circuit has rejected that crabbed reading of the CFAA, recognizing that "[i]ndividuals other than the computer's owner may be proximately harmed by unauthorized access."  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).  Similarly, Defendants' contention that Apple has not alleged cognizable "damage" or "loss" under the CFAA is based on an implausible statutory interpretation that is both untethered to the Complaint's actual allegations and foreclosed by Supreme Court precedent.  *Van Buren v. United States*, 141 S. Ct. 1648, 1659-1660 (2021).  Defendants' violations of the CFAA also suffice to establish an

independent claim under California's unfair competition law, which creates a private cause of action for the victims of an "unlawful … business act or practice."  And finally, courts in this circuit, including this one, have recognized a cause of action for unjust enrichment seeking equitable remedies pled in the alternative to breach of contract.

## FACTUAL BACKGROUND

Since NSO's founding in 2010, Defendants have been in the business of computer hacking and surveillance, accomplished by targeting and infecting computers, smartphones, and other devices—including Apple's.  Compl. ¶¶ 2, 40.  Defendants' flagship hacking tool, "Pegasus," is capable of commandeering a device's camera and microphone and revealing any personal data it contains.  *Id.* ¶¶ 41-42.  Defendants invest enormous time and resources researching, developing, and deploying hacks, also known as "exploits," tailor-made to install its Pegasus software on Apple devices.  *Id.* ¶¶ 45-47.  Defendants' products and services are routinely deployed against government officials, journalists, human rights activists, academics, and even U.S. diplomats.  *See id.* ¶¶ 2, 12, 42-44.  NSO's conduct has thus led to widespread condemnation by the international community, including sanctions imposed by the U.S. Commerce Department for "enabl[ing] foreign governments to conduct transnational repression" and commit human rights abuses.  *See id.* ¶ 3.  Even after government customers purchase Defendants' hacking wares, Defendants remain involved in deployment of their spyware through every step of the Pegasus lifecycle, from design and development to testing, demonstrating, training, consulting and providing technical assistance in coordinating attacks on Apple devices, servers, and users.  *Id.* ¶ 52.

In March 2021, cybersecurity researchers detected a new exploit on Apple devices, which they named "FORCEDENTRY."  Compl. ¶¶ 48-49.  FORCEDENTRY is a "zero-click" exploit, which allows Defendants to hack into an Apple device without any action or awareness by the user.  *Id.* ¶ 49.  Defendants accomplished these attacks by creating Apple IDs and contacting Apple servers in the United States and abroad to identify and target protected computer devices.  *Id.* ¶¶ 50-51.  In creating these Apple IDs, Defendants affirmatively agreed to the iCloud Terms of Service ("iCloud Terms") for each account.  *Id.* ¶¶ 46, 51.  Defendants then sent abusive data through iMessage to disable critical security operations within the iOS software long enough to

deliver the Pegasus payload. *Id.* ¶ 51. To render the spyware, these exploits accessed both device hardware, such as the iPhone's microphones and cameras, and the iOS operating system on user's devices. *Id.* ¶ 41, 67. Once installed, Pegasus would transmit sensitive personal data to a command-and-control server operated by Defendants (or their clients with Defendants' assistance and support). *Id.* ¶ 52.

Apple has incurred substantial losses from these unauthorized hacking activities. For example, Apple was required to divert engineers from across the company and expend thousands of hours and significant company resources investigating, analyzing, reverse-engineering, and remediating Defendants' FORCEDENTRY exploit together with anticipatory measures to update Apple systems' defenses to prevent future unauthorized access and attacks. Compl. ¶¶ 54, 56-61. Even today, Apple continues to discover harm to its proprietary servers and systems, as well as user devices, and suffers ongoing damage to its reputation. *Id.* ¶¶ 59-61.

## ARGUMENT

### I. Defendants' Immunity Defense is Foreclosed by Ninth Circuit Precedent.

Defendants have no claim to sovereign immunity. It is undisputed that NSO and Q Cyber, two private corporations organized in Israel, are neither states nor agencies or instrumentalities of states, and thus enjoy no protection under the Foreign Sovereign Immunities Act. *See* 28 U.S.C. §§ 1603, 1605. The Ninth Circuit recently held that NSO, "a private corporation that provides products and services to sovereigns … is not entitled to the protection of foreign sovereign immunity." *WhatsApp Inc. v. NSO Grp. Tech. Ltd.*, 17 F.4th 930, 940 (9th Cir. 2021) (rejecting foreign official immunity), *petition for cert. filed*, No. 21-1338 (U.S. Apr. 8, 2022). As Defendants concede, Mot. 5 n.2, the *WhatsApp* decision binds this court and forecloses Defendants' immunity arguments.[1]

Even if the common-law immunity Defendants claim could apply to private entities, Defendants would not qualify for it. An agent of a foreign state is entitled to such immunity only

---

[1] Defendants' petitions for rehearing and rehearing *en banc* were denied, and the Ninth Circuit's opinion is binding notwithstanding a stay of the mandate. *See United States v. Gomez Lopez*, 62 F.3d 304, 306 (9th Cir. 1995).

1   (1) "with respect to acts performed in his official capacity" (2) where "the effect of exercising

2   jurisdiction would be to enforce a rule of law against the state." *Belhas v. Ya'alon*, 515 F.3d 1279,

3   1285 (D.C. Cir. 2008) (quotations omitted (cited Mot. 5))).[2]  Defendants did not act in any "official

4   capacity" on behalf of any foreign state; to the contrary, they acted on their own behalf according

5   to commercial contracts with state clients.  Mot. 2-3.  Furthermore, nothing about the exercise of

6   subject matter jurisdiction here would involve enforcing a rule of law against any state—only

7   against Defendants themselves.  Finally, even if Defendants had a legitimate claim to immunity—

8   which they do not—it would not protect them here because they waived any immunity or other

9   jurisdictional objection when they affirmatively agreed to this Court's mandatory, exclusive

10  jurisdiction as part of Apple's Terms of Service.  *See infra* pp. 4-5.

11  **II.    This Court is the Proper Venue for this Litigation.**

12      The doctrine of *forum non conveniens*, "'an exceptional tool to be employed sparingly,'"

13  *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101,

14  1111 (9th Cir. 2020), is no help to Defendants here.  Defendants consented to litigate in this forum

15  when they agreed to the iCloud Terms, which provide for mandatory and exclusive jurisdiction

16  here.  Defendants also fall far short of carrying their burden to show that "'the balance of private

17  and public interest factors favors dismissal.'"  *Id.*[3]

18          A.  *The iCloud Terms Foreclose Defendants' Forum Non Conveniens Argument.*

19      Defendants do not dispute that they agreed to the iCloud Terms, which contain a binding

20  forum-selection clause.  "[W]hen the parties' contract contains a valid forum-selection clause, that

21  clause 'represents [their] agreement as to the most proper forum,' and should be 'given controlling

22  weight in all but the most exceptional cases.'"  *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for

23  W. Dist. of Texas*, 571 U.S. 49, 51 (2013) (citations omitted).  In *forum non conveniens* cases,

24

25  _____

26  [2] Defendants' reliance on *Butters v. Vance International, Inc.*, 225 F.3d 462 (4th Cir. 2000), is
    equally misplaced; as the Ninth Circuit has already held, *Butters* does not suggest that any form
27  of common-law immunity could "extend to foreign contractors acting on behalf of foreign
    states."  *WhatsApp*, 17 F.4th at 939 n.6.

28  [3] By not contesting personal jurisdiction in their motion, Defendants have waived any personal-
    jurisdiction defense.  *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

1   "[t]he practical result is that forum-selection clauses will almost always control." *White Knight*

2   *Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 943 (S.D. Cal. 2019).

3   Defendants agreed to the iCloud Terms when they created Apple IDs.[4] Compl. ¶¶ 22, 50-

4   51. Under those terms, Defendants "agree[d] to submit to the personal and exclusive jurisdiction

5   of the courts located within the county of Santa Clara, California, to resolve any dispute or claim

6   arising from this Agreement." Compl. Ex. 1 at 19. Apple's breach of contract claim "aris[es]"

7   directly from the iCloud Terms. Compl. ¶¶ 87-89; *see White Knight Yacht*, 407 F. Supp. 3d at 944

8   (breach of contract claims "paradigmatically fall within a contractual forum selection clause").

9   And Plaintiff's CFAA, unjust enrichment, and unfair competition causes of action likewise arise,

10  in part, out of Plaintiff's misuse of Apple IDs, systems, and services governed by the iCloud Terms.

11  *See* Compl. ¶¶ 66-67, 75-76, 81-82, 89.

12  Courts routinely enforce such clauses. In *Yes To, Ltd. v. Hur*, for example, the court

13  enforced a forum-selection clause that—like Apple's—designated the courts of a specified

14  California county as "the exclusive venue" for certain disputes. 779 F. Supp. 2d 1054, 1056 (N.D.

15  Cal. 2011); *see also White Knight Yacht*, 407 F. Supp. 3d at 943 (enforcing clause stating "this

16  insurance is subject to the law and practice of England and Wales and to the exclusive jurisdiction

17  of the Courts of England and Wales" (emphasis omitted)). By contrast, Defendants have not

18  identified a single *forum non conveniens* dismissal in favor of Israel over a valid forum-selection

19  clause. Though they suggest (Mot. 5-6) that courts "'routinely … dismiss cases on the grounds

20  that it would be more appropriate to hear a case in Israel,'" each of those cases supports Apple

21  because they involved a forum-selection clause that ***mandated that the parties bring their disputes***

22  ***in Israel***. *See Argoquest Holdings, Inc. v. Israel Discount Bank, Ltd.*, 228 F. App'x 733 (9th Cir.

23

24  ---

    [4] Defendants have not contested the applicability of the iCloud Terms, presumably because

25  standardized terms of service are binding on sophisticated parties that voluntarily agree to such
    terms when they sign up for services. *See, e.g., Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028

26  (9th Cir. 2016); *Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, at *9 (N.D. Cal. Dec. 17,
    2015) (rejecting unconscionability challenge from "highly sophisticated" parties); *Roman v.*

27  *Superior Court*, 172 Cal. App. 4th 1462, 1471 & n.2 (2009) (parties that voluntarily agreed to
    terms can claim only "minimal" oppression). Here, Defendants acted voluntarily and repeatedly

28  agreed to the iCloud Terms as part of their unlawful hacking. Compl. ¶¶ 22, 86.

2007) (contract stated that "the sole forum would be the courts of Israel"); *Fahrner-Miller Associates, Inc. v. Mars Antennas & RF Sys., Ltd.*, 2014 WL 6871550, at *1 (N.D. Cal. Dec. 4, 2014) (agreement provided that "[a]ny litigation resulting from this agreement may take place only in a court of competent jurisdiction situated in Israel."); *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 661 (C.D. Cal. 2007) (plaintiff was an Israeli citizen who had entered into a foreign forum selection clause).

> B. *The Forum Non Conveniens Factors Weigh Against Dismissal.*

In any case, the public and private factors weigh overwhelmingly in favor of this Court as the proper forum. To obtain a *forum non conveniens* dismissal, "'a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal.'" *Global Commodities*, 972 F.3d at 1111. Defendants have not, and cannot, show that "the 'private interest' and 'public interest' factors **strongly favor**" Israel over this forum. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118-1119 (9th Cir. 2002) (emphasis added).

**Private-Interest Factors.** The private-interest factors—which focus on the forum's convenience to the parties, including access to evidence and witnesses—weigh in favor of maintaining this dispute in California. It is well-established that there is a "strong presumption in favor of the plaintiff's choice of forum," particularly where the plaintiff is a "resident or citizen plaintiff[]" and "has chosen the home forum." *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-256 (1981). This is true even where the plaintiff is a multinational corporation. *See, e.g., Facebook, Inc. v. Rankwave Co.*, 2019 WL 8895237, at *10 (N.D. Cal. Nov. 14, 2019). Buttressing that presumption are the facts that Apple is headquartered in California, was attacked and suffered injury in this forum, and has witnesses and evidence in this forum. Compl. ¶¶ 15, 54-61.

Meanwhile, Defendants' claimed burdens about litigating in California are unavailing. Given the parties' respective locations and international presence, the convenience of the parties is at best neutral and points against dismissal. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229-1230 (9th Cir. 2011) (noting that convenience factor is neutral where similar logistical considerations would apply in either forum and reversing dismissal where private factors were neutral). Indeed, another court in this district has already rejected similar claims by these same

1    Defendants that Israel is a more suitable forum, *see WhatsApp Inc. v. NSO Group Technologies*

2    *Ltd.*, 472 F. Supp. 3d 649, 677 (N.D. Cal. 2020) (subsequent history omitted) (holding that

3    requiring NSO to litigate in California was consistent with due process)—and for good reason.

4    Defendants are "highly lucrative" companies who contract with foreign governments, utilize

5    servers and data centers located in the United States and Europe for their attacks, and conduct

6    funding and marketing activities within the United States.  Compl. ¶¶ 11, 25, 27, 43, 55.  After

7    broadcasting their international presence, licensing their technologies to nations around the globe,

8    and assisting in international cyber-attacks against American companies, they cannot now be heard

9    to argue that it would be "inconvenient" to litigate here.  *Forum non conveniens* dismissal is

10   inappropriate where a defendant "has substantial resources and consequently will face no financial

11   difficulties in bringing witnesses to the forum."  *In re Volkswagen "Clean Diesel" Mktg., Sales*

12   *Practices, and Prods. Liab. Litig.*, 2017 WL 66281, at *10 (N.D. Cal. Jan. 4, 2017).

13         Defendants fare no better threatening that their witnesses may not be willing to testify in

14   this Court.  *See* Mot. 6.  For one, these potential witnesses are NSO's own employees and are

15   therefore "within [NSO's] control."  *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d

16   1446, 1451 (9th Cir. 1990).  Nothing prevents those witnesses from testifying, either in person or

17   through videoconferencing, as appropriate.  To the extent they are NSO's directors, officers,

18   managing agents, or Rule 30(b)(6) corporate designees, NSO must produce them for deposition or

19   else face sanctions. Fed. R. Civ. P. 37(d)(1)(A).  For any other employees, the primary obstacle

20   would be NSO withholding its consent, as illustrated by its own authorities, *see* Mot. 6 (citing *Air*

21   *Turbine Tech., Inc. v. Atlas Copco AB*, 217 F.R.D. 545, 546 (S.D. Fla. 2003) (suggesting that court

22   could hear testimony under Rule 43(a) from Sweden-based employees via "agreement between

23   the parties")). Moreover, Defendants cite no authority for the proposition that their own refusal to

24   provide required discovery supports dismissal for *forum non conveniens.*  To the contrary,

25   Defendants' suggestion that it or its employees will refuse to appear is not a legitimate ground for

26   dismissal; "[t]hat some witnesses would prefer to appear in [the alternative forum] falls well short

27   of a clear showing of facts which establish such oppression and vexation of a defendant as to be

28   out of proportion to plaintiff's convenience."  *Global Commodities*, 972 F.3d at 1111.

1     Similarly, Defendants' reference to limits on disclosure imposed by Israeli export control

2  laws (Mot. 6) is a red herring.  Apple simply seeks to apply U.S. law to NSO's unlawful activities

3  in the United States; it neither requires information about Israeli export licensing nor challenges

4  Israeli government regulations under its export control laws (Dkt. 28-1 ¶¶ 5-6), and Defendants

5  offer no support for dismissing a case on *forum non conveniens* grounds based on such laws.

6  Understandably so—such a rule would routinely allow foreign regulated defendants to commit

7  crimes, torts, and breaches of contract against American companies yet avoid U.S. courts.[5]

8     Finally, Defendants are wrong (Mot. 7) that its judgment would not be enforceable against

9  assets and operations in Israel.  To the contrary, U.S. courts have recognized that Israeli law

10  provides for the enforcement of U.S. judgments in Israeli courts.  *See, e.g., Tahan v. Hodgson*, 662

11  F.2d 862, 868 (D.C. Cir. 1981) (discussing enforcement of U.S. judgments under Israel's 1958

12  Enforcement of Foreign Judgments Law).   The private-interest factors thus weigh against

13  dismissal.

14    **Public-Interest Factors.**   The public-interest factors (including local interests in the

15  lawsuit and the court's familiarity with the governing law) also weigh in favor of maintaining this

16  action in this forum.  Contrary to Defendants' claims (Mot. 7), California has a compelling interest

17  in adjudicating this dispute as it involves one of its own citizens (Apple) bringing claims under

18  California's unfair competition statute and contract laws.  *See Gates Learjet Corp. v. Jensen*, 743

19  F.2d 1325, 1336-1337 (9th Cir. 1984).  And this Court obviously enjoys greater familiarity—and

20  more authority—on the application of federal statutes and California law than an Israeli court.  *See*

21  *Silicon Labs Integration, Inc. v. Melman*, 2009 WL 2044663, at *6 (N.D. Cal. July 9, 2009).  In

22  the only case cited by Defendants, *Facebook, Inc. v. Studivz Ltd.*, the "ordinar[y] … interest" a

23  U.S. court has in enforcing its law was reduced because it was not clear what state's law would

24  apply.  2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009).[6]  Here, by contrast, Apple invokes

25

---

26  [5] To the extent Israeli law becomes relevant, this Court is fully capable of interpreting foreign law as contemplated by Fed. R. Civ. P. 44.1.

27

28  [6] *Facebook, Inc. v. Studivz Ltd.* is particularly inapposite considering that in contrast to this suit, Facebook was "currently . . . litigating an action in Germany that is extremely similar to the instant action," 2009 WL 1190802, at *2.

California and federal statutes, and the iCloud Terms make clear that California law applies to this dispute.

Defendants ignore the other public-interest factors.  They make no attempt to explain, for example, whether courts in this District are particularly congested, or how an Israeli court might go about deciding the questions of U.S. and California law embedded in the Complaint.  Instead, they hinge their entire public-interest argument on a single factor: that Israel purportedly has a strong interest in hearing this dispute.  Mot. 7-8.  But Defendants have not shown that the Israeli government has expressed any such interest.  Even if it had, that purported interest is no greater than the U.S. government's interest in accountability in the United States for alleged computer fraud and abuse committed by a foreign company (sanctioned by the U.S. government) and aimed at a U.S. company in violation of U.S. law.  Compl. ¶ 43.

## III.  **Defendants' Unidentified Customers Are Not Indispensable Parties.**

Defendants argument that its purported foreign government customers are indispensable parties (Mot. 8-9) rests on the theory that Defendants alone are unable to "identify the location of any and all information obtained" and delete it.  *Id*. at 8 (quoting Compl. p.20).  But this argument fails because Defendants are capable of providing such relief with respect to the information they control, and further, Apple seeks relief that is obtainable from Defendants alone and not from any third parties.  *See Broidy Capital Mgmt,. LLC v. Qatar*, 2018 WL 6074570, at *10 (C.D. Cal. Aug. 8, 2018) (Qatar was not an "indispensable party" because plaintiffs sought some relief that could be effected without joining Qatar), *aff'd on other grounds*, 982 F.3d 582 (9th Cir. 2020).

In any case, Apple's requested relief, by its terms, only contemplates conduct by *Defendants*; it would not bind other parties.  "[B]ecause the court can craft injunctive relief that excludes or carves out any sovereign nation," NSO's unidentified "customers are not required parties."  *WhatsApp*, 472 F. Supp. 3d at 679 (citing *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1079 (9th Cir. 2010)).  Perhaps recognizing this, NSO instead argues that the relief sought would be "ineffective" if it does not also bind its customers, because "NSO's customers, not NSO, are the entities that obtain and store information" and "NSO does not collect or store any information collected by its customers."  Mot. 8 (citing *Dawavendewa v. Salt River Project*, 276 F.3d 1150

1   (9th Cir. 2002)).  Even if the Court were to consider the factual assertions in the untested, self-

2   serving declaration of NSO's CEO (which it has no obligation to do, *see Gerritsen v. Warner*

3   *Brothers Entertainment Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015)), they are irrelevant.

4   Either NSO in fact possesses such user information, in which case it can identify and delete it, or

5   it does not; Apple does not seek an injunction with respect to any information held by Defendants'

6   unnamed customers, and whether or not they separately possess such information does not impair

7   the effectiveness of the relief Apple seeks from Defendants.

8   **IV.   Defendants' Creation And Use Of Abusive Exploits Violated The CFAA.**

9          Defendants, without authorization, installed the highly invasive Pegasus spyware program

10  on Apple's users' devices by "send[ing] abusive data … through Apple's iMessage service,"

11  causing "damage" by "disabling logging on a targeted Apple device" and "deliver[ing] the Pegasus

12  payload" via "Apple's iCloud servers."  Compl. ¶¶ 51, 67-68, 74-76.  By doing so, Defendants

13  caused "damage" within the meaning of 18 U.S.C. § 1030(e)(8), resulting in a legally recognized

14  "loss" to Apple in the form of substantial remediation.  Compl. ¶¶ 56-59; 18 U.S.C. § 1030(e)(8).

15  These allegations state a CFAA claim.

16         As an initial matter, Defendants' repeated references to the undisputed fact that Apple does

17  not own its users' devices are an irrelevant distraction.  The Ninth Circuit has already held that

18  Apple can maintain a cause of action even if it does not "own[]" the third-party devices.  *Theofel*

19  *v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).  In *Theofel*, the Ninth Circuit rejected the

20  imposition of an "ownership or control requirement" on the CFAA's private cause of action.  *Id.*

21  The CFAA broadly authorizes "[a]ny person who suffers damage or loss by reason of a violation

22  of" Section 1030 to "maintain a civil action against the violator."  18 U.S.C. § 1030(g).  "[T]he

23  word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"

24  *Theofel*, 359 F.3d at 1078.  Individuals other than the computer's owner may be proximately

25  harmed by unauthorized access, so "a plaintiff can recover for a violation of the CFAA when a

26  defendant accesses a third party's device as long as the plaintiff is harmed by such an act."

27  *WhatsApp*, 472 F. Supp. 3d at 682.[7]

28

---

[7] Apple also "ha[s] rights to the data stored on" its users' devices in the form of its retained

Further, Apple alleges cognizable "loss" from Defendants' conduct.[8]   Defendants' unauthorized installation of spyware on Apple user devices forced Apple to, among other things, deploy resources to investigate the attacks and develop remedial security upgrades.  Compl. ¶ 57. "[T]he expenditure of resources to investigate and remediate defendants' conduct" and "incur[ing] costs responding to the unauthorized access to users' phones by upgrading [iOS] in response to defendants' intrusion" suffice "to state a claim for loss based on responding to an offense on a third party's device." *WhatsApp*, 472 F. Supp. 3d at 683.  Defendants' contrary arguments—that they did not cause Apple's losses, that Apple's losses are not sufficiently related to computer repair, and that Defendants are somehow immune because Apple's losses purportedly only arise out of their unauthorized access to software and not hardware—make little sense and are unsupported by the law or the allegations in the Complaint.

*First*, Defendants take the remarkable position that they did not cause Apple to undertake any compensable remedial efforts because their hacking supposedly only exploited and required Apple to repair a pre-existing "vulnerability."  Mot. 12.  But hacking a vulnerability in someone else's computer is the very definition of computer fraud and abuse and the very purpose of the CFAA is to enable victims to hold such hackers accountable for the injuries they cause. Unsurprisingly, Defendants cite no authority for their contrary proposition, which ignores the CFAA's plain language.  "'[L]oss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

---

ownership of the intellectual property rights to the iOS operating system, making this a "particular[]" situation in which the Ninth Circuit has recognized that Apple would be "proximately harmed by unauthorized access," *Theofel*, 359 F.3d at 1078; *WhatsApp*, 472 F. Supp. 3d at 682-683.

[8] Apple also alleges cognizable "damage" to its users' devices.  *See* Compl. ¶ 51 (hacking "disable[ed] logging").  And the statutory definition of "damage" clearly contemplates the "impairment to the integrity … [or] data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), that Defendants' installation of malicious spyware caused.  Damage is only required for the discrete component of Apple's CFAA claim arising under 18 U.S.C. § 1030(a)(5).  Because "damage" is a substantive element of the offense and not a separate requirement for statutory standing, the fact that the damage was inflicted on a third-party device is irrelevant.  *Theofel*, 359 F.3d at 1078.

other consequential damages incurred because of interruption of service."   18 U.S.C. § 1030(e)(11).  It therefore "means two things: 'any reasonable cost to the victim' and lost revenue or other damages incurred as a result of an interruption of service."  *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (cited at Mot. 10).  Cognizable repair costs "*includ[e]* … restoring" the computer "to its condition prior to the offense," 18 U.S.C. § 1030(e)(11) (emphasis added), but this is not a requirement, *see Bloate v. United States*, 559 U.S. 196, 208-209 (2010) ("including but not limited to" signals list of non-exhaustive, illustrative examples).  "[U]pgrading a system's defenses to prevent future unauthorized access" is a well-recognized form of "loss."  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018); *see also Kimberlite Corp. v. John Does 1-20*, 2008 WL 2264485, at *2 (N.D. Cal. June 2, 2008) ("securing" an email system).

**Second**, the standard for "losses" is that they reflect "costs caused by harm to computer data, programs, systems, or information services."  *Van Buren v. United States*, 141 S. Ct. 1648, 1659-1660 (2021).  Apple's remedial activities, including "identifying and investigating the attacks," "developing and deploying security patches and software upgrades," and "increasing security measures to detect and prevent future attacks," Compl. ¶ 57, easily satisfy that standard. *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) ("many hours … analyzing, investigating, and responding"); *WhatsApp*, 472 F. Supp. 3d at 683; *Ticketmaster*, 315 F. Supp. 3d at 1174; *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894-895 (N.D. Cal. 2010) ("Costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the statute."); *Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, 2014 WL 2213910, at *3 (N.D. Cal. May 28, 2014) ("costs of investigation may be included in the calculation of loss").  This distinguishes Apple's injuries from the harms alleged in Defendants' cited authorities, which are entirely unrelated to investigating or repairing computer damage.  *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (lost "value of" "personal information … and the opportunity to sell it"); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *4 (N.D. Cal. Nov. 11, 2020) (stolen cryptocurrency); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 473 (S.D.N.Y. 2004) ("traveling to a meeting to

1    discuss confidential information stolen"), *aff'd*, 166 F. App'x 559 (2d Cir. 2006).[9]

2    **Third**, Defendants cannot avoid CFAA liability by creating a false distinction between

3    losses caused by unauthorized access to software installed on Apple's users' devices (*i.e.*, Apple's

4    iOS operating system) and access to the devices themselves.   *See* Mot. 10-11.   Such a distinction

5    does not exist in the CFAA, but even if it did, it would not help Defendants.   Defendants installed

6    spyware on users' devices without authorization, and Apple's losses flowed from Defendants

7    having done so.   Compl. ¶¶ 51, 56-59, 68, 75-76.   Defendants concede that the CFAA protects

8    user devices.   Mot. 10.   That ends the inquiry.

9    Defendants' argument fails for the additional reason that there is no legal basis to

10   distinguish between access to phone hardware and access to phone software in this context, where

11   Defendants accessed the user devices via iMessage, a component of Apple's iOS operating system.

12   Compl. ¶ 67.   Defendants offer no explanation of how they could have accessed the operating

13   system installed on a user device without necessarily also accessing the device itself; both were

14   accessed in violation of the CFAA.   In any event, nothing in the CFAA supports excluding from a

15   CFAA claim unauthorized access to a computer's software in the manner advocated by

16   Defendants.   "[L]oss" under the CFAA captures "costs caused by harm to computer … programs,"

17   including operating system software. *Van Buren*, 141 S. Ct. at 1659-1660.[10]   Defendants' position

18   would create an atextual immunity for (theoretical) hacking activities directed only at software,

19   undermining the statute's purpose of "address[ing] the growing problem of computer hacking."

20   *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).

21   **V.   Defendants' CFAA Violations Also Violate The California UCL's Unlawful Prong.**

22   Defendants do not dispute that, if they have violated the CFAA, they have also violated the

23   UCL's "unlawful" prong. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016)

24

25   ───────────────────

26   [9] Defendants purport to invoke the rule of lenity for construing the CFAA's definition of "loss."
     Mot. 10.   But they have not identified any bona fide "ambiguity for the rule of lenity to resolve."

27   *Shular v. United States*, 140 S. Ct. 779, 787 (2020).

     [10] More generally, a CFAA violation can lie from access to "files" or "folders" on a computer—
28   the same types of digital locations on Apple user devices where the iOS operating system is
     stored. *Van Buren*, 141 S. Ct. at 1652.

(the unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). Instead, Defendants claim that, because some of their actions took place in Israel, not California, the UCL does not apply. But what Defendants ignore is that Apple itself is based in California and suffered harm here.

"When a plaintiff resides in California, the UCL may apply to out-of-state conduct, especially when the plaintiff suffered in-state harm." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017). *See also Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015). None of Defendants' cases (discussed at Mot. 12-13) hold that the UCL did not apply to conduct that harmed a California resident. *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1358 (Fed. Cir. 2013) (addressing conduct in other states that did not "caus[e] harm to California"); *Sullivan v. Oracle Corp.*, 254 P.3d 237, 245-246 (Cal. 2011) (plaintiffs were harmed in Colorado and Arizona); *Sajfr v. BBG Communications, Inc.*, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) (although plaintiffs lived in California, harm occurred in Germany because challenged disclosures were made there); *Dongxiao Yue v. Chun-Hui Miao*, 2019 WL 5872142, at *8 n.9 (D.S.C. June 27, 2019) (noting in dicta only that it is "not clear" that the California UCL could apply to conduct originating in South Carolina that harmed a California resident).

Here, not only was Apple harmed in California, but Defendants also interacted with Apple infrastructure in California throughout their attacks. Compl. ¶¶ 45-51. Defendants cannot dismiss the attacks' connection to California as "happenstance" when their wrongful use of infrastructure in California was an intentional—and necessary—component of their misconduct.

Finally, Defendants' argument that Apple's UCL claim should be dismissed as to certain remedies (Mot. 14) is premature. Defendants do not argue that the equitable relief Apple seeks are precluded by adequate legal remedies, only that certain relief should be unavailable as a matter of law. But so long as Apple is entitled to recover some form of relief, including injunctive relief and restitutionary disgorgement, dismissal at the Rule 12(b)(6) stage is improper. *Clarke v. Pacific Gas & Elec. Co.*, 501 F. Supp. 3d 774, 784 (N.D. Cal. 2020) ("[I]t need not appear that the plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the

complaint that some relief can be granted."); *San Francisco Herring Ass'n v. Pacific Gas & Elec. Co.*, 2020 WL 6736930, at *7 (N.D. Cal. June 15, 2020) ("Although it is unclear what relief may be granted at this stage, a flawed requested remedy is not sufficient basis for dismissal.").

## VI.   Apple Adequately States a Claim in the Alternative for Unjust Enrichment.

Finally, Defendants assert that Apple may not bring a standalone claim for unjust enrichment, but "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution,'" particularly where that claim is pled in the alternative. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Courts also permit unjust enrichment and breach of contract claims to be pled in the alternative, which is particularly appropriate here where Defendants do not concede to the enforceability of the contract. *Cf. Lundy v. Facebook Inc.*, No. 18-cv-06793-JD, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (interpreting unjust enrichment count as quasi-contract claim and allowing it to proceed alongside breach of contract claim). Finally, Defendants argue that Apple cannot seek the equitable remedies of restitution and disgorgement because its compensatory damages claims are adequate remedies (Mot. 15), but the cost of responding to Defendants' attacks is distinct from the accounting and disgorgement Apple demands through its unjust enrichment claim. *See In re California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Dated:  April 18, 2022

WILMER CUTLER PICKERING HALE AND DORR LLP

By:  */s/* David W. Bowker
DAVID W. BOWKER

*Attorneys for Plaintiff*
APPLE INC.