JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
*jakro@kslaw.com*
ZACHARY W. BYER (Bar No. 301382)
*zbyer@kslaw.com*
MATTHEW NOLLER (Bar No. 325180)
*mnoller@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHNOLOGIES LIMITED and
Q CYBER TECHNOLOGIES LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

APPLE INC.,

Plaintiff,

v.

NSO GROUP TECHNOLOGIES LIMITED, and Q CYBER TECHNOLOGIES LIMITED,

Defendants.

Case No. 3:21-cv-09078-JD

**REPLY IN SUPPORT OF MOTION OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED TO DISMISS [FED. R. CIV. P. 12(B)(1), 12(B)(3), 12(B)(6), AND 12(B)(7)]**

Date: June 2, 2022
Time: 10:00 a.m.
Ctrm: 11

Action Filed: 11/23/2021

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Subject Matter Jurisdiction Is Lacking Because NSO Is Entitled to Common-Law Sovereign Immunity. ..... 2

B. The Court Should Dismiss the Complaint for *Forum Non Conveniens*. ..... 2

C. The Court Should Dismiss for Failure to Join Indispensable Parties. ..... 5

D. The Court Should Dismiss Apple's CFAA Claim. ..... 6

E. The Court Should Dismiss Apple's UCL Claim. ..... 7

F. The Court Should Dismiss Apple's Unjust Enrichment Claim. ..... 9

III. CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aenergy, S.A. v. Rep. of Angola*, 31 F.4th 119 (2d Cir. 2022) ....................4

*Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (Fed. Cir. 2013)....................8

*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019) ....................6

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................9, 10

*Broidy Capital Mgmt., LLC v. Qatar,* 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018)....................5

*In re California Gasoline Spot Market Antitrust* Litigation, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)....................10

*Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011) ....................3

*Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018) ....................9

*Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202 (N.D. Cal. 2019) ....................10

*English v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658 (C.D. Cal. May 8, 2019) ....................8

*Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802 (N.D. Cal. May 4, 2009) ....................5

*GE Healthcare v. Orbotech, Ltd.*, 2009 WL 2382534 (E.D. Wis. July 2, 2009) ....................4

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020) ....................2

*Henry v. Napa Valley Unified*, 2016 WL 7157670 (N.D. Cal. Dec. 8, 2016)....................6

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ....................6, 7

*Hyp3r Inc. v. Mogimo Inc.*,
2017 WL 11515712 (N.D. Cal. Nov. 8, 2017) ....................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................9

*Phreesia Inc. v. Certify Global Inc.*,
2022 WL 911207 (D. Md. Mar. 29, 2022)....................7

*Rey v. Rey*,
666 F. App'x 675 (9th Cir. 2016) ....................3

*Sajfr v. BBG Comms., Inc.*,
2012 WL 398991 (S.D. Cal. Jan. 10, 2012)....................8, 9

*Sam Francis Found. v. Christies, Inc.*,
784 F.3d 1320 (9th Cir. 2015) (en banc) ....................8

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
663 F. Supp. 2d 883 (C.D. Cal. 2009) ....................8

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................10

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ....................6

*Tsai v. Wang*,
2017 WL 2587929 (N.D. Cal. June 14, 2017)....................10

*Umeda v. Tesla, Inc.*,
2022 WL 18980 (9th Cir. Jan. 3, 2022)....................3

*United States v. Pemkova*,
731 F. App'x 620 (9th Cir. 2018) ....................4

*Van Buren v. United States*,
141 S. Ct. 1648 (2021)....................6, 7

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
17 F.4th 930 (9th Cir. 2021) ....................2

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
407 F. Supp. 3d 931 (S.D. Cal. 2019)....................2

*World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*,
2014 WL 1411249 (N.D. Cal. Apr. 11, 2014)....................10

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ....................3

**Constitutional Provisions, Statutes, and Rules**

18 U.S.C. § 1030(e)(1) .......... 7

18 U.S.C. § 1030(e)(11) .......... 7

18 U.S.C. § 1030(g) .......... 7

Fed. R. Civ. P. 19 .......... 2, 5

Fed. R. Civ. P. 45(c)(1) .......... 4

**Other Authorities**

*Apple Security Bounty*, https://developer.apple.com/security-bounty/ .......... 1

Eddy Meiri, "Foreign Judgments Enforcement in Israel," 31 Int'l L. Practicum 39 (2018) .......... 4

*Tim Cook: Apple's Herzliya R&D Center Second-Largest In The World*, The Times of Israel (Feb. 27, 2015), https://www.timesofisrael.com/apples-herzliya-rd-center-now-second-largest-in-world/ .......... 4

*Tim Cook Took A Subtle Swipe At Google Over How Apple Does Business In China*, Business Insider (Oct. 3, 2018), https://bit.ly/3EYraQW .......... 9

*Woman Claims Apple Used Her Voice for Hebrew Siri Without Permission*, Jerusalem Post (Jan. 1, 2019), https://bit.ly/3ksVPMK .......... 5

## I. INTRODUCTION

It is rich that Apple seeks to punish NSO as a so-called "twenty-first century mercenar[y]." (Opp. at 1.) NSO's alleged interactions with Apple—finding flaws in Apple's iMessage program—are comparable to the activities of "researchers" to whom Apple pays substantial "bounties" for discovering security issues and vulnerabilities. *Apple Security Bounty*, developer.apple.com/security-bounty/. Like those researchers, NSO develops its technology without harming Apple's servers or obtaining any private data from third parties. Because the crux of Apple's complaint is with the *use* of NSO's vulnerability research to obtain data from third parties, its complaint should be directed at the foreign government customers and their authorized agencies that license NSO's technology and independently use it. (Hulio Decl. ¶¶ 9, 13.) Apple consciously omits those indispensable parties and instead advances a distorted view of the Computer Fraud and Abuse Act (CFAA) in an effort to (1) hold NSO accountable for Apple's expenses in closing vulnerabilities *Apple* itself created through its software design, and (2) hold NSO liable for foreign governments' use of NSO technology involving those vulnerabilities.

First, the claims are substantively deficient. Apple resorts to false allegations about NSO "deploy[ing]" its technology and "infecting, exploiting, and misusing Apple devices and software." (Compl. ¶¶ 40, 54.) But even taking those false allegations as true, they still do not support a CFAA claim. Because Apple does not own its users' devices, access to those devices did not damage Apple; Apple does not allege that any Apple-owned data on the devices was compromised, deleted, or damaged. And Apple's investigatory costs cannot serve as a measure of damages because Apple was not investigating or remedying harm to a "computer" as defined by the CFAA. Instead, Apple was investigating and remedying self-created vulnerabilities in its software that pre-dated NSO's alleged conduct.

Apple's attempts to save its Unfair Competition Law (UCL) and unjust enrichment claims are equally misguided. Not only does the UCL claim fall with the CFAA claim, it also fails under the Commerce Clause of the U.S. Constitution because it seeks to hold NSO liable for purely extraterritorial conduct. And Apple's reliance on the contractual provisions of the iCloud Terms of Service—which Apple does not deem invalid or unenforceable—dooms its unjust enrichment claim.

Second, NSO is protected by sovereign immunity. Apple brings this suit against NSO as an attempted end-run around foreign sovereign immunity, which precludes it from suing the foreign government agencies that operate NSO's technologies—the same reason why these necessary parties cannot be joined under Rule 19. But sovereign immunity bars the lawsuit in any event, as NSO is immune from suit as an agent of foreign governments.

Finally, Apple contends that a forum-selection clause in the iCloud Terms of Service mandates this action remain in this forum. But, even if the forum-selection clause applied (it does not), its narrow scope would require that all but Apple's breach of contract claim be dismissed for *forum non conveniens*.

The Court should dismiss Apple's complaint with prejudice.

## II. ARGUMENT

### A. Subject Matter Jurisdiction Is Lacking Because NSO Is Entitled to Common-Law Sovereign Immunity.

As NSO maintained in its motion, it is entitled to conduct-based sovereign immunity as an agent of foreign governments. (Mot. at 4.) Although the Ninth Circuit held in *WhatsApp* that the Foreign Sovereign Immunities Act forbids private entities from seeking conduct-based immunity, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930 (9th Cir. 2021), this Court has stayed proceedings pending NSO's petition for a writ of certiorari (Dkt. 34). The Court should withhold its resolution of NSO's motion to dismiss until the Supreme Court decides NSO's petition.

### B. The Court Should Dismiss the Complaint for *Forum Non Conveniens*.

Apple does not dispute that Israel would be an "adequate alternative forum" for its lawsuit. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020). Instead, Apple opposes dismissal for *forum non conveniens* on the basis of a forum-selection clause in the iCloud Terms of Service. But the Court should not enforce that clause. It is undisputed that all of NSO's "relevant witnesses are not located" in the Northern District of California—or even in California—which is one way that a "party may show that a forum selection clause should not be enforced." *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947-48 (S.D. Cal. 2019) (citing *Spradlin v. Lear Siegler*

*Mgmt. Servs.*, 926 F.2d 865, 869 (9th Cir. 1991)); *see also* Hulio Decl. ¶ 4 ("All of Defendants' employees with knowledge relevant to this lawsuit reside in Israel, not California . . . .").

Even if the forum-selection clause were enforceable against NSO, it applies only to Apple's breach of contract claim. (Compl. ¶ 23.) The clause governs only a "dispute or claim *arising from*" the iCloud Terms. (*Id.* Exh. 1 at 19 (emphasis added).) Where a forum-selection clause governs claims "arising under" the relevant agreement, it "should be interpreted narrowly" to apply only to disputes "relating to the interpretation and performance of the contract itself." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011). A forum-selection clause encompassing disputes "stemming from" the particular agreement is equally "narrow in its scope." *Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016). The phrase "arising from" in Apple's forum-selection clause is equivalent to those terms.[1] Thus, the clause does not support venue for Apple's CFAA, UCL, and unjust enrichment claims.

Apple's other arguments in opposition to dismissal for *forum non conveniens* fare no better. Addressing the "private factors," Apple posits that Israel's export control laws will not disrupt discovery and the presentation of evidence if this case remains in this Court because "Apple simply seeks to apply U.S. law to NSO's unlawful activities in the United States." (Opp. at 8.) That misses the point. Whatever substantive law governs Apple's claims, Israel's export control laws impose strict limits on the information NSO and its employees may disclose outside of Israel. (Hulio Decl. ¶ 5.) This will impair the parties' access to proof to support their claims and defenses and will pose "practical problems" throughout the course of discovery and trial. *Umeda v. Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022). Further ignoring that Israeli law may prevent NSO's employees from testifying at trial in this forum, Apple argues that NSO should force its Israel-based employees to travel over 7,000 miles away from their home to California—without any appreciation for the disruption that this would cause to the lives of those employees and to the

[1] "By contrast, forum-selection clauses covering disputes '*relating to*' a particular agreement apply to *any* disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (citation omitted, emphases added).

operations of NSO's business. (Opp. at 7.) Far from supporting Apple's position, that argument proves that litigation in California is not appropriate. *See Aenergy, S.A. v. Rep. of Angola*, 31 F.4th 119, 135 (2d Cir. 2022) (affirming dismissal for *forum non conveniens* in part because of large number of foreign witnesses); *GE Healthcare v. Orbotech, Ltd.*, 2009 WL 2382534, at *15 (E.D. Wis. July 2, 2009) (dismissing for *forum non conveniens* where "[a] number of important witnesses who will be necessary for trial are . . . located in Israel"). Israeli witnesses cannot be compelled to appear in California. Fed. R. Civ. P. 45(c)(1); *United States v. Pemkova*, 731 F. App'x 620, 623 n.3 (9th Cir. 2018). On the other hand, Apple should have no difficulty persuading its witnesses to come to trial in Israel, where Apple does business and reportedly employs hundreds of persons. *Tim Cook: Apple's Herzliya R&D Center Second-Largest In The World*, The Times of Israel (Feb. 27, 2015), https://www.timesofisrael.com/apples-herzliya-rd-center-now-second-largest-in-world/. And Apple's argument about the ability of witnesses to testify through videoconferencing ignores the prejudice that would cause NSO (Opp. at 7)—NSO's witnesses would be testifying remotely from Israel by prerecorded video or during the late evening hours, while Apple's witnesses would be testifying in the courtroom with the jury. Finally, contrary to Apple's suggestion (Opp. at 8), enforcement of foreign judgments by Israeli courts is not "automatic." Eddy Meiri, *Foreign Judgments Enforcement in Israel*, 31 Int'l L. Practicum 39 (2018). The plaintiff "bears the burden of proving," among other conditions, that the judgment's "content is not in contrast to public policy." *Id.* Even then, under Israel's Foreign Judgments Enforcement Law, an Israeli court will not enforce the foreign judgment if it "might be detrimental to Israel's sovereignty or security." *Id.* Notwithstanding Israel's national-security interests implicated by Apple's allegations and requested relief (Hulio Decl. ¶¶ 5-8), Apple tellingly ignores these conditions necessary for enforcement of a judgment issued by this Court against NSO in an Israeli court. (Opp. at 8.)

In addressing the "public factors," Apple paints itself as just another California citizen litigating in its home state. (Opp. at 8.) But this action has nothing to do with California. (Mot. at 7, 13.) And Apple is a "multinational company"—one of the largest companies in the world—with a "significant business presence" in Israel. *Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at

*2 (N.D. Cal. May 4, 2009). Accordingly, its "choice of forum must be discounted substantially." *Id.*[2] As for the other public factors, it goes without saying that retaining this lawsuit would burden the Court and a local jury exponentially more than if it were dismissed. Moreover, Apple's attempt to downplay Israel's strong national-security interests ignores its export control laws and role in approving licenses to allow marketing and export to NSO customers. (Hulio Decl. ¶¶ 5-9.)

The Court should dismiss Apple's entire complaint for *forum non conveniens*. At a minimum, it should dismiss Apple's CFAA, UCL, and unjust enrichment claims.

**C. The Court Should Dismiss for Failure to Join Indispensable Parties.**

Seeking to avoid dismissal under Rule 19 for failure to join indispensable parties, NSO's foreign-government customers, Apple asserts that its "requested relief, by its terms, only contemplates conduct by *Defendants*." (Opp. at 9 (emphasis in original).) But Apple's assertion is belied by the plain language of Apple's complaint. Apple seeks injunctive relief "requiring Defendants to identify the location of *any and all information obtained from* any Apple users' Apple devices, hardware, software, applications, or other Apple products—and to delete *all such information*." (Compl., Prayer for Relief ¶ B (emphases added).) That injunction would require NSO to delete *all* "information," without regard to who obtained or has possession of it. Similarly, Apple would require NSO to "identify the location of any and all information obtained from any" Apple user (*id.*), which is *not* "obtainable from Defendants alone" (Opp. at 9; *see* Mot. at 8).[3] That relief would, at a minimum, require NSO's customers to turn over any information they collected during their anti-terrorism and law-enforcement operations—which NSO's customers cannot be required to do. (Mot. at 8-9; *see also* Hulio Decl. ¶ 19.)

---

[2] Apple's attempt to distinguish *Studivz* (Opp. at 8 n.6) is misguided because that case did not hinge on any lack of clarity as to what law might apply to the plaintiff's claims. And Apple has recent experience litigating in Israeli court. *See, e.g.*, *Woman Claims Apple Used Her Voice for Hebrew Siri Without Permission*, Jerusalem Post (Jan. 1, 2019), https://bit.ly/3ksVPMK.

[3] Apple's reliance on *Broidy Capital Mgmt., LLC v. Qatar* is inapt. 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018). The *Broidy* court was particularly "concerned" that the plaintiffs would have an inadequate remedy available in the event the case was dismissed, "because it is unlikely that an alternative forum would be available." *Id.* at *10. That concern is absent here, as Apple does not dispute that Israel is an adequate alternative forum.

Apple also ignores NSO's argument that proceeding without NSO's customers would prejudice NSO because sovereign immunity bars NSO from seeking from its customers discovery essential to its defense. (Mot. at 9 n.5.) Apple's "failure to address" this argument concedes the point. *Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016).

**D. The Court Should Dismiss Apple's CFAA Claim.**

That Apple begins its defense of its CFAA claim with a misrepresentation underscores the claim's unsoundness. (Opp. at 10.) NSO does not install anything on any Apple user's device. (Hulio Decl. ¶ 13.) Apple is trying to punish the creation, sale, and licensing of security technology. Yet the CFAA does not reach such conduct, and so Apple's CFAA claim should be dismissed.

Apple misinterprets NSO's argument regarding Apple's lack of ownership of the devices allegedly accessed by NSO. (Opp. at 10.) NSO does not argue that the CFAA has an "ownership or control requirement." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004). Instead, NSO relies on the CFAA's clear requirement that a plaintiff must suffer "damage" or "loss" from the defendant's unauthorized access to a third party's computer. (Mot. at 9-12.) Apple cannot allege or establish any such damage or loss as a result of alleged unauthorized access, and Apple lacks standing to pursue any remedy for damage or loss suffered by an Apple device user.

There is nothing "remarkable" (Opp. at 11) about NSO's position that Apple's alleged investigation and repair costs are not "damage" or "loss" under the CFAA. (Mot. at 11-12.) The CFAA is a "narrow . . . criminal statute," limited by the rule of lenity, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200 (9th Cir. 2022), and a "limited conception of loss," *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019). The CFAA's "definitions of 'damage' and 'loss' . . . focus on *technological harms*—such as the corruption of files—of the type unauthorized users *cause* to computer systems and data." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (emphases added); *see hiQ*, 31 F.4th at 1195 n.12 (CFAA's "civil remedies provision requires a showing of 'technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data'"). But Apple does not allege that NSO corrupted any Apple file or caused Apple any other *technological* harms. It alleges only that NSO

exposed a preexisting vulnerability in Apple's software, which Apple then investigated and repaired. (Compl. ¶¶ 7, 37, 53, 58.) That does not qualify as "loss" under the CFAA because Apple was not investigating or fixing "harm to" a "computer." *Van Buren*, 141 S. Ct. at 1659-60; (Mot. at 11). It was investigating the preexisting vulnerability in its software, which is not a computer and which did not suffer any "technological harms." *Van Buren*, 141 S. Ct. at 1660. That is not the sort of "damage" or "loss" the CFAA covers. *Id.*; *hiQ*, 31 F.4th at 1195 n.12; *see also Phreesia Inc. v. Certify Global Inc.*, 2022 WL 911207, at *8 (D. Md. Mar. 29, 2022) ("more than the copying and transmission of confidential information is required to allege 'damage' under the CFAA").

Contrary to Apple's assertion, *Van Buren* does not identify costs caused to "operating system software" as a "loss" under the CFAA. (Opp. at 13.) The word "software" does not appear in *Van Buren*, and the CFAA's definition of "computer" unambiguously does not encompass software. 18 U.S.C. § 1030(e)(1).[4] In any event, Apple does not allege NSO caused any "harm to" Apple's operating system, which would be required even under Apple's misreading of *Van Buren*. 141 S. Ct. at 1660. NSO did not *create* the vulnerability that Apple allegedly investigated and repaired. By *fixing* that preexisting vulnerability, therefore, Apple was not "restoring" its operating system "to its condition prior to the offense." 18 U.S.C. § 1030(e)(11); (Mot. at 12). Apple pushes out regular software updates to fix bugs and enhance security—indeed, Apple alleges it has an entire team that "is constantly working to identify and patch vulnerabilities and address security problems." (Compl. ¶ 37.) The CFAA is not a cost-shifting statute that allows a tech company worth over $2 trillion to "investigate possible vulnerabilities" and "update" its software at somebody else's expense. (Compl. ¶¶ 53, 58.)

**E. The Court Should Dismiss Apple's UCL Claim.**

Apple argues the UCL applies solely because it "is based in California and suffered harm" in California. (Opp. at 14.) But that is not relevant to whether the UCL applies extraterritorially. What matters is that none of *NSO's alleged conduct* occurred in California. (Mot. at 12-14.) "[T]he

---

[4] The CFAA's civil remedy provision uses the term "computer software," *id.* § 1030(g), showing Congress understood that the software *on* a computer is not itself a "computer."

concept of extraterritoriality . . . concerns legislation that regulates *conduct* that occurs in a foreign jurisdiction—*regardless of the plaintiff's residency*." *English v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019) (emphases added, citation omitted).

Under Apple's argument, the mere location of its headquarters allows it to sue NSO (or any other person or company) for conduct committed entirely in foreign countries. For example, if a store in Jerusalem sold iPhones stolen from an Apple store in Tel Aviv, Apple believes it could sue the store's Israeli owners for unfair business practices *in California*. The Commerce Clause of the U.S. Constitution forbids that result. California cannot "regulate commerce entirely outside of the state's borders. To do so would violate the Commerce Clause, which 'precludes' such extraterritorial application of state law '*whether or not the commerce has effects within the state*.'" *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013) (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)) (emphasis added); *see Sajfr v. BBG Comms., Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding UCL did not apply to international telephone calls, even though plaintiffs were "California residents"). If Apple's interpretation of the UCL is correct, then the UCL is unconstitutional. *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-25 (9th Cir. 2015) (en banc) (striking down part of California law requiring art sellers to pay royalties to California-resident artists for out-of-state sales). This Court should not interpret the UCL to create such "serious constitutional problems." *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 901 (C.D. Cal. 2009).[5]

As a fallback, Apple vaguely suggests that NSO "interacted with Apple infrastructure in California." (Opp. at 14.) But the allegations Apple cites do not support that claim. (Compl. ¶¶ 45-51.) Those allegations do not even mention California; they broadly assert that NSO took advantage of "Apple servers in the United States and abroad." (Compl. ¶ 51.) Those servers could have been in New York, China, or any other number of places.[6] And even if messages transmitted

---

[5] The few cases Apple cites to argue that its California residency alone permits extraterritorial application of the UCL overlooked the constitutional implications of this position. (Opp. at 14.)

[6] *See Tim Cook Took A Subtle Swipe At Google Over How Apple Does Business In China*, Business

between foreign countries happened to pass through Apple's California-based servers, that would not show NSO engaged in any conduct in California. *See Sajfr*, 2012 WL 398991, at *4 (holding UCL did not apply to international telephone calls "rated and billed from San Diego"). NSO does not control which servers Apple messages pass through. (Hulio Decl. ¶ 18.) And "[t]he mere fact that some nexus" to California "exists will not justify regulation of wholly out-of-state" conduct. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018).

Finally, it would not be "premature" to dismiss Apple's UCL claim to the extent it seeks damages, disgorgement, or an extraterritorial injunction. (Opp. at 14.) The California Supreme Court has made clear that "damages cannot be recovered" under the UCL, and neither can "disgorgement of profits" except for "restitution" of money or benefits given to the defendant by the plaintiff or in which the plaintiff had an "ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Apple does not dispute that the restitution it seeks is not for any money or benefits that it provided NSO or in which it had an ownership interest. And courts regularly dismiss claims to the extent they seek unrecoverable relief. *See, e.g.*, *Hyp3r Inc. v. Mogimo Inc.*, 2017 WL 11515712, at *2-3, 6 (N.D. Cal. Nov. 8, 2017) (granting motion to dismiss UCL claim to the extent it sought non-restitutionary monetary relief). The Court should do the same here. (*See* Mot. at 14.)

**F. The Court Should Dismiss Apple's Unjust Enrichment Claim.**

Apple's defense of its unjust enrichment claim ignores that it "may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim" unless it "also pleads facts suggesting that the contract may be unenforceable or invalid." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020) (cleaned up). That rule is fatal here because Apple alleges that it has "binding and enforceable contracts" with NSO, but it does *not* allege that those contracts may be unenforceable or invalid. (Compl. ¶ 87.) Apple's failure to address this point is striking, since in *Brodsky* Apple successfully made the same argument that NSO makes here. The

---

Insider (Oct. 3, 2018), https://bit.ly/3EYraQW (quoting Apple CEO Tim Cook saying that Apple stores data "in China" and has "servers located in many different countries in the world").

court in *Brodsky* agreed with Apple that the plaintiffs' unjust enrichment claim should be dismissed because the complaint did not "suggest[] that" Apple's Terms of Use were "unenforceable or invalid." 445 F. Supp. 3d at 133. The same is true here. Because Apple does not "allege that [its] contract with [NSO] is unenforceable or invalid, the [complaint] fails to state a quasi-contract claim for unjust enrichment." *Id.* at 134; *see also Tsai v. Wang*, 2017 WL 2587929, at *8 (N.D. Cal. June 14, 2017) (dismissing unjust enrichment claim because plaintiff did not allege contract "was unenforceable or invalid"); *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014) (dismissing unjust enrichment claim where plaintiff "pleaded the existence of enforceable agreements").

Apple also ignores that it does not plead a lack of an adequate legal remedy, which it must do to seek the equitable remedy of disgorgement. (Mot. at 15); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Its reliance on *In re California Gasoline Spot Market Antitrust Litigation* (Opp. at 15) is misplaced because the plaintiffs there "affirmatively allege[d] no alternative remedy at law." 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021). Apple's complaint does *not* allege that its claimed compensatory damages are inadequate. (Compl. ¶¶ 92-97.) Apple's contrary assertion in its opposition (Opp. at 15) cannot substitute for an actual allegation—a "complaint may not be amended by briefs in opposition to a motion to dismiss." *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) (cleaned up).

## III. CONCLUSION

For the reasons explained here and in NSO's Motion, the Court should dismiss Apple's complaint with prejudice.

Dated: May 18, 2022

KING & SPALDING LLP

By: /s/Joseph N. Akrotirianakis
JOSEPH N. AKROTIRIANAKIS

Attorneys for Defendants
NSO GROUP TECHNOLOGIES LIMITED and
Q CYBER TECHNOLOGIES LIMITED