1   JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
    *jakro@kslaw.com*
2   AARON S. CRAIG (Bar No. 204741)
    *acraig@kslaw.com*
3   MATTHEW NOLLER (Bar No. 325180)
    *mnoller@kslaw.com*
4   KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
5   Los Angeles, CA 90071
    Telephone:    (213) 443-4355
6   Facsimile:    (213) 443-4310

7   Attorneys for Defendants
    NSO GROUP TECHNOLOGIES LIMITED and
8   Q CYBER TECHNOLOGIES LIMITED

9

10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  APPLE INC.,                          Case No. 3:21-cv-09078-JD

15              Plaintiff,               **NOTICE OF MOTION AND RENEWED
                                         MOTION OF DEFENDANTS NSO
16       v.                              GROUP TECHNOLOGIES LTD.
                                         AND Q CYBER TECHNOLOGIES LTD.
17  NSO GROUP TECHNOLOGIES LTD., and Q   TO DISMISS COMPLAINT [*FORUM
    CYBER TECHNOLOGIES LTD.,             NON CONVENIENS* AND FED. R. CIV. P.
18                                       12(B)(6) AND 12(B)(7)]; MEMORANDUM
              Defendants.               OF POINTS AND AUTHORITIES**
19
                                         [*Filed Concurrently with Declarations of
20                                       Shalev Hulio and Roy Blecher and [Proposed]
                                         Order*]
21
                                         Date:     [none set]
22                                       Ctrm:     11
23                                       Action Filed:   11/23/2021
24

25

26

27

28

─────────────────────────────────────────────────────────
DEFENDANTS' RENEWED MOTION                    Case No. 3:21-cv-09078-JD
TO DISMISS

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants NSO Group Technologies LTD. ("NSO") and Q Cyber Technologies LTD. ("Q Cyber") hereby move the Court, the Honorable James Donato, United States District Judge, for an order dismissing the complaint of Plaintiff Apple Inc., for *forum non conveniens* and under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).

NSO initially filed a motion to dismiss on March 3, 2022.  (Dkt. No. 28.)  As required by the Court's February 16, 2023, order (Dkt. No. 46), NSO hereby renews its motion.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Roy Blecher and former NSO Chief Executive Officer Shalev Hulio submitted herewith, the pleadings, papers and records on file in this case, and such oral argument as may be presented at any hearing set by the Court.


Dated: March 10, 2023                     KING & SPALDING LLP

                                          By:    */s/Joseph N. Akrotirianakis*
                                                 JOSEPH N. AKROTIRIANAKIS

                                          Attorneys for Defendants
                                          NSO GROUP TECHNOLOGIES LIMITED and
                                          Q CYBER TECHNOLOGIES LIMITED

# **TABLE OF CONTENTS**

**Page(s)**

I.  BACKGROUND ........................................................................................................... 2

    A.  NSO's Technology and Its Use in Preventing Terrorism and Other Crimes. .................................................................................................................. 2

    B.  Use of Apple Devices in Committing Terrorism and Other Crimes. ................. 3

    C.  Alleged Use of Apple's Services by NSO. ........................................................ 3

II.  ARGUMENT .............................................................................................................. 4

    A.  The Court Should Dismiss for *Forum Non Conveniens*. .................................... 4

    B.  The Court Should Dismiss for Failure to Join an Indispensable Party. ............................................................................................................... 8

    C.  The Court Should Dismiss Apple's CFAA, UCL, and Unjust Enrichment Claims for Failure to State a Claim. ................................................ 9

        1.  Apple Cannot State a CFAA Claim Because NSO's Alleged Conduct Did Not Cause Apple Any Statutory "Damage or Loss." ........................................................................................................ 9

        2.  Apple's UCL Claim Falls with Its CFAA Claim, and the UCL Cannot Be Applied to NSO's Purely Foreign Conduct. .............. 12

        3.  Unjust Enrichment Is Not an Independent Cause of Action, and Apple Cannot Seek Equitable Relief............................................. 15

III.  CONCLUSION.......................................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allergan, Inc. v. Athena Cosmetics,*
   738 F.3d 1350 (Fed. Cir. 2013).............................................................13, 14, 15

5

*Alternate Health USA Inc. v. Edalat,*
6
   2022 WL 767573 (C.D. Cal. Mar. 14, 2022 .........................................................6

7

*Andrews v. Sirius XM Radio Inc.,*
8
   932 F.3d 1253 (9th Cir. 2019) ......................................................................10, 12

9

*Argoquest v. Israel Discount Bank, Ltd.,*
   228 F. App'x 733 (9th Cir. 2007).........................................................................5

10

*Astiana v. Hain Celestial Grp., Inc.,*
11
   783 F.3d 753 (9th Cir. 2015) ...............................................................................15

12

*AtPac, Inc. v. Aptitude Solutions,*
13
   730 F. Supp. 2d 1174 (E.D. Cal. 2010)..........................................................10, 12

14

*Better Holdco, Inc. v. Beeline Loans, Inc.,*
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) ....................................................11

15

*Brodsky v. Apple, Inc.,*
16
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ..........................................................12, 15

17

*Carijano v. Occidental Petrol. Corp.,*
   643 F.3d 1216 (9th Cir. 2011) ...............................................................................5
18

19

*CCC Info. Servs., Inc. v. Tractable, Inc.,*
   2023 WL 415541 (N.D. Ill. Jan. 25, 2023) .......................................................12

20

*Chas S. Winner, Inc. v. Polistina,*
21
   2007 WL 1652292 (D.N.J. June 4, 2007) .........................................................12

22

*Clark v. Super. Ct.,*
   50 Cal. 4th 605 (2010) .......................................................................................14
23

24

*Contact Lumber Co. v. P.T. Moges Shipping Co.,*
   918 F.2d 1446 (9th Cir. 1990) ..............................................................................6

25

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
26
   276 F.3d 1150 (9th Cir. 2002) ..............................................................................8

27

*Dongxiao Yue v. Chun-Hui Miao,*
   2019 WL 5872142 (D.S.C. June 27, 2019)......................................................13

28

*El Omari v. Buchanan*,
   2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ........................................................11

*English v. Gen. Dynamics Mission Sys., Inc.*,
   2019 WL 2619658 (C.D. Cal. May 8, 2019) ...........................................................14

*Facebook, Inc. v. Studivz Ltd.*,
   2009 WL 1190802 (N.D. Cal. May 4, 2009) ..........................................................7, 8

*Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*,
   2014 WL 6871550 (N.D. Cal. Dec. 4, 2014) ............................................................5

*Forrett v. Gourmet Nut, Inc.*,
   2022 WL 6768217 (N.D. Cal. Oct. 11, 2022) .........................................................16

*Fraser v. Mint Mobile, LLC*,
   2022 WL 2391000 (N.D. Cal. July 1, 2022)........................................................11, 12

*Friends of Amador Cty. v. Salazar*,
   2011 WL 4709883 (E.D. Cal. Oct. 4, 2011) .............................................................8

*Gardiner v. Walmart, Inc.*,
   2021 WL 4992539 (N.D. Cal. July 28, 2021) .........................................................16

*Giraldo v. Drummond Co.*,
   493 F. App'x 106 (D.C. Cir. 2012)...........................................................................9

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) .................................................................................5

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)........................................................12

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ................................................................................15

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989)...............................................................................................14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ................................................................................10

*Hyp3r Inc. v. Mogimo Inc.*,
   2017 WL 11515712 (N.D. Cal. Nov. 8, 2017) ........................................................15

*Interface Partners Int'l Ltd. v. Hananel*,
   575 F.3d 97 (1st Cir. 2009)......................................................................................5

*Israel Discount Bank Ltd. v. Schapp*,
   505 F. Supp. 2d 651 (C.D. Cal. 2007).....................................................................5

*Klaehn v. Cali Bamboo LLC*,
  2022 WL 1830685 (9th Cir. June 3, 2022) ..........................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...................................................................................14

*Moriah v. Bank of China Ltd.*,
  107 F. Supp. 3d 272 (S.D.N.Y. 2015) ..................................................................9

*Nexans Wires S.A. v. Sark-USA, Inc.*,
  319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 F. App'x. 559 (2d Cir. 2006) ..............11, 12

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 11, 2020) ........................................................12

*Oracle Am., Inc. v. Serv. Key, LLC*,
  2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ..........................................................15

*Otani Props., L.P. v. Centerline Tool, Inc.*,
  2016 WL 10999268 (C.D. Cal. Mar. 28, 2016) ........................................................8

*Philippines v. Pimentel*,
  553 U.S. 851 (2008) ...........................................................................................9

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ...........................................................................................5

*Robinson v. HSBC Bank USA*,
  732 F. Supp. 2d 976 (N.D. Cal. 2010) ..................................................................15

*Safir v. BBG Comms., Inc.*,
  2012 WL 398991 (S.D. Cal. Jan. 10, 2012) ......................................................13, 14

*Sharma v. Volkswagen AG*,
  524 F. Supp. 3d 891 (N.D. Cal. 2021) ..................................................................16

*Six Dimensions, Inc. v. Perficient, Inc.*,
  969 F.3d 219 (5th Cir. 2020) ..............................................................................14

*Smith v. Apple, Inc.*,
  2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) .........................................................15

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..........................................................................15, 16

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
  2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) .........................................................7

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) .....................................................................................13

*Tsai v. Wang*,
    2017 WL 2587929 (N.D. Cal. June 14, 2017) ........................................................................15

*Umeda v. Tesla, Inc.*,
    2022 WL 18980 (9th Cir. Jan. 3, 2022) ....................................................................................5

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) .................................................................................................10

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) .....................................................................................................10, 11

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................................................................................5

*Wilson v. ImageSat Int'l N.V.*,
    2008 WL 2851511 (S.D.N.Y. July 22, 2008) .......................................................................5, 8

**Statutes**

18 U.S.C. § 1030.......................................................................................................... *passim*

**Other Authorities**

Fed R. Civ. P. Rule 12 .......................................................................................................1, 8, 9

Fed. R. Civ. P. Rule 19 ......................................................................................................1, 8, 9

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     INTRODUCTION

Plaintiff Apple Inc. has sued Defendants (collectively "NSO") for allegedly accessing computers Apple does not own, in a way that caused no cognizable damage or loss to Apple.  Apple alleges (falsely) that NSO accessed Apple's operating system on individual users' Apple devices without authorization.  But an operating system is not a "computer" protected by the Computer Fraud and Abuse Act ("CFAA"), and, in any event, a civil claim under the CFAA—unlike a criminal violation—requires the plaintiff to prove it suffered "damage or loss" as defined by the statute. 18 U.S.C. § 1030(g).  NSO's alleged conduct did not cause Apple any such damage or loss. Even if everything Apple alleges were true, therefore, it cannot bring this lawsuit under the CFAA.

The complaint's flaws run even deeper, further necessitating dismissal of this action.  *First*, the case should be dismissed under *forum non conveniens* because NSO's alleged conduct has no significant relationship to California, and Israeli courts would be an adequate forum for this action against Israel-based NSO.   *Second*, NSO's government customers are necessary parties who cannot be joined under Rule 19.   *Third*, the complaint does not state a claim under the CFAA or California's Unfair Competition Law ("UCL"), or a claim for unjust enrichment. Apple does not allege NSO unlawfully accessed any computer owned by Apple, and NSO's alleged access to Apple users' devices did not injure Apple in any way the CFAA protects.  Apple's UCL claim falls with its CFAA claim, and it also fails because the UCL cannot be applied to NSO's purely foreign conduct.  And unjust enrichment is not a standalone cause of action; it is an equitable remedy, which Apple cannot seek while asserting breach of contract or without alleging it lacks adequate legal remedies.

To the extent individual owners of Apple devices have claims against NSO's government customers, those claims should be raised directly by those owners against those governments. Apple seeks here to stand in for owners who have purchased Apple devices and wants this Court to make no distinction between NSO and its government customers.   A suit based on this premise, however, is fundamentally flawed: Apple did not suffer the alleged harm, and neither NSO nor Apple controls the evidence relevant to the claims at issue here.  For these reasons, the Court

should dismiss Apple's complaint with prejudice.

## II.    BACKGROUND

### A.    NSO's Technology and Its Use in Preventing Terrorism and Other Crimes.

Defendant NSO is an Israeli technology company that designs and markets a highly-regulated technology to government agencies for uses such as counterterrorism and investigating serious crimes.  (Declaration of Shalev Hulio ("Hulio Decl.") ¶¶ 5-9.)  Its sole director and majority shareholder is Defendant Q Cyber, also an Israeli corporation.  (Compl. ¶ 16; Hulio Decl. ¶ 1.) NSO's customers are exclusively governments and their authorized agencies.  (Hulio Decl. ¶ 9.)

The export of NSO's Pegasus technology is regulated under Israel's Defense Export Control Law ("ECL").  (*Id.* ¶ 5, Exh. A.)  NSO must register with the Israeli Ministry of Defense ("MoD") and obtain appropriate export licenses.  (*Id.* ¶ 6.)  Under the ECL, the MoD may investigate NSO and refuse or cancel NSO's registration.  (*Id.*)  The MoD may also grant or deny individual licenses, considering several factors such as the intended use of NSO's technology and the identity of its customer, or revoke NSO's licenses entirely.  (*Id.*; ECL Ch. C(3-4)). The MoD may also request declarations from NSO and information about its customers.  (ECL Ch. D(6)(b)(1-4).) NSO customer contracts incorporate requirements that NSO customers demonstrate their identities and provide any necessary documentation for MoD approval.  (Hulio Decl. ¶¶ 6-7.)  MoD also requires NSO to have Pegasus end-users sign end-use certificates declaring that the technology will be used only to investigate terrorism and serious crimes. (*Id.* ¶ 8.)

NSO has voluntarily taken additional measures to ensure its technology is used responsibly by authorized authorities.  Beyond the ECL, NSO also takes into account U.S. and European Union export control restrictions.  (*Id.* ¶ 10.)  It also conducts due diligence on all potential customers, rule-of-law considerations, and other items.  (*Id.*)

NSO requires its customers—the governments and authorized agencies that license NSO's technology—to agree that they will use the technology only for the prevention or investigation of serious crimes and terrorism, and that they will immediately notify NSO if there is any potential misuse.  (*Id.* ¶ 11.)  If a customer improperly uses NSO's technology, NSO can suspend or

terminate service—something NSO has done in the past.  (*Id.*)  And the Israeli government may deny or revoke export licenses if it learns of an abuse of NSO's technology or non-compliance with the intended use, such as using the technology to violate human rights.  (*Id.*)

In addition, NSO's technology includes certain technical safeguards, such as general and customer-specific geographic limitations.  (*Id.* ¶ 12.)  For example, NSO's Pegasus technology cannot be used against U.S. mobile telephone numbers or devices within U.S. geographic bounds.  (*Id.*)

**B.      Use of Apple Devices in Committing Terrorism and Other Crimes.**

While Apple's security protections are important for good-faith users of Apple devices, they can serve as cloaks for nefarious criminals who only care about privacy to the extent it enables them to conceal their crimes.  It is no surprise Apple detests NSO's technology, because it permits governments to investigate how terrorists and other serious criminals use Apple devices to facilitate their heinous acts.

Take, for example, the December 2015 terrorist attack here in California.  After the FBI retrieved the iPhone of the shooter who killed 14 people and wounded 22 others in San Bernardino, Apple refused to help the FBI unlock the device to determine whether additional threats to national security existed.  As a result of Apple's refusal to cooperate, the FBI was required to pay nearly $1 million to a contractor for a technical solution that would allow access to the terrorist's iPhone.[1] In bringing this suit, Apple goes far beyond refusing to assist law enforcement investigate criminal misuse of its products—it now attempts to prevent law enforcement and national security agencies of governments from enlisting contractors to develop technical solutions to do so, as the FBI did.

**C.      Alleged Use of Apple's Services by NSO.**

Apple's allegations are divorced from the reality of NSO's business.  NSO does not target anyone, and it contractually prohibits its customers from using the Pegasus technology against anyone not a suspected terrorist or serious criminal.  (Hulio Decl. ¶ 16.)  And if any of NSO's

---

[1] Mark Hosenball, *FBI paid under $1 million to unlock San Bernardino iPhone*, Reuters (Apr. 28, 2016),   https://www.reuters.com/article/us-apple-encryption/fbi-paid-under-1-million-to-unlock-san-bernardino-iphone-sources-idUSKCN0XQ032.

government customers installed NSO's technology on any particular device, then that government would have been acting on its own behalf—without NSO's involvement.  (*Id.* ¶ 15.)

Notably, Apple concedes "Defendants did *not* breach data contained on Apple's servers." (Compl. ¶ 5 (emphasis added).)  Apple does not allege NSO stole data from it or altered data on its servers.  Nor does Apple allege NSO accessed any *Apple-owned* devices. Rather, the only "protected computers" under the CFAA the complaint identifies are "Apple's users' devices." (*See id.* ¶¶ 64-69.)  But Apple does not allege it owns its users' devices; instead, it alleges it owns only the "operating-system software" installed on those third-party devices.  (*Id.* ¶¶ 70, 77.)

NSO has no knowledge of or control over the information, if any, a customer may have collected from any Apple user's device.  (Hulio Decl. ¶ 17.)  NSO does not monitor anybody with its technology, and it contractually prohibits its customers from using the technology for anything other than fighting terrorism and serious crime.  (*Id.* ¶ 16.)

Apple alleges NSO "abuse[d] Apple services and servers."  (Compl. ¶ 5.)  Even setting aside the vagueness of this allegation, it is unsupportable.  NSO does not operate any of its technologies—it markets and licenses them to its government customers. (Hulio Decl. ¶ 13.)  Those customers themselves then operate the technologies to advance their own governmental interests in fighting terrorism and serious crime.  (*Id.*)  NSO merely provides advice and technical support to assist its customers with setting up, as opposed to operating, its technologies.  (*Id.*)  NSO does not participate in any customer's installation of NSO technology on any device.  (*Id.* n.1.)  In fact, every export control license granted NSO prohibits it from operating the technologies it licenses to foreign governments and authorized agencies.  (*Id.* ¶ 14.)  Each of these export control licenses further proscribes NSO's remote access to the technology it has licensed for anything but maintenance unrelated to operation of the technology.  (*Id.*)

## III.   ARGUMENT

### A.   The Court Should Dismiss for *Forum Non Conveniens*.

The Court should dismiss Apple's complaint for *forum non conveniens*.  Dismissal for *forum non conveniens* is appropriate when there is "an adequate alternative forum" and the balance

of "private" and "public" factors favors dismissal.  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020).  That is the case here. This action has no material connection to California and should be brought in Israel.

### 1.      Israel is an Adequate Alternative Forum.

Israel is an adequate alternative forum.  *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 677 (N.D. Cal. 2020).  "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  As a citizen of Israel (Compl. ¶¶ 16-17), NSO is amenable to process in Israel.  And Israel can "provide 'some remedy'" for Plaintiff's claims, which is all that is required for Israel to be an adequate forum.  *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1225-26 (9th Cir. 2011).  That requirement is "easy to pass," *id.* (internal quotation marks omitted), and it is satisfied here because Israeli courts would recognize Apple's breach of contract claim. *See Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 100, 103 (1st Cir. 2009) (recognizing Israel entertains breach of contract actions).  Indeed, "[c]ourts routinely hold that Israel is a proper forum and dismiss cases on the grounds that it would be more appropriate to hear a case in Israel." *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007); *see, e.g.*, *Hananel*, 575 F.3d at 103; *Argoquest v. Israel Discount Bank, Ltd.*, 228 F. App'x 733 (9th Cir. 2007); *Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*, 2014 WL 6871550, at *2 (N.D. Cal. Dec. 4, 2014); *Wilson v. ImageSat Int'l N.V.*, 2008 WL 2851511, at *6 (S.D.N.Y. July 22, 2008).

### 2.      The Balance of "Private" and "Public" Factors Favors Dismissal

The "private factors" favor dismissal.  Those factors are "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Umeda v. Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022).

The burden on NSO to litigate in California is great—it is located in Israel and has no property or employees in California.  Apple does not allege that NSO ever designed any technology in California or the United States, or that any of NSO's foreign government customers have ever used NSO's technology on any device located in California or the U.S.  (Compl. ¶¶ 11-12.)  Indeed, NSO's potential witnesses and evidence are located in Israel (*see* Hulio Decl. ¶ 4), and no conduct Apple challenges was carried out by NSO in the U.S.

Many of those foreign witnesses and much of that foreign evidence may prove unavailable in this Court.  Israel's export control laws impose strict limits on the information NSO, its employees, or any other Israeli witness may disclose outside of Israel.  (Hulio Decl. ¶ 5.)  Depositions of witnesses in Israel are possible, although they are very rare.  (Blecher Decl.¶ 2.)  If deposition questions call for information subject to the ECL's restrictions, a witness who provides restricted information would be subject to criminal penalties.  (Blecher Decl.¶¶ 3.)  There are procedures available in Israel's domestic court proceedings that could be used in these circumstances to allow a witness to answer questions without fear of prosecution, but those procedures would not be available in a deposition taken to be used outside of Israel.  (Blecher Decl. ¶¶ 4-6.)  Therefore, Israeli witnesses could testify if this case were in Israel but could not give the same testimony for use in this case.  (Blecher Decl. ¶¶ 3-6.)

Israeli witnesses, including NSO's employees and former employees, also may be unable (based on Israeli law) or unwilling to testify in the United States, and they cannot be compelled to appear before this Court.  *See Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990) (holding foreign defendant could not "compel [foreign] witnesses to appear before U.S. courts"); *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at *8-9 (C.D. Cal. Mar. 14, 2022) (holding Canadian defendant could not compel Canadian witnesses to "to testify in American courts").

Finally, any potential judgment against NSO could be more easily enforced in Israel, where NSO's assets and operations are located.  *See Edalat*, 2022 WL 767573, at *9 (holding judgment against Canadian defendant "would be easier to enforce if that judgment was rendered by a Canadian

court," which "weighs strongly in favor of dismissal"). These factors all support dismissal. *See Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009) (finding "private interest factors" favored dismissal where foreign witnesses were more important than U.S.-based witnesses, testimony of foreign-resident witnesses could likely not "be compelled in this Court," and foreign judgment would be "more effective" than U.S. judgment (cleaned up)).

The "public factors" also favor dismissal. The public factors are "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596, at *11 (C.D. Cal. Jan. 17, 2020). A court in this District has held these factors favored dismissal for reasons that also apply here. *See Studivz*, 2009 WL 1190802, at *2.

In *Studivz*, Facebook (a California company) brought a lawsuit in the U.S. to recover for economic injuries caused by the defendant's German website, and the court concluded the lawsuit should have been brought in Germany. *Id.*[2] Although the court found "the majority of the public interest factors [we]re neutral," it found the "local interest factor" favored dismissal. *Id.* at *3. Even if U.S. law applied to Facebook's claims, the court found it "far from clear that the predominantly economic injury that Facebook may have sustained in California outweighs Germany's interest in deciding a controversy whose outcome may affect the availability of a website used by millions of its citizens." *Id.* The court "discounted substantially" the plaintiff's "choice of forum" because it was "a multinational company with a significant business presence in Germany." *Id.* at *2.

The same considerations favor dismissal here. As in *Studivz*, California has little interest in this lawsuit beyond Apple's residence, since Apple does not and cannot allege NSO or any of its government customers took any purportedly wrongful action in California. And the relevance of Apple's "choice of forum must be discounted substantially because" Apple is a massive

---

[2] The court deferred a final "ruling on *forum non conveniens*" pending a decision on personal jurisdiction, but it left no doubt it would dismiss the case under *forum non conveniens*. *Id.*

international corporation—indeed, the largest company in the world—with "a significant business presence" in Israel. *Studivz*, 2009 WL 1190802, at *2; *see* Apple, *Careers at Apple – Israel*, https://www.apple.com/careers/il/hardware.html.

Israel, in contrast, has strong national-security interests in a lawsuit against an Israeli defense-technology company, including protecting information governed by Israel's export control laws or related to the Israeli government's decisions whether to approve particular NSO customers. (Hulio Decl. ¶¶ 5–8); *Wilson*, 2008 WL 2851511, at *7. The exclusively "economic injury that [Apple] may have sustained in California" does not outweigh Israel's interests. *Studivz*, 2009 WL 1190802, at *3.

## B. The Court Should Dismiss for Failure to Join an Indispensable Party.

The Court should also dismiss the complaint because Apple did not and cannot join NSO's foreign-government customers under Rule 19. A court must dismiss an action for failure to join a "required party" when the party cannot be joined and the action, "in equity and good conscience, . . . should be dismissed." Fed. R. Civ. P. 19; *see* Fed. R. Civ. P. 12(b)(7). NSO's customers are required parties, they cannot be joined, and the action should not proceed without them.

NSO's customers are required parties because, in their absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Apple seeks an injunction "requiring Defendants to identify the location of *any and all* information obtained . . . and to delete *all* such information." (Compl., Prayer for Relief ¶ B (emphasis added).) But NSO's customers, not NSO, are the entities that collect and store information. NSO does not collect or store any information collected by its customers. (Hulio Decl. ¶ 17.) Apple thus cannot receive the injunctive relief it seeks unless the injunction binds NSO's customers, and the injunction will not bind NSO's customers unless they are joined as parties. That makes NSO's customers required parties under Rule 19. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155–56 (9th Cir. 2002) (holding parties are required if injunction will be ineffective without them).[3]

---

[3] *See Otani Props., L.P. v. Centerline Tool, Inc.*, 2016 WL 10999268, at *1 (C.D. Cal. Mar. 28, 2016); *Friends of Amador Cty. v. Salazar*, 2011 WL 4709883, at *2 (E.D. Cal. Oct. 4, 2011).

NSO's customers cannot be joined, however, because they are foreign governments immune from suit. *Philippines v. Pimentel*, 553 U.S. 851, 865 (2008). And "when a required-entity sovereign is not amenable to suit," a "case may not proceed." *Id.* at 867.  Foreign governments are entitled to have the legality of their actions determined in their own courts. *Id.* at 866. Litigating Apple's claims in the United States would thus prejudice NSO's customers by ignoring "their sovereign status" and "bypass[ing] [their] courts without right or just cause." *Id.* at 866-67; *see also* Fed. R. Civ. P. 19(b)(1) (suggesting dismissal when judgment "might prejudice" the absent "person or the existing parties").[4]

### C.    The Court Should Dismiss Apple's CFAA, UCL, and Unjust Enrichment Claims for Failure to State a Claim.

As explained above, the Court should dismiss Apple's entire complaint. But if the Court does not dismiss the entire complaint, it should still dismiss Apple's CFAA, UCL, and unjust enrichment claims under Rule 12(b)(6)—leaving only its breach of contract claim.

#### 1.    Apple Cannot State a CFAA Claim Because NSO's Alleged Conduct Did Not Cause Apple Any Statutory "Damage or Loss."

Apple is not the proper plaintiff to bring a CFAA claim to challenge the conduct described in the complaint. The CFAA is a primarily criminal statute that, as relevant to this case, prohibits "unauthorized access" to "protected computers." 18 U.S.C. § 1030(a). In order to bring a civil action under the CFAA, a plaintiff must establish (among other things) that it "suffere[d] damage

---

[4]  Proceeding without NSO's customers would also "prejudice" NSO. Fed. R. Civ. P. 19(b)(1). NSO does not know which, if any, of its customers conducted any of the alleged activities challenged in Apple's complaint and does not know "the location" of the "information obtained," if any, by any customer. (Compl., Prayer for Relief ¶ B.) To learn that information, NSO would need to seek discovery from its customers—but that discovery would be barred by the customers' sovereign immunity. *See Giraldo v. Drummond Co.*, 493 F. App'x 106 (D.C. Cir. 2012) (holding sovereign immunity prohibited court from compelling testimony from ex-president of Colombia); *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277-79 (S.D.N.Y. 2015) (holding sovereign immunity prohibited court from compelling testimony of agent of Israeli government). Without that discovery, NSO would not be able to defend itself adequately by proving it did not monitor the allegedly targeted Apple users. That inability to present a defense will prejudice NSO, and it is grounds for dismissal.

1   or loss by reason of a violation" of the CFAA. *Id.* § 1030(g). Apple cannot make that required

2   showing. Apple does not own the computers it alleges were accessed by NSO, and NSO's alleged

3   access to the computers did not cause Apple "damage or loss" as defined by the CFAA.

4       The only "protected computers" the complaint identifies are "Apple's users' devices."

5   (Compl. ¶¶ 64-69.) But Apple does not allege it owns those devices; it allegedly owns only the

6   "operating-system software" installed on them. (Compl. ¶ 70.) Apple likewise does not, and

7   cannot, allege its operating-system software is a "computer" under the CFAA. *See* 18 U.S.C.

8   § 1030(e)(1) (defining "computer"). Thus, even taking Apple's allegations of NSO's conduct as

9   true, NSO did not allegedly "access" any "protected computer" to which Apple has any rights. 18

10  U.S.C. § 1030(a). And assuming the truth of Apple's allegations, NSO's alleged access to

11  individual users' devices would have injured only those individuals.

12      Apple does not adequately plead it suffered any "damage or loss," as the CFAA defines

13  those terms, caused by NSO's alleged access to Apple users' devices. As the Supreme Court has

14  held, the CFAA's definitions of "damage" and "loss" are limited. *Van Buren v. United States*, 141

15  S. Ct. 1648, 1659–60 (2021); *accord Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262–63

16  (9th Cir. 2019). For purposes of the CFAA, "damage" requires "impairment to the integrity or

17  availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "The term 'loss'

18  likewise relates to costs caused by harm to computer data, programs, systems, or information

19  services." *Van Buren*, 141 S. Ct. at 1659–60 (citing 18 U.S.C. § 1030(e)(11)). "Damage" and

20  "loss" are thus both "[l]imit[ed]" to "technological harms—such as the corruption of files—of the

21  type unauthorized users cause to computer systems and data." *Id.*; *accord hiQ Labs, Inc. v.*

22  *LinkedIn Corp.*, 31 F.4th 1180, 1195 n.12 (9th Cir. 2022); *accord AtPac, Inc. v. Aptitude Solutions*,

23  730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010). And because the CFAA is a criminal statute, the

24  "rule of lenity" requires courts to construe its terms "narrowly" and resolve "any doubt" about its

25  scope against liability. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012). This rule of

26  "narrow interpretation" applies "to civil actions." *hiQ Labs*, 31 F.4th at 1200.

27      Apple does not allege any damage or loss that falls within the CFAA's narrow "statutory

28  

---

DEFENDANTS' RENEWED MOTION                                      Case No. 3:21-cv-09078-JD
TO DISMISS

definitions." *Van Buren*, 141 S. Ct. at 1659. Apple does not adequately plead "damage"; it does not allege NSO "impair[ed] . . . the integrity or availability of" any of Apple's "program[s]," "system[s], or information." 18 U.S.C. § 1030(e)(8). Nor does it plead any "loss" that is "relate[d] to costs caused by harm to computer data, programs, systems, or information services," as the CFAA requires. *Van Buren*, 141 S. Ct. at 1659–60. Apple rests its interest in NSO's alleged conduct entirely on the allegation that Apple "retains ownership of its operating-system software." (Compl. ¶ 70.) But Apple does not allege NSO caused any "technological harms" to Apple's software. *Van Buren*, 141 S. Ct. at 1660. Apple does not allege, for example, that NSO "corrupt[ed]" Apple's operating system, *id.*, altered any of its data, or prevented its operating system from functioning. To the contrary, Apple alleges NSO "did *not* breach data contained on Apple's servers." (Compl. ¶¶ 5, 69 (emphasis added).)

Instead, Apple claims "loss" in the form of costs "to investigate and remediate Defendants' conduct." (Compl. ¶¶ 72, 79.) But courts have "consistently" held that costs, to qualify as "loss," must be "cost[s] of investigating or remedying damage *to a computer*." *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) (emphasis added), *aff'd*, 166 F. App'x. 559 (2d Cir. 2006); *see El Omari v. Buchanan*, 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *3-4 (S.D.N.Y. July 26, 2021). That means the costs must have "related to remedying technological harms *inflicted on the breached computer*." *Fraser v. Mint Mobile, LLC*, 2022 WL 2391000, at *2 (N.D. Cal. July 1, 2022) (emphasis added). Apple does not allege it investigated or remedied any damage *to a computer*; it does not allege it investigated or repaired any Apple device user's device. Instead, Apple allegedly investigated and remedied a *preexisting vulnerability*—one not created by NSO—in its *operating-system software*. (Compl. ¶¶ 56-58.) As previously explained, Apple's software is not a computer, and Apple does not allege any facts showing NSO's customers' access to device users' computers damaged Apple's software in any way. Therefore, Apple was not "investigating or remedying damage to a computer," and the costs it allegedly incurred are not "loss" under the

CFAA. *Nexans*, 319 F. Supp. 2d at 475; *see Fraser*, 2022 WL 2391000, at *2.[5]

Moreover, Apple did not incur any of its alleged repair costs "by reason of" NSO's alleged conduct. 18 U.S.C. § 1030(g). Under the CFAA's definition of "loss," repair costs must have been incurred to "restor[e] the data, program, system, or information *to its condition prior to the offense.*" *Id.* § 1030(e)(11) (emphasis added). That is *not* what Apple alleges. The "vulnerability" allegedly exploited by NSO existed before any of the conduct described in the complaint. (Compl. ¶¶ 7, 37, 53, 58.) NSO's alleged conduct may have alerted Apple to the vulnerability's existence, but NSO did not create it or alter Apple's software in any way. So by fixing the vulnerability, Apple was not "restoring" its operating system "to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). Apple was creating *new* software to counteract a vulnerability *Apple*—not NSO— created. Because that preexisting vulnerability was not "caused by computer intrusions," fixing it does not fall within the CFAA's "narrow conception of loss." *Andrews*, 932 F.3d at 1262-63.[6]

## 2. Apple's UCL Claim Falls with Its CFAA Claim, and the UCL Cannot Be Applied to NSO's Purely Foreign Conduct.

Apple's UCL claim depends on its claim NSO violated the CFAA. (Compl. ¶¶ 81–82). Because Apple does not adequately plead a CFAA violation, it cannot state a UCL claim. *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *8 (N.D. Cal. Mar. 26, 2013).

Even if Apple had adequately pleaded a CFAA violation, however, its UCL claim should

---

[5] *See also Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *4 (N.D. Cal. Nov. 11, 2020) (holding value of stolen cryptocurrency is not "loss" under CFAA); *AtPac*, 730 F. Supp. 2d at 1184-85 (finding no "loss" because plaintiff did not "identify impairment of or damage to the computer system"); *CCC Info. Servs., Inc. v. Tractable, Inc.*, 2023 WL 415541, at *3 (N.D. Ill. Jan. 25, 2023) (finding no "loss" because investigation did not relate to "technological damage"); *Chas S. Winner, Inc. v. Polistina*, 2007 WL 1652292, at *4 (D.N.J. June 4, 2007) ("hir[ing] a computer expert to conduct an assessment and investigation" not "loss" unless "related to investigating or remedying damage to the computer").

[6] For the same reason, the alleged costs of Apple "increasing [its] security measures to detect and prevent future attacks" (Compl. ¶ 57) are not "loss" under the CFAA. Writing new code to update Apple's software's security—which Apple alleges it does continually as a regular part of its business (Compl. ¶¶ 37–38)—is not "restoring" the software "to its condition prior to the offense" because of NSO's alleged conduct. 18 U.S.C. § 1030(e)(11).

still be dismissed because the UCL does not apply to NSO's extraterritorial conduct. The UCL applies only to "unlawful business act[s] or practice[s] committed *in California*." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) (emphasis added). It does not "operate extraterritorially," and does not apply "to occurrences outside [California]." *Id.* at 1207; *see also Allergan, Inc. v. Athena Cosmetics*, 738 F.3d 1350, 1358-59 (Fed. Cir. 2013) (holding UCL does not apply extraterritorially).

Apple does not and cannot identify any allegedly unlawful conduct NSO committed in California. Apple does not allege NSO designed or tested its technology in California. Apple does not allege NSO or any of its customers operated NSO's technology in California or accessed any Apple user's device in California. Although Apple alleges NSO transmitted messages over "Apple servers located in California" (Compl. ¶ 24; *see also id.* ¶ 26), it does not allege that NSO did that *in* or *from* California, nor that NSO had any knowledge or control over which Apple servers its messages would pass through. The alleged happenstance that messages allegedly sent *from* foreign countries *to* foreign countries happened to pass through Apple servers in California does not establish NSO committed any of its alleged conduct "within [California's] borders," as is required for the UCL to apply. *Allergan*, 738 F.3d at 1359; *see Safir v. BBG Comms., Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding UCL did not apply merely because "telephone calls at issue" were "routed through switches in the United States" and "rated and billed from San Diego"); *cf. Dongxiao Yue v. Chun-Hui Miao*, 2019 WL 5872142, at *8 n.9 (D.S.C. June 27, 2019) (opining UCL would not apply to out-of-state conduct "directed to [plaintiff] and his website in California"). In *Sullivan*, the California Supreme Court refused to apply the UCL to conduct with a much stronger connection to California. *Sullivan*, 51 Cal. 4th at 1208 (holding UCL did not apply to California business's nonpayment of overtime to employees outside of California, even though it made its payment decisions from its California headquarters).

Apple's request for relief underscores that it seeks to hold NSO liable for purely extraterritorial conduct. Apple seeks an injunction prohibiting NSO from, among other things, "accessing any . . . Apple products or services," no matter where they are located, and "developing,

distributing, using, and/or causing or enabling others to use any spyware, malware or other malicious devices on Apple devices," no matter where NSO commits that conduct or where the Apple devices are located. (Compl., Prayer for Relief ¶¶ A, C.) But the Commerce Clause of the U.S. Constitution prohibits California from "regulat[ing] commerce entirely outside of the state's borders." *Allergan*, 738 F.3d at 1359. That is true even if the foreign conduct "has effects within the state." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Apple thus cannot use the UCL to prohibit NSO or its customers from designing, developing, distributing, or using its technology outside of California, even if (as Apple alleges) that conduct "cause[s] harm to Apple at its principal place of business in California." (Compl. ¶ 24); *see Allergan*, 738 F.3d at 1358-59 (holding UCL could not be applied to sales outside of California, even if sales "cause[d] [plaintiff] an injury . . . in California"); *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 229-30 (5th Cir. 2020) (holding UCL did not apply to defendant's conduct outside of California, even though defendant agreed to California "choice-of-law provision," defendant "signed the agreement" in California, and plaintiff "was originally incorporated and headquartered in California"); *English v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019) ("'[T]he concept of extraterritoriality . . . concerns legislation that regulates *conduct* that occurs in a foreign jurisdiction—regardless of the plaintiff's residency.'"); *Sajfr*, 2012 WL 398991, at *4 (holding plaintiffs could not apply California law to extraterritorial conduct, although calls at issue were routed through switches in the U.S. and billed from San Diego).

At a minimum, the Court should dismiss Apple's UCL claim to the extent it seeks damages, disgorgement, or an injunction covering any conduct that does not take place in California. "[D]amages cannot be recovered" under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Neither can "disgorgement of profits," except for "restitution" of "monies given to the defendant [by the plaintiff] or benefits in which the plaintiff has an ownership interest." *Id.* at 1148; *see Clark v. Super. Ct.*, 50 Cal. 4th 605, 613 (2010) ("The only monetary remedy available in a private action under the [UCL] is restitution."). Apple does not seek restitution for any money or benefits it gave to NSO (Compl. ¶¶ 94-97), so it cannot seek

disgorgement under the UCL. *See Hyp3r Inc. v. Mogimo Inc.*, 2017 WL 11515712, at *2-3, 6 (N.D. Cal. Nov. 8, 2017) (granting motion to dismiss UCL claim to the extent it sought non-restitutionary monetary relief). And because the UCL cannot be applied to conduct outside of California, it cannot support an injunction covering such extraterritorial conduct. *See Allergan*, 738 F.3d at 1358-60 (holding UCL could not support a nationwide injunction).

### 3.     Unjust Enrichment Is Not an Independent Cause of Action, and Apple Cannot Seek Equitable Relief.

The Court should dismiss Plaintiff's unjust enrichment claim because unjust enrichment is a remedy, "not a standalone cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "As a result, courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020); *accord Oracle Am., Inc. v. Serv. Key, LLC*, 2012 WL 6019580, at *10 (N.D. Cal. Dec. 3, 2012); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010).

Even if unjust enrichment were a standalone claim, it must be dismissed here. Unjust enrichment is a "quasi-contract claim[]," and "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim." *Brodsky*, 445 F. Supp. 3d at 133 (cleaned up) (quoting *Tsai v. Wang*, 2017 WL 2587929, at *7 (N.D. Cal. June 14, 2017)). Although Apple purports to plead unjust enrichment "in the alternative" (Compl. at 20), it may not do so "unless [it] also pleads facts suggesting that the contract may be unenforceable or invalid." *Tsai*, 2017 WL 2587929, at *8. Apple alleges it has an enforceable contract with NSO and does not allege any basis to find the contract unenforceable or invalid—indeed, there would be no basis to exercise personal jurisdiction over NSO in this case if the contract were *not* enforceable. Apple's unjust enrichment claim, therefore, must be dismissed. *Id.*; *Brodsky*, 445 F. Supp. 3d at 133.

In addition, Apple cannot seek the equitable remedies of restitution or disgorgement unless it "alleg[es] that [it] lack[s] an adequate remedy at law." *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022); *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *Smith v. Apple,*

*Inc.*, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023). But Apple does not plead it lacks an adequate legal remedy or explain how the compensatory damages it seeks could be inadequate. This requires dismissal of its unjust enrichment claim and its request for disgorgement. *See Forrett v. Gourmet Nut, Inc.*, 2022 WL 6768217, at *5 (N.D. Cal. Oct. 11, 2022) (dismissing unjust enrichment claim under *Sonner*); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907-09 (N.D. Cal. 2021) (same); *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (same).

## IV.   CONCLUSION

The Court should dismiss Apple's complaint with prejudice.


Dated:  March 10, 2023                    KING & SPALDING LLP

By:     */s/Joseph N. Akrotirianakis*
        JOSEPH N. AKROTIRIANAKIS

Attorneys for Defendants
NSO GROUP TECHNOLOGIES LIMITED and
Q CYBER TECHNOLOGIES LIMITED