1   WILMER CUTLER PICKERING
      HALE AND DORR LLP
2   BENJAMIN A. POWELL (SBN 214728)
      Benjamin.Powell@wilmerhale.com
3   DAVID W. BOWKER (SBN 200516)
      David.Bowker@wilmerhale.com
4   2100 Pennsylvania Ave NW
    Washington, DC 20037
5   Telephone: (202) 663-6000

6

7   *Attorneys for Plaintiff Apple Inc.*

8

9

10                **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12

13   APPLE INC.,                          Case No. 3:21-cv-09078-JD

14                    Plaintiff,          **PLAINTIFF   APPLE   INC.'S**
                                          **MEMORANDUM   OF   LAW   IN**
15          v.                            **OPPOSITION TO DEFENDANTS'**
                                          **RENEWED MOTION TO DISMISS**
16   NSO GROUP TECHNOLOGIES LIMITED and
     Q CYBER TECHNOLOGIES LIMITED,
17                                        Hearing Date: None set
                     Defendants.          Judge: Hon. James Donato
18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

Page

FACTUAL BACKGROUND ......................................................................................................2

ARGUMENT ...........................................................................................................................3

I.      Defendants Agreed To This Jurisdiction and Cannot Claim Inconvenience. .......................3

II.     Defendants' Unidentified Customers Are Not Indispensable Parties. ...............................9

III.    Defendants' Creation And Use Of Abusive Exploits Violated The CFAA......................10

IV.     Defendants' CFAA Violations Also Violate The California UCL's Unlawful
        Prong. ......................................................................................................14

V.      Apple Adequately States a Claim in the Alternative for Unjust Enrichment. ...................15

CONCLUSION ........................................................................................................................15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**CASES**

4

*Adobe Systems Inc. v. Blue Source Group, Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) .......................................................................14

5

6

*Alhathloul v. DarkMatter Group*, No. 3:21-cv-01787-IM,
    2023 WL 2537761 (D. Or. Mar. 16, 2023)...................................................................9

7

8

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
    738 F.3d 1350 (Fed. Cir. 2013).................................................................................14

9

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ...................................................................................12

10

11

*Argoquest Holdings, LLC. v. Israel Discount Bank, Ltd.*,
    228 F. App'x 733 (9th Cir. 2007) ................................................................................4

12

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) .....................................................................................15

13

14

*Atlantic Marine Construction Co. v. United States District Court for Western
    District of Texas*,
    571 U.S. 49 (2013)...............................................................................................3, 8

15

16

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
    730 F. Supp. 2d 1174 (E.D. Cal. 2010)......................................................................12

17

18

*Beaver v. Tarsadia Hotels*,
    816 F.3d 1170 (9th Cir. 2016) ...................................................................................14

19

*Benny v. Pipes*,
    799 F.2d 489 (9th Cir. 1986) ......................................................................................3

20

21

*Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20-CV-8686,
    2021 WL 3173736 (S.D.N.Y. July 26, 2021) .............................................................13

22

23

*Bloate v. United States*,
    559 U.S. 196 (2010)..................................................................................................12

24

*Broidy Capital Management, LLC v. Qatar*, No. 18-cv-2421-JFW,
    2018 WL 6074570 (C.D. Cal. Aug. 8, 2018)................................................................9

25

26

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .....................................................................................5

27

28

*Cave Consulting Group, Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-
SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017)......................................................14

*CCC Information Services, Inc. v. Tractable, Inc.*, No. 18-cv-7246,
2023 WL 415541 (N.D. Ill. Jan. 25, 2023) ...............................................................13

*Clarke v. Pacific Gas & Electric Co.*,
501 F. Supp. 3d 774 (N.D. Cal. 2020) ......................................................................15

*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
918 F.2d 1446 (9th Cir. 1990) ....................................................................................6

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ....................................................................................5

*Dongxiao Yue v. Chun-Hui Miao*, No. 18-3467-MGL-PJG,
2019 WL 5872142 (D.S.C. June 27, 2019)................................................................14

*El Omari v. Buchanan*, No. 20 Civ. 2601 (VM),
2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ...........................................................13

*Estate of Klieman v. Palestinian Authority*,
272 F.R.D. 253 (D.D.C. 2011)....................................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ..................................................................................12

*Facebook, Inc. v. Rankwave Co.*, No. 19-cv-03738-JST,
2019 WL 8895237 (N.D. Cal. Nov. 14, 2019) ............................................................5

*Facebook, Inc. v. Studivz Ltd.*, No. C 08-3468 JF,
2009 WL 1190802 (N.D. Cal. May 4, 2009) ...............................................................8

*Fahrner-Miller Associates, Inc. v. Mars Antennas & RF Systems, Ltd.*, No. 14-cv-
03668-PSG, 2014 WL 6871550 (N.D. Cal. Dec. 4, 2014) ..........................................4

*Finjan, Inc. v. Cisco Systems, Inc.*, No. 5:17-cv-00072-BLF-SVK,
2019 WL 667766 (N.D. Cal. Feb. 19, 2019) ...............................................................7

*Flextronics International, Ltd. v. Parametric Technology Corp.*, No. 13-cv-
00034-PSG, 2014 WL 2213910 (N.D. Cal. May 28, 2014) .......................................12

*Fraser v. Mint Mobile, LLC*, No. C 22-00138 WHA,
2022 WL 2391000 (N.D. Cal. July 1, 2022)..............................................................13

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) ....................................................................................8

*Gerritsen v. Warner Brothers Entertainment Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................................................................10

*Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) .........................................................................3, 5, 6

*In re California Gasoline Spot Market Antitrust Litigation*, No. 20-cv-03131-JSC,
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)...........................................................15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
    Liability Litigation*, MDL No. 15-md-02672-CRB,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ................................................................6

*Israel Discount Bank Ltd. v. Schapp*,
    505 F. Supp. 2d 651 (C.D. Cal. 2007) ....................................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................10

*Kimberlite Corp. v. John Does 1-20*, No. C08-2147 TEH,
    2008 WL 2264485 (N.D. Cal. June 2, 2008) ..........................................................12

*Linde v. Arab Bank, PLC*,
    463 F. Supp. 2d 310 (E.D.N.Y. 2006) ....................................................................8

*Lundy v. Facebook Inc.*, No. 18-cv-06793-JD,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ........................................................15

*Multiven, Inc. v. Cisco Systems, Inc.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) ....................................................................12

*Nexans Wires S.A. v. Sark-USA, Inc.*,
    319 F. Supp. 2d 468 (S.D.N.Y. 2004)......................................................................13

*Nowak v. Xapo, Inc.*, No. 20-cv-03643-BLF,
    2020 WL 6822888 (N.D. Cal. Nov. 11, 2020) ........................................................13

*Piper Aircraft v. Reyno*,
    454 U.S. 235 (1981).............................................................................................5

*Roman v. Superior Court*,
    172 Cal. App. 4th 1462 (2009) ..............................................................................4

*Sajfr v. BBG Communications, Inc.*, No. 10-cv-2341 AJB,
    2012 WL 398991 (S.D. Cal. Jan. 10, 2012)............................................................14

*San Francisco Herring Ass'n v. Pacific Gas & Electric Co.*, No. 14-cv-04393-
    WHO, 2020 WL 6736930 (N.D. Cal. June 15, 2020) ..............................................15

*Shierkatz Rllp v. Square, Inc.*, No. 15-cv-02202-JST,
    2015 WL 9258082 (N.D. Cal. Dec. 17, 2015).........................................................4

*Shular v. United States*,
    140 S. Ct. 779 (2020).........................................................................................13

*Silicon Labs Integration, Inc. v. Melman*, No. C-08-0430 RMW,
   2009 WL 2044663 (N.D. Cal. July 9, 2009)..................................................................8

*Sullivan v. Oracle Corp.*,
   254 P.3d 237 (Cal. 2011) ........................................................................................14

*Tahan v. Hodgson*,
   662 F.2d 862 (D.C. Cir. 1981) ..................................................................................8

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .......................................................................1, 10, 11

*Ticketmaster L.L.C. v. Prestige Entertainment West, Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...................................................................12

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ...................................................................................4

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) ...................................................................................14

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021)...................................................................................1, 12, 14

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................................................5, 9, 11, 12

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
   407 F. Supp. 3d 931 (S.D. Cal. 2019)....................................................................3, 4

*Wilson v. ImageSat International N.V.*, No. Civ. 6176(DLC),
   2008 WL 2851511 (S.D.N.Y. July 22, 2008) ...........................................................5

*Wultz v. Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) .................................................................................7

*Yes To, Ltd. v. Hur*,
   779 F. Supp. 2d 1054 (N.D. Cal. 2011) .....................................................................4

**STATUTES AND RULES**

18 U.S.C. § 1030(a)(5)...............................................................................................11

18 U.S.C. § 1030(e)(8).........................................................................................10, 11

18 U.S.C. § 1030(e)(11)..............................................................................................12

18 U.S.C. § 1030(g) ...................................................................................................10

Exec. Order No. 14,093, 88 Fed. Reg. 18,957 (Mar. 27, 2023).................................9

§ 2, International Legal Assistance Law, 5758-1998 *available at*
    https://tinyurl.com/3ub9t2et.................................................................................................7

Fed. R. Civ. P. 12...........................................................................................................10

Fed. R. Civ. P. 28.............................................................................................................7

Fed. R. Civ. P. 37.............................................................................................................6

Fed. R. Civ. P. 44.1..........................................................................................................7

1
2
3
4
5

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited are twenty-first century mercenaries who have created sophisticated cyber-surveillance machinery targeting Apple, a U.S. company based in this jurisdiction.  Defendants' Renewed Motion to Dismiss ("Motion") should be denied because Apple has rights under U.S. law, California law, and binding Terms of Service to redress in this Court for its injuries.[1]

6
7
8
9
10
11

Defendants now accept that they have no immunity and are subject to jurisdiction here, but they still claim that the case should be heard in Israel under the doctrine of *forum non conveniens*. This argument fails because nearly all the relevant public and private factors overwhelmingly favor this Court as the proper forum and, in any case, Defendants waived any claim of inconvenience when they affirmatively agreed to Apple's Terms of Service and thereby consented here to mandatory and exclusive jurisdiction in this Court.

12
13
14
15

Defendants' "indispensable parties" argument also fails because every issue in this litigation can be adjudicated between Apple and the Defendants, without involving any of Defendants' purported government customers.  This Court can afford complete relief by awarding damages and enjoining Defendants' conduct without binding or requiring action by any third party.

16
17
18
19
20
21
22
23
24
25
26

Defendants are also wrong that Apple cannot bring a Consumer Fraud and Abuse Act ("CFAA") claim for unlawful access to Apple devices owned by Apple customers.  The Ninth Circuit has rejected that crabbed reading of the CFAA, recognizing that it is an error to "read[] an ownership or control requirement into the Act." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).  Similarly, Defendants' contention that Apple has not alleged cognizable "damage" or "loss" under the CFAA is based on an implausible statutory interpretation that is both untethered to the Complaint's actual allegations and foreclosed by Supreme Court precedent.  *Van Buren v. United States*, 141 S. Ct. 1648, 1659-1660 (2021).  Defendants' violations of the CFAA also suffice to establish an independent claim under California's unfair competition law, which creates a private cause of action for the victims of an "unlawful … business act or practice."  And finally, courts in this circuit, including this one, have recognized a cause of action for unjust enrichment

27
28

---

[1] Pursuant to the Court's February 16, 2023 order, Apple re-submits this Memorandum of Law in Support of its Opposition to Defendants' Renewed Motion to Dismiss (Dkt. 48).

1   seeking equitable remedies pled in the alternative to breach of contract.

2                              **FACTUAL BACKGROUND**

3          Since NSO's founding in 2010, Defendants have been in the business of computer hacking

4   and surveillance, accomplished by targeting and infecting computers, smartphones, and other

5   devices—including Apple's.  Compl. ¶¶ 2, 40.  Defendants' flagship hacking tool, "Pegasus," is

6   capable of commandeering a device's camera and microphone and revealing any personal data it

7   contains.  *Id.* ¶¶ 41-42.  Defendants invest enormous time and resources researching, developing,

8   and deploying hacks, also known as "exploits," tailor-made to install its Pegasus software on Apple

9   devices.  *Id.* ¶¶ 45-47.  Defendants' products and services are routinely deployed against

10  government officials, journalists, human rights activists, academics, and even U.S. diplomats.  *See*

11  *id.* ¶¶ 2, 12, 42-44.  NSO's conduct has thus led to widespread condemnation by the international

12  community, including sanctions imposed by the U.S. Commerce Department for "enabl[ing]

13  foreign governments to conduct transnational repression" and commit human rights abuses.  *See*

14  *id.* ¶ 3.  Even after government customers purchase Defendants' hacking wares, Defendants remain

15  involved in deployment of their spyware through every step of the Pegasus lifecycle, from design

16  and development to testing, demonstrating, training, consulting, and providing technical assistance

17  in coordinating attacks on Apple devices, servers, and users.  *Id.* ¶ 52.

18         In March 2021, cybersecurity researchers detected a new exploit on Apple devices, which

19  they named "FORCEDENTRY."  Compl. ¶¶ 48-49.  FORCEDENTRY is a "zero-click" exploit,

20  which allows Defendants to hack into an Apple device without any action or awareness by the

21  user.  *Id.* ¶ 49.  Defendants accomplished these attacks by creating Apple IDs and contacting Apple

22  servers in the United States and abroad to identify and target protected computer devices.  *Id.*

23  ¶¶ 50-51.  In creating these Apple IDs, Defendants affirmatively agreed to the iCloud Terms of

24  Service ("iCloud Terms") for each account.  *Id.* ¶¶ 46, 51.  Defendants then sent abusive data

25  through iMessage to disable critical security operations within the iOS software long enough to

26  deliver the Pegasus payload.  *Id.* ¶ 51.  To render the spyware, these exploits accessed both device

27  hardware, such as microphones and cameras, and the devices' iOS operating system.  *Id.* ¶¶ 41, 67.

28  Once installed, Pegasus would transmit sensitive personal data to a command-and-control server

operated by Defendants (or their clients with Defendants' assistance and support).  *Id.* ¶ 52.

Apple has incurred substantial losses from these unauthorized hacking activities.  For example, Apple was required to divert engineers from across the company and expend thousands of hours and significant company resources investigating, analyzing, reverse-engineering, and remediating Defendants' FORCEDENTRY exploit together with anticipatory measures to update Apple systems' defenses to prevent future unauthorized access and attacks.  Compl. ¶¶ 54, 56-61. Even today, Apple continues to discover harm to its proprietary servers and systems, as well as user devices, and suffers ongoing damage to its reputation.  *Id.* ¶¶ 59-61.

## ARGUMENT

## I.  Defendants Agreed To This Jurisdiction and Cannot Claim Inconvenience.

Defendants consented to litigate in this forum when they agreed to the iCloud Terms, which provide for mandatory and exclusive jurisdiction here.  They cannot now claim inconvenience to alter the contractual obligation they made when entering into an agreement with Apple.  Moreover, the doctrine of *forum non conveniens* is "'an exceptional tool to be employed sparingly,'" *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020), and is of no aid to Defendants here.  Defendants also fall far short of carrying their burden to show that "'the balance of private and public interest factors favors dismissal.'"  *Id.*[2]

### A.   *The iCloud Terms Foreclose Defendants' Forum Non Conveniens Argument.*

Defendants do not dispute that they agreed to the iCloud Terms, which contain a binding forum-selection clause here.  Defendants, highly sophisticated companies with international operations and clients, agreed to the iCloud Terms when they created Apple IDs.[3]  Compl. ¶¶ 16-17, 22, 50-51.  Under those terms, Defendants "agree[d] to submit to the personal and exclusive

---

[2] By not contesting personal jurisdiction in their motion, Defendants have waived any personal-jurisdiction defense.  *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

[3] Defendants have not contested the applicability of the iCloud Terms, presumably because standardized terms of service are binding on sophisticated parties that voluntarily agree to such terms when they sign up for services.  *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016); *Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, at *9 (N.D. Cal. Dec. 17, 2015) (rejecting unconscionability challenge from "highly sophisticated" parties); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1471 & n.2 (2009) (parties that voluntarily agreed to terms can claim only "minimal" oppression).  Here, Defendants acted voluntarily and repeatedly agreed to the iCloud Terms as part of their unlawful hacking.  Compl. ¶¶ 22, 86.

jurisdiction of the courts located within the county of Santa Clara, California, to resolve any dispute or claim arising from this Agreement." Compl. Ex. 1 at 19. Apple's breach of contract claim "aris[es]" directly from the iCloud Terms. Compl. ¶¶ 87-89; *see White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 944 (S.D. Cal. 2019) (breach of contract claims "paradigmatically fall within a contractual forum selection clause"). The CFAA, unjust enrichment, and unfair competition causes of action likewise involve breaches of the iCloud Terms and arise, in part, out of Defendants' misuse of Apple IDs, systems, and services governed by the iCloud Terms. *See* Compl. ¶¶ 66-67, 75-76, 81-82, 89.

"[W]hen the parties' contract contains a valid forum-selection clause, that clause 'represents [their] agreement as to the most proper forum,' and should be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013) (citations omitted). In *forum non conveniens* cases, "[t]he practical result is that forum-selection clauses will almost always control." *White Knight Yacht*, 407 F. Supp. 3d at 943.

Courts routinely enforce such clauses. In *Yes To, Ltd. v. Hur*, for example, the court enforced a forum-selection clause that—like Apple's—designated the courts of a specified California county as "the exclusive venue" for certain disputes. 779 F. Supp. 2d 1054, 1056 (N.D. Cal. 2011); *see also White Knight Yacht*, 407 F. Supp. 3d at 943 (enforcing clause stating "this insurance is subject to the law and practice of England and Wales and to the exclusive jurisdiction of the Courts of England and Wales" (emphasis omitted)). By contrast, Defendants have not identified a single *forum non conveniens* dismissal in favor of Israel over a valid forum-selection clause. Though they suggest (Mot. 5) that courts "'routinely … dismiss cases on the grounds that it would be more appropriate to hear a case in Israel,'" those cases support Apple because each involved a forum-selection clause that **mandated that the parties bring their disputes in Israel**. *See Argoquest Holdings, Inc. v. Israel Discount Bank, Ltd.*, 228 F. App'x 733 (9th Cir. 2007) (contract stated that "the sole forum would be the courts of Israel"); *Fahrner-Miller Associates, Inc. v. Mars Antennas & RF Sys., Ltd.*, 2014 WL 6871550, at *1 (N.D. Cal. Dec. 4, 2014) (agreement that "[a]ny litigation resulting from this agreement may take place only in a court of

competent jurisdiction situated in Israel"); *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 661 (C.D. Cal. 2007) (Israeli citizen plaintiff entered into a foreign forum-selection clause).[4]

  B. *The Forum Non Conveniens Factors Weigh Against Dismissal.*

  In any case, the public and private factors weigh overwhelmingly in favor of this Court as the proper forum. To obtain a *forum non conveniens* dismissal, "'a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal.'" *Global Commodities*, 972 F.3d at 1111. Defendants do not, and cannot, show that "the 'private interest' and 'public interest' factors **strongly favor**" Israel over this forum. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118-1119 (9th Cir. 2002) (emphasis added).

  **Private-Interest Factors.** The private-interest factors—which focus on the forum's convenience to the parties, including access to evidence and witnesses—weigh in favor of maintaining this dispute in California. It is well-established that there is a "strong presumption in favor of the plaintiff's choice of forum," particularly where the plaintiff is a "resident or citizen plaintiff[]" and "has chosen the home forum." *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-256 (1981). This is true even where the plaintiff is a multinational corporation. *See, e.g.*, *Facebook, Inc. v. Rankwave Co.*, 2019 WL 8895237, at *10 (N.D. Cal. Nov. 14, 2019). Buttressing that presumption are the facts that Apple is headquartered in California, was attacked and suffered injury in this forum, and has witnesses and evidence in this forum. Compl. ¶¶ 15, 54-61.

  Meanwhile, Defendants' claimed burdens about litigating in California are unavailing. Given the parties' respective locations and international presence, the convenience of the parties is at best neutral and points against dismissal. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229-1230 (9th Cir. 2011) (noting that convenience factor is neutral where similar logistical considerations would apply in either forum and reversing dismissal where private factors were neutral). Indeed, another court in this district has already rejected similar arguments by these same

---

[4] Defendants' Renewed Motion adds *Wilson v. ImageSat International N.V.* (Mot. 5, 8), but that case is inapposite because it involved an "essentially foreign commercial dispute" between an Israeli corporation and its two largest shareholders (also Israeli corporations), such that there were "important implications for Israel and virtually none for the United States." 2008 WL 2851511, at *7 (S.D.N.Y. July 22, 2008), *as amended* (July 30, 2008), *aff'd sub nom. Wilson v. Eckhaus*, 349 F. App'x 649 (2d Cir. 2009).

1    Defendants that Israel is a more suitable forum, *see WhatsApp Inc. v. NSO Group Technologies*

2    *Ltd.*, 472 F. Supp. 3d 649, 677 (N.D. Cal. 2020) (subsequent history omitted), holding that the

3    exercise of jurisdiction over NSO and Q Cyber in California is both reasonable and consistent with

4    due process—and for good reason.  Defendants are "highly lucrative" companies that contract with

5    foreign governments, utilize servers and data centers located in the United States and Europe for

6    their attacks, and conduct funding and marketing activities within the United States.  Compl. ¶¶ 11,

7    25, 27, 43, 55.  After broadcasting their international presence, licensing their technologies to

8    nations around the globe, and assisting in international cyber-attacks against American companies,

9    they cannot now be heard to argue that it would be "inconvenient" to litigate here.  *Forum non*

10    *conveniens* dismissal is inappropriate where a defendant "has substantial resources and

11    consequently will face no financial difficulties in bringing witnesses to the forum."  *In re*

12    *Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2017 WL 66281, at

13    *10 (N.D. Cal. Jan. 4, 2017).

14      Defendants fare no better threatening that their witnesses may not be willing to testify in

15    this Court.  *See* Mot. 6.  For one, these potential witnesses are NSO's own employees and are

16    therefore "within [NSO's] control."  *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d

17    1446, 1451 (9th Cir. 1990).  Nothing prevents those witnesses from testifying, either in person or

18    through videoconferencing, as appropriate.  To the extent they are NSO's directors, officers,

19    managing agents, or Rule 30(b)(6) corporate designees, NSO must produce them for deposition or

20    else face sanctions.  Fed. R. Civ. P. 37(d)(1)(A).  For any other employees, the primary obstacle

21    would be NSO withholding its consent, as illustrated by authority cited in Defendants' original

22    motion, *see* Dkt. 28 at 6 (citing *Air Turbine Tech, Inc. v. Atlas Copco AB*, 217 F.R.D. 545, 546

23    (S.D. Fla. 2003) (suggesting court could hear testimony from Sweden-based employees via

24    "agreement between the parties")).  Moreover, Defendants cite no authority for the proposition

25    that their own refusal to provide discovery supports dismissal for *forum non conveniens*.

26    Defendants' suggestion that they or their employees will refuse to appear is not a legitimate ground

27    for dismissal; "[t]hat some witnesses would prefer to appear in [the alternative forum] falls well

28    short of a clear showing of facts which establish such oppression and vexation of a defendant as

1   to be out of proportion to plaintiff's convenience." *Global Commodities*, 972 F.3d at 1111.

2        Similarly, Defendants' reference to limits on disclosure imposed by Israeli export control

3   laws (Mot. 6) is a red herring.  Apple simply seeks to apply U.S. law to NSO's unlawful activities

4   in the United States.  Such application neither requires information about Israeli export licensing

5   nor challenges Israeli government regulations under its export control laws (Dkt. 28-1 ¶¶ 5-6), and

6   Defendants offer no support for dismissing a case on *forum non conveniens* grounds based on such

7   laws.  Understandably so—such a rule would routinely allow foreign regulated defendants to

8   commit crimes, torts, and breaches of contract against American companies yet avoid U.S. courts.[5]

9        Defendants' renewed motion relies heavily on a new declaration of Israeli counsel (Dkt.

10  48-3, "Blecher Decl.") (Mot. 6), but his unfounded speculation in a conclusory declaration—

11  without any foundation of his expertise beyond some personal experience about what U.S.

12  discovery "would likely involve" and how it "might violate" Israeli law—is not a basis for

13  dismissal on *forum non conveniens* grounds.  Blecher Decl. ¶ 3.  Nor is it correct that "Israeli

14  witnesses … cannot be compelled to appear before this Court."  Mot. 6.  Rather, as Defendants'

15  declarant admits, "Israeli witnesses [can] be[] compelled, pursuant to the Convention on the

16  Taking of Evidence Abroad in Civil or Commercial Matters, to testify under oath in a deposition

17  in American civil proceedings."  Blecher Decl. ¶ 2; *see also* Fed. R. Civ. P. 28(b); Status Table,

18  HCCH, https://tinyurl.com/2m9rukn4 (visited April 14, 2023) (showing Israel as party to Hague

19  Evidence Convention).  U.S. courts routinely employ the Convention's procedures to successfully

20  obtain testimony from Israeli witnesses.  *See, e.g.*, *Finjan, Inc. v. Cisco Sys., Inc.*, 2019 WL

21  667766, at *1 (N.D. Cal. Feb. 19, 2019) (issuing Letter of Request to depose Israeli witnesses in

22  patent case); *Est. of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 255–56 (D.D.C. 2011) (same

23  for tort action under Antiterrorism Act); *see also* § 2, International Legal Assistance Law, 5758-

24  1998 (Isr.), https://tinyurl.com/3ub9t2et (visited April 14, 2023).  In any event, the Court need not

25  consider the ability to obtain witness testimony, as that is a "private-interest factor" not considered

26  when the parties have a valid forum-selection clause.  *Atl. Marine Const. Co.*, 571 U.S. at 64.

27

28

---

[5] To the extent Israeli law becomes relevant, this Court is fully capable of interpreting foreign law as contemplated by Fed. R. Civ. P. 44.1.

1     Finally, Defendants are wrong (Mot. 6-7) that the Court's judgment would not be

2  enforceable against assets and operations in Israel.  U.S. courts have recognized that Israeli law

3  provides for the enforcement of U.S. judgments in Israeli courts.  *See, e.g.*, *Tahan v. Hodgson*, 662

4  F.2d 862, 868 (D.C. Cir. 1981) (enforcement of U.S. judgments under Israel's 1958 Enforcement

5  of Foreign Judgments Law).  The private-interest factors thus weigh against dismissal.[6]

6     **Public-Interest Factors.**  The public-interest factors (including local interests in the

7  lawsuit and the court's familiarity with the governing law) also weigh in favor of maintaining this

8  action in this forum.  Contrary to Defendants' claims (Mot. 7), California has a compelling interest

9  in adjudicating this dispute as it involves one of its own citizens (Apple) bringing claims under

10  California's unfair competition statute and contract laws.  *See Gates Learjet Corp. v. Jensen*, 743

11  F.2d 1325, 1336-1337 (9th Cir. 1984).  And this Court obviously enjoys greater familiarity—and

12  more authority—on the application of federal statutes and California law than an Israeli court.  *See*

13  *Silicon Labs Integration, Inc. v. Melman*, 2009 WL 2044663, at *6 (N.D. Cal. July 9, 2009).  In

14  the only case cited by Defendants, *Facebook, Inc. v. Studivz Ltd.*, the "ordinar[y] … interest" a

15  U.S. court has in enforcing its law was reduced because it was not clear what state's law would

16  apply.  2009 WL 1190802, at *3 (N.D. Cal. May 4, 2009).[7]  Here, by contrast, Apple invokes

17  California and federal statutes, and the iCloud Terms make clear that California law applies here.

18     Defendants ignore the other public-interest factors.  They make no attempt to explain, for

19  example, how an Israeli court might go about deciding the questions of U.S. and California law

20  embedded in the Complaint.  Instead, they hinge their entire public-interest argument on a single

21  factor: that Israel purportedly has a strong interest in hearing this dispute, Mot. 7-8, but Defendants

22

23  [6] It is also incorrect that only Israeli courts are capable of handling possible criminal self-

incrimination of NSO's witnesses under Israeli law.  Mot. 6 (citing Blecher Decl. ¶¶ 4-6).  Courts

24  in this country are capable of addressing such issues, including under Israeli law.  *See, e.g.*, *Wultz*

*v. Bank of China Ltd.*, 298 F.R.D. 91, 100 (S.D.N.Y. 2014) (finding Israel's privilege against self-

25  incrimination is no bar to compelling testimony from an Israeli witness); *cf. Linde v. Arab Bank,*

*PLC*, 463 F. Supp. 2d 310, 316 (E.D.N.Y. 2006) (overruling objection that foreign law did not

26  permit discovery and directing defendant to request foreign governments' permission to produce

what plaintiff requested).

27  [7] *Facebook, Inc. v. Studivz Ltd.* is particularly inapposite considering that, in contrast to this suit,

28  Facebook was "currently … litigating an action in Germany that is extremely similar to the instant

action," 2009 WL 1190802, at *2.

1   have not shown that the Israeli government has expressed any such interest.  Even if it had, that

2   purported interest is no greater than the U.S. government's interest in accountability in the United

3   States for alleged computer fraud and abuse committed by a company (sanctioned by the U.S.

4   government) and aimed at a U.S. company in violation of U.S. law.  Compl. ¶ 43; *see* Exec. Order

5   No. 14,093, 88 Fed. Reg. 18,957, 18,957 (Mar. 27, 2023) ("The United States has a fundamental

6   national security and foreign policy interest in countering and preventing the proliferation of

7   commercial spyware … .").[8]

8   ## II.   Defendants' Unidentified Customers Are Not Indispensable Parties.

9           Defendants' argument that their purported foreign government customers are indispensable

10  parties (Mot. 8-9) rests on the theory that Defendants alone are unable to "identify the location of

11  any and all information obtained" and delete it.  *Id*. at 8 (quoting Compl. p. 20).  But this argument

12  fails because Defendants are capable of providing such relief with respect to the information they

13  control, and further, Apple seeks relief that is obtainable from Defendants alone and not from any

14  third parties.  *See Broidy Capital Mgmt., LLC v. Qatar*, 2018 WL 6074570, at *10 (C.D. Cal. Aug.

15  8, 2018) (Qatar was not an "indispensable party" because plaintiffs sought some relief that could

16  be effected without joining Qatar), *aff'd on other grounds*, 982 F.3d 582 (9th Cir. 2020).

17          In any case, Apple's requested relief, by its terms, only contemplates conduct by

18  *Defendants*; it would not bind other parties.  "[B]ecause the court can craft injunctive relief that

19  excludes or carves out any sovereign nation," NSO's unidentified "customers are not required

20  parties."  *WhatsApp*, 472 F. Supp. 3d at 679 (citing *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070,

21  1079 (9th Cir. 2010)).  Perhaps recognizing this, NSO instead argues that the relief sought would

22  be "ineffective" if it does not also bind its customers, because "NSO's customers, not NSO, are

23  the entities that obtain and store information" and "NSO does not collect or store any information

24  collected by its customers."  Mot. 8 (citing *Dawavendewa v. Salt River Project*, 276 F.3d 1150

25

26

27  ---

[8] The recent opinion in *Alhathloul v. DarkMatter Group* acknowledged that the United States
28  "might have a strong interest in ensuring that its U.S.-based companies who rely on U.S.-based
servers are not subject to transmissions of malware," but nonetheless dismissed CFAA claims only
because personal jurisdiction was lacking over foreign defendants that targeted a foreign plaintiff
overseas.  2023 WL 2537761, at *11 (D. Or. Mar. 16, 2023).

1    (9th Cir. 2002)).  Even if the Court were to consider the factual assertions in the untested, self-

2    serving declaration of NSO's CEO (which it has no obligation to do, *see Gerritsen v. Warner*

3    *Brothers Entertainment Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015)), they are irrelevant.[9]

4    Either NSO in fact possesses such user information, in which case it can identify and delete it, or

5    it does not.  Apple does not seek an injunction with respect to any information held by Defendants'

6    unnamed customers, and whether they separately possess such information does not impair the

7    effectiveness of the relief Apple seeks from Defendants.

8    **III.    Defendants' Creation And Use Of Abusive Exploits Violated The CFAA.**

9          Defendants, without authorization, installed the highly invasive Pegasus spyware program

10   on Apple's users' devices by "send[ing] abusive data … through Apple's iMessage service,"

11   causing "damage" by "disabling logging on a targeted Apple device" and "deliver[ing] the Pegasus

12   payload" via "Apple's iCloud servers."  Compl. ¶¶ 51, 67-68, 74-76.  By doing so, Defendants

13   caused "damage" within the meaning of 18 U.S.C. § 1030(e)(8), resulting in a legally recognized

14   "loss" to Apple in the form of substantial remediation.  Compl. ¶¶ 56-59; 18 U.S.C. § 1030(e)(8).

15   These allegations state a CFAA claim.

16         As an initial matter, Defendants' repeated references to the fact that Apple does not own

17   its users' devices are an irrelevant distraction.  The Ninth Circuit has already held that Apple can

18   maintain a cause of action even if it does not "own[]" the third-party devices.  *Theofel v. Farey*

19   *Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004).  In *Theofel*, the Ninth Circuit rejected the imposition

20   of an "ownership or control requirement" on the CFAA's private cause of action.  *Id.*  The CFAA

21   broadly authorizes "[a]ny person who suffers damage or loss by reason of a violation of" Section

22   1030 to "maintain a civil action against the violator."  18 U.S.C. § 1030(g).  "[T]he word 'any' has

23   an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *Theofel*, 359

24   F.3d at 1078.  Individuals other than the computer's owner may be proximately harmed by

25   unauthorized access, so "a plaintiff can recover for a violation of the CFAA when a defendant

---

27   [9] Consideration of facts asserted in either of Defendants' declarations for purposes of Defendants'
     Rule 12(b)(6) motion is not permitted, as neither declaration is incorporated by reference in the
28   Complaint or subject to judicial notice.  *See* Fed. R. Civ. P. 12(d); *Khoja v. Orexigen Therapeutics,*
     *Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

1    accesses a third party's device as long as the plaintiff is harmed by such an act." *WhatsApp*, 472

2    F. Supp. 3d at 682.[10]

3         Further, Apple alleges cognizable "loss" from Defendants' conduct.[11]   Defendants'

4    unauthorized installation of spyware on Apple user devices forced Apple to, among other things,

5    deploy resources to investigate the attacks and develop remedial security upgrades.  Compl. ¶ 57.

6    "[T]he expenditure of resources to investigate and remediate defendants' conduct" and "incur[ing]

7    costs responding to the unauthorized access to users' phones by upgrading [iOS] in response to

8    defendants' intrusion" suffice "to state a claim for loss based on responding to an offense on a

9    third party's device."  *WhatsApp*, 472 F. Supp. 3d at 683.  Defendants' contrary arguments—that

10   they did not cause Apple's losses, that Apple's losses are not sufficiently related to computer

11   repair, and that Defendants are somehow immune because Apple's losses purportedly only arise

12   out of their unauthorized access to software and not hardware—make little sense and are

13   unsupported by the law or the allegations in the Complaint.

14        ***First***, Defendants take the remarkable position that they did not cause Apple to undertake

15   any compensable remedial efforts because their hacking supposedly only exploited and required

16   Apple to repair a pre-existing "vulnerability."  Mot. 12.  But hacking a vulnerability in someone

17   else's computer is the very definition of computer fraud and abuse and the very purpose of the

18   CFAA is to enable victims to hold such hackers accountable for the injuries they cause.

19   Unsurprisingly, Defendants cite no authority for their contrary proposition, which ignores the

20   CFAA's plain language.  "'[L]oss' means any reasonable cost to any victim, including the cost of

21

22   [10] Apple also "ha[s] rights to [the] data stored on" its users' devices in the form of its retained
     ownership of the intellectual property rights to the iOS operating system, making this a
23   "particular[]" situation in which the Ninth Circuit has recognized that Apple would be
     "proximately harmed by unauthorized access," *Theofel*, 359 F.3d at 1078; *WhatsApp*, 472 F. Supp.
24   3d at 682-683.

25   [11] Apple also alleges cognizable "damage" to its users' devices.  *See* Compl. ¶ 51 (hacking
     "disabl[ed] logging").   And the statutory definition of "damage" clearly contemplates the
26   "impairment to the integrity … [of] data, a program, a system, or information," 18 U.S.C.
     § 1030(e)(8), that Defendants' installation of malicious spyware caused.  Damage is only required
27   for the discrete component of Apple's CFAA claim arising under 18 U.S.C. § 1030(a)(5).  Because
     "damage" is a substantive element of the offense and not a separate requirement for statutory
28   standing, the fact that the damage was inflicted on a third-party device is irrelevant. *Theofel*, 359
     F.3d at 1078.

1    responding to an offense, conducting a damage assessment, and restoring the data, program,

2    system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

3    other consequential damages incurred because of interruption of service."   18 U.S.C.

4    § 1030(e)(11).  It therefore "means two things: 'any reasonable cost to the victim' and lost revenue

5    or other damages incurred as a result of an interruption of service."  *AtPac, Inc. v. Aptitude Sols.,*

6    *Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (cited at Mot. 10).   Cognizable repair costs

7    "*includ[e]…* restoring" the computer "to its condition prior to the offense," 18 U.S.C.

8    § 1030(e)(11) (emphasis added), but this is not a requirement, *see Bloate v. United States*, 559

9    U.S. 196, 208-209 (2010) ("including but not limited to" signals list of non-exhaustive, illustrative

10   examples).  "[U]pgrading a system's defenses to prevent future unauthorized access" is a well-

11   recognized form of "loss."  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147,

12   1174 (C.D. Cal. 2018); *see also Kimberlite Corp. v. John Does 1-20*, 2008 WL 2264485, at *2

13   (N.D. Cal. June 2, 2008) ("securing" an email system).

14        **Second**, the standard for "losses" is that they reflect "costs caused by harm to computer

15   data, programs, systems, or information services."  *Van Buren v. United States*, 141 S. Ct. 1648,

16   1659-1660 (2021).   Apple's remedial activities, including "identifying and investigating the

17   attacks," "developing and deploying security patches and software upgrades," and "increasing

18   security measures to detect and prevent future attacks," Compl. ¶ 57, easily satisfy that standard.

19   *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) ("many hours …

20   analyzing, investigating, and responding"); *WhatsApp*, 472 F. Supp. 3d at 683; *Ticketmaster*, 315

21   F. Supp. 3d at 1174; *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 894-895 (N.D. Cal.

22   2010) ("Costs associated with investigating intrusions into a computer network and taking

23   subsequent remedial measures are losses within the meaning of the statute."); *Flextronics Int'l,*

24   *Ltd. v. Parametric Tech. Corp.*, 2014 WL 2213910, at *3 (N.D. Cal. May 28, 2014) ("costs of

25   investigation may be included in the calculation of loss").   This distinguishes Apple's injuries from

26   the harms alleged in Defendants' cited authorities, which are entirely unrelated to investigating or

27   repairing computer damage.  *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir.

28   2019) (claiming lost "value of" "personal information"); *Fraser v. Mint Mobile, LLC*, 2022 WL

2391000, at *2 (N.D. Cal. July 1, 2022) (lost value of stolen cryptocurrency); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *4 (N.D. Cal. Nov. 11, 2020) (same); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 473 (S.D.N.Y. 2004) (losses from travel), *aff'd*, 166 F. App'x 559 (2d Cir. 2006); *El Omari v. Buchanan*, 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021) (losses relating to imposter's solicitation); *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021) (losses relating to "misappropriation of confidential information"); *CCC Info. Servs., Inc. v. Tractable, Inc.*, 2023 WL 415541, at *3 (N.D. Ill. Jan. 25, 2023) (misappropriation of data).[12]

**Third**, Defendants cannot avoid CFAA liability by creating a false distinction between losses caused by unauthorized access to software installed on Apple's users' devices (*i.e.*, Apple's iOS operating system) and access to the devices themselves. *See* Mot. 10-11. Such a distinction does not exist in the CFAA, but even if it did, it would not help Defendants. Defendants installed spyware on users' devices without authorization, and Apple's losses flowed from Defendants having done so. Compl. ¶¶ 51, 56-59, 68, 75-76. Defendants concede that the CFAA protects user devices. Mot. 10. That ends the inquiry.

Defendants' argument fails for the additional reason that there is no legal basis to distinguish between access to phone hardware and access to phone software in this context, where Defendants accessed the user devices via iMessage, a component of Apple's iOS operating system. Compl. ¶ 67. Defendants offer no explanation of how they could have accessed the operating system installed on a user device without necessarily also accessing the device itself; both were accessed in violation of the CFAA. In any event, nothing in the CFAA supports excluding from a CFAA claim unauthorized access to a computer's software in the manner advocated by Defendants. "[L]oss" under the CFAA captures "costs caused by harm to computer … programs," including operating system software. *Van Buren*, 141 S. Ct. at 1659-1660. Defendants' position would create an atextual immunity for (theoretical) hacking activities directed only at software, undermining the statute's purpose of "address[ing] the growing problem of computer hacking."

---

[12] Defendants purport to invoke the rule of lenity for construing the CFAA's definition of "loss." Mot. 10. But they have not identified any bona fide "ambiguity for the rule of lenity to resolve." *Shular v. United States*, 140 S. Ct. 779, 787 (2020).

1    *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).[13]

2    **IV.    Defendants' CFAA Violations Also Violate The California UCL's Unlawful Prong.**

3          Defendants do not dispute that, if they have violated the CFAA, they have also violated the

4    UCL's "unlawful" prong.  *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016)

5    (the unlawful prong "borrows violations of other laws and treats them as unlawful practices that

6    the unfair competition law makes independently actionable").  Instead, Defendants claim that

7    because some of their actions took place in Israel, not California, the UCL does not apply.  But

8    what Defendants ignore is that Apple itself is based in California and suffered harm here.

9          "When a plaintiff resides in California, the UCL may apply to out-of-state conduct,

10   especially when the plaintiff suffered in-state harm." *Cave Consulting Grp., Inc. v. Truven Health*

11   *Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017); *see also Adobe Sys. Inc. v.*

12   *Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015).  None of Defendants' cases

13   (discussed at Mot. 12-13) holds that the UCL did not apply to conduct that targeted and harmed a

14   California company.  *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1358 (Fed. Cir.

15   2013) (addressing conduct in other states that did not "caus[e] harm to California"); *Sullivan v.*

16   *Oracle Corp.*, 254 P.3d 237, 245-246 (Cal. 2011) (plaintiffs were harmed in Colorado and

17   Arizona); *Sajfr v. BBG Commc'ns, Inc.*, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) (although

18   plaintiffs lived in California, harm occurred in Germany because challenged disclosures were

19   made there); *Dongxiao Yue v. Chun-Hui Miao*, 2019 WL 5872142, at *8 n.9 (D.S.C. June 27,

20   2019) (noting in dicta only that it is "not clear" that the California UCL could apply to conduct

21   originating in South Carolina that harmed a California resident).

22         Here, not only was Apple harmed in California, but Defendants also interacted with Apple

23   infrastructure in California throughout their attacks.  Compl. ¶¶ 45-51.  Defendants cannot dismiss

24   the attacks' connection to California as "happenstance" when their wrongful use of infrastructure

25   in California was an intentional—and necessary—component of their misconduct.

26         Finally, Defendants' argument that Apple's UCL claim should be dismissed as to certain

27

28   ───────────────
[13] More generally, a CFAA violation can lie from access to "files" or "folders" on a computer—
the same types of digital locations on Apple user devices where the iOS operating system is stored.
*Van Buren*, 141 S. Ct. at 1652.

1    remedies (Mot. 14) is premature.  Defendants do not argue that the equitable relief Apple seeks is

2    precluded by adequate legal remedies, only that certain relief should be unavailable as a matter of

3    law.  But so long as Apple is entitled to recover some form of relief, including injunctive relief

4    and restitutionary disgorgement, dismissal at the Rule 12(b)(6) stage is improper.  *Clarke v. Pacific*

5    *Gas & Elec. Co.*, 501 F. Supp. 3d 774, 784 (N.D. Cal. 2020) ("[I]t need not appear that the plaintiff

6    can obtain the specific relief demanded as long as the court can ascertain from the face of the

7    complaint that some relief can be granted."); *San Francisco Herring Ass'n v. Pacific Gas & Elec.*

8    *Co.*, 2020 WL 6736930, at *7 (N.D. Cal. June 15, 2020) ("Although it is unclear what relief may

9    be granted at this stage, a flawed requested remedy is not sufficient basis for dismissal.").

10   **V.    Apple Adequately States a Claim in the Alternative for Unjust Enrichment.**

11         Finally, Defendants assert that Apple may not bring a standalone claim for unjust

12   enrichment, but "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of

13   action as a quasi-contract claim seeking restitution,'" particularly where that claim is pled in the

14   alternative.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Courts also

15   permit unjust enrichment and breach of contract claims to be pled in the alternative, which is

16   particularly appropriate here where Defendants do not concede to the enforceability of the contract.

17   *Cf. Lundy v. Facebook Inc.*, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (interpreting

18   unjust enrichment count as quasi-contract claim and allowing it to proceed alongside breach of

19   contract claim).  Finally, Defendants argue that Apple cannot seek the equitable remedies of

20   restitution and disgorgement because its compensatory damages claims are adequate remedies

21   (Mot. 15), but the cost of responding to Defendants' attacks is distinct from the accounting and

22   disgorgement Apple demands through its unjust enrichment claim.  *See In re California Gasoline*

23   *Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021).

24                                **CONCLUSION**

25         For the foregoing reasons, the Court should deny Defendants' Renewed Motion to Dismiss.

26   Dated:  April 14, 2023              WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
27

28                                       By:  */s/ David W. Bowker*
                                         DAVID W. BOWKER
                                         *Attorney for Plaintiff Apple Inc.*