JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
AARON S. CRAIG (Bar No. 204741)
  *acraig@kslaw.com*
MATTHEW NOLLER (Bar No. 325180)
  *mnoller@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:    (213) 443-4310

Attorneys for Defendants
NSO GROUP TECHNOLOGIES LIMITED and
Q CYBER TECHNOLOGIES LIMITED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, and Q CYBER TECHNOLOGIES LIMITED,<br><br>        Defendants. | Case No. 3:21-cv-09078-JD<br><br>**REPLY IN SUPPORT OF RENEWED MOTION OF DEFENDANTS NSO GROUP TECHNOLOGIES LIMITED AND Q CYBER TECHNOLOGIES LIMITED TO DISMISS [FED. R. CIV. P. 12(B)(1), 12(B)(3), 12(B)(6), AND 12(B)(7)]**<br><br>Date:   [none set]<br>Ctrm:   11<br><br>Action Filed:  11/23/2021 |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ....................................................................................................................... 1

II. ARGUMENT ............................................................................................................................. 2

    A.    The Court Should Dismiss the Complaint for *Forum Non Conveniens*. ............ 2

    B.    The Court Should Dismiss for Failure to Join Indispensable Parties. ................ 5

    C.    The Court Should Dismiss Apple's CFAA Claim. ............................................. 6

    D.    The Court Should Dismiss Apple's UCL Claim .................................................. 7

    E.    The Court Should Dismiss Apple's Unjust Enrichment Claim. ......................... 9

III. CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aenergy, S.A. v. Rep. of Angola*,
   31 F.4th 119 (2d Cir. 2022) ................................................................................................4

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   738 F.3d 1350 (Fed. Cir. 2013) ..........................................................................................8

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ............................................................................................6

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
   2021 WL 3173736 (S.D.N.Y. July 26, 2021) .....................................................................7

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................................9

*Broidy Capital Mgmt., LLC v. Qatar*,
   2018 WL 6074570 (C.D. Cal. Aug. 8, 2018) .....................................................................5

*Calendar Res. LLC v. StubHub, Inc.*,
   2020 WL 4390391 (C.D. Cal. May 13, 2020) ....................................................................6

*In re California Gasoline Spot Market Antitrust Litigation*,
   2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021) ........................................................10

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
   647 F.3d 914 (9th Cir. 2011) ..............................................................................................2

*Daniels Sharpsmart, Inc. v. Smith*,
   889 F.3d 608 (9th Cir. 2018) ..............................................................................................9

*English v. Gen. Dynamics Mission Sys.*,
   2019 WL 2619658 (C.D. Cal. May 8, 2019) ......................................................................8

*Est. of Klieman v. Palestinian Auth.*,
   272 F.R.D. 253 (D.D.C. 2011) ...........................................................................................3

*Facebook, Inc. v. Studivz Ltd.*,
   2009 WL 1190802 (N.D. Cal. May 4, 2009) ..................................................................4, 5

*Finjan, Inc. v. Cisco Sys., Inc.*,
   2019 WL 667766 (N.D. Cal. Feb. 19, 2019) ......................................................................3

*Fraser v. Mint Mobile, LLC*,
   2022 WL 2391000 (N.D. Cal. July 1, 2022) .......................................................................7

ii

*GE Healthcare v. Orbotech, Ltd.*,
  2009 WL 2382534 (E.D. Wis. July 2, 2009) ...........................................................................4

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
  972 F.3d 1101 (9th Cir. 2020) ...............................................................................................2

*Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*,
  2023 WL 2709646 (D. Or. Mar. 29, 2023) ............................................................................6

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ..............................................................................................10

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989) ...............................................................................................................8

*Henry v. Napa Valley Unif.*,
  2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .........................................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ................................................................................................6

*Hyp3r Inc. v. Mogimo Inc.*,
  2017 WL 11515712 (N.D. Cal. Nov. 8, 2017) ......................................................................9

*Klaehn v. Cali Bamboo LLC*,
  2022 WL 1830685 (9th Cir. June 3, 2022) ..........................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .........................................................................................................9

*Linde v. Arab Bank, PLC*,
  463 F. Supp. 2d 310 (E.D.N.Y. 2006) ...................................................................................3

*Nexans Wires S.A. v. Sark-USA, Inc.*,
  319 F. Supp. 2d 468 (S.D.N.Y. 2004) ...................................................................................7

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985) ...............................................................................................................8

*Rey v. Rey*,
  666 F. App'x 675 (9th Cir. 2016) ..........................................................................................2

*Saffron Rewards, Inc. v. Rossie*,
  2022 WL 2918907 (N.D. Cal. July 25, 2022) ........................................................................6

*Sajfr v. BBG Commc'ns., Inc.*,
  2012 WL 398991 (S.D. Cal. Jan. 10, 2012) .......................................................................8, 9

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) (en banc) ............................................................................8

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
   663 F. Supp. 2d 883 (C.D. Cal. 2009) ................................................................................8

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................................10

*Spradlin v. Lear Siegler Mgmt. Servs.*,
   926 F.2d 865 (9th Cir. 1991) ..............................................................................................2

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ............................................................................................6

*Tsai v. Wang*,
   2017 WL 2587929 (N.D. Cal. June 14, 2017) ....................................................................9

*Umeda v. Tesla, Inc.*,
   2022 WL 18980 (9th Cir. Jan. 3, 2022) ..............................................................................3

*United States v. Pemkova*,
   731 F. App'x 620 (9th Cir. 2018) .......................................................................................4

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021)....................................................................................................6, 7

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
   407 F. Supp. 3d 931 (S.D. Cal. 2019).................................................................................2

*World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*,
   2014 WL 1411249 (N.D. Cal. Apr. 11, 2014) ....................................................................9

*Wultz v. Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) ..........................................................................................3

**Constitutional Provisions, Statutes, and Rules**

18 U.S.C. § 1030(e)(1) ................................................................................................................7

18 U.S.C. § 1030(e)(11) ..........................................................................................................6, 7

18 U.S.C. § 1030(g) .................................................................................................................6, 7

Fed. R. Civ. P. 19 .....................................................................................................................1, 5

Fed. R. Civ. P. 45(c)(1) ................................................................................................................4

**Other Authorities**

*Apple Inc. v. S.A. Phonix Ltd.*, No. 23085-10-19 (Isr.)...................................................................5

*Apple Security Bounty*, developer.apple.com/security-bounty/ .......................................................1

*Bram v. Apple Inc.*, No. 47104-12-17 (Isr.) .....................................................................................5

*Dahan v. Apple Inc.*, No. 27340-09-19 (Isr.) ...................................................................................5

David Shamah, *Tim Cook: Apple's Herzliya R&D Center Second-Largest In The World*, The Times of Israel (Feb. 27, 2015), https://bit.ly/3NmF2KZ......................................4

Eddy Meiri, *Foreign Judgments Enforcement in Israel*, 31 Int'l L. Practicum 39 (2018)..........................................................................................................................................4

*Eini v. Apple Inc.*, 58578-12-20 (Isr.) ................................................................................................5

Marcy Oster, *Woman Claims Apple Used Her Voice for Hebrew Siri Without Permission*, Jerusalem Post (Jan. 1, 2019).................................................................................5

Refaella Goichman, *Apple Slapped with Class Action Suit in Israel for Deliberately Slowing Older iPhones*, Haaretz (Dec. 25, 2017), https://bit.ly/42nPdDw ...............................................................................................................5

*Zioni v. Apple Inc.*, No. 50640-01-21 (Isr.) .......................................................................................5

## I. INTRODUCTION

It is rich that Apple seeks to punish NSO as a so-called "twenty-first century mercenar[y]." (Opp. 1.) NSO's alleged interactions with Apple—finding flaws in Apple's iMessage program—are comparable to the activities of "researchers" to whom Apple pays substantial "bounties" for discovering security issues and vulnerabilities.[1] Like those researchers, NSO develops its technology without harming Apple's servers or taking any private data from third parties. Because the crux of Apple's complaint is with the *use* of NSO's vulnerability research to obtain data from third parties, its complaint should be directed at the foreign government agencies that license and independently use NSO's technology. Apple consciously omits those indispensable parties and instead advances a distorted view of the Computer Fraud and Abuse Act (CFAA) in an effort to (1) transfer to NSO Apple's expenses in closing vulnerabilities *Apple itself created* through its flawed software design, and (2) hold NSO liable for foreign governments' use of NSO technology involving those vulnerabilities. Apple cannot do either of those things.

***First***, Apple's claims—asserted against Israeli companies for the foreign conduct of foreign governments—do not belong in California court. Apple contends that a forum-selection clause in the iCloud Terms of Service mandates this action remain in this forum. But that clause should not be applied on these facts, and in any event its narrow scope would require that all claims except for Apple's breach of contract claim be dismissed for *forum non conveniens*. ***Second***, Apple brings this suit against NSO as an attempted end-run around the foreign sovereign immunity enjoyed by the foreign government agencies that operate NSO's technologies. Those agencies are necessary parties that cannot be joined under Rule 19, and their absence requires dismissal.

***Third***, Apple's claims are substantively deficient. Even taking Apple's false allegations as true, they do not support a CFAA claim because Apple does not plead that it suffered any statutory "damage" or "loss." Apple does not own its users' devices, and it does not allege any of *its* data or technology was compromised, deleted, or damaged. And Apple's investigatory costs cannot qualify as damage or loss because Apple did not investigate or remedy *damage* to a *computer*.

---

[1] *Apple Security Bounty*, developer.apple.com/security-bounty/.

1

REPLY ISO DEFENDANTS' RENEWED MOTION TO DISMISS                              Case No. 3:21-cv-09078-JD

Instead, it allegedly investigated and remedied preexisting, self-created vulnerabilities in its *software*, which is not a "computer" under the CFAA. Apple's UCL claim falls along with the CFAA claim, but it also violates the U.S. Constitution because it seeks to hold NSO liable for purely extraterritorial conduct. And Apple's reliance on the contractual provisions of the iCloud Terms of Service dooms its unjust enrichment claim.

For all these reasons, the Court should dismiss Apple's complaint with prejudice.

## II.     ARGUMENT

### A.     The Court Should Dismiss the Complaint for *Forum Non Conveniens*.

Apple does not dispute Israel would be an "adequate alternative forum" for its lawsuit. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020). Instead, Apple opposes dismissal for *forum non conveniens* on the basis of a forum-selection clause in the iCloud Terms of Service. But even assuming NSO signed the iCloud Terms—which Apple has not proved—the Court should not enforce the forum-selection clause. It is undisputed that all of NSO's "relevant witnesses are not located" in California, which is one reason "a forum selection clause should not be enforced." *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947-48 (S.D. Cal. 2019) (citing *Spradlin v. Lear Siegler Mgmt. Servs.*, 926 F.2d 865, 869 (9th Cir. 1991)); (*see* Hulio Decl. ¶ 4).

Even if the forum-selection clause were enforceable, it applies only to Apple's breach of contract claim. (Compl. ¶ 23.) The clause governs only a "dispute or claim *arising from*" the iCloud Terms. (*Id.* Exh. 1 at 19 (emphasis added).) Where a forum-selection clause governs claims "arising under" the relevant agreement, it "should be interpreted narrowly" to apply only to disputes "relating to the interpretation and performance of the contract itself." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *accord Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016) (interpreting "stemming from" similarly). The phrase "arising from" in Apple's forum-selection clause has the same narrow scope. The clause thus does not support venue for Apple's CFAA, UCL, and unjust enrichment claims.

Apple's other arguments fare no better. Addressing the "private factors," Apple argues Israel's export control laws will not disrupt discovery and the presentation of evidence because

2

Apple "seeks to apply U.S. law." (Opp. 7.) That misses the point. Whatever substantive law governs Apple's claims, Israel's Defense Export Control Law (ECL) strictly limits the information NSO and its employees may disclose outside of Israel. (Hulio Decl. ¶ 5.) This is not a "conclusory" claim. (Opp. 7.) The ECL expressly prohibits any Israeli citizen from "[t]ransfer[ring] defense know-how through any means . . . from Israel to outside of Israel, or in Israel to a person who is neither an Israeli citizen or an Israeli resident, or to a foreign corporation," unless the Israeli citizen has "received a license for such activity." (ECL § 15(a), Hulio Decl. Exh. A.) The ECL defines "[d]efense know-how" as including *any* "[i]nformation that is required for the development or production of defense equipment or its use, including information referring to design, assembly, inspection, upgrade and modification, training, maintenance, operation and repair of defense equipment or its handling in any other way," including "technical data or technical assistance." (*Id.* § 2.) Apple entirely ignores these restrictions, which plainly apply to information about NSO's Pegasus technology. (Hulio Decl. ¶ 5.) This will impair the parties' access to proof to support their claims and defenses and will pose "practical problems" throughout the course of discovery and trial. *Umeda v. Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022).

Apple also misses the point of Roy Blecher's declaration. NSO does not claim, as Apple suggests, that Israeli witnesses cannot be deposed in Israel.[2] (Opp. 7.) The point is that any testimony they give about information covered by the ECL cannot lawfully be transferred "outside of Israel." (ECL §§ 2, 15(a); *see* Blecher Decl. ¶¶ 3, 6.) Any such testimony thus could not be used in this Court in this case, which would not be true if the case were brought in Israel.[3]

Further ignoring that Israeli law will prevent NSO's employees from testifying at trial in this forum, Apple argues NSO should force its Israel-based employees to travel over 7,000 miles

---

[2] Nor does such a deposition contradict the well-established point that foreign witnesses "cannot be compelled to appear before this Court." (Opp. 7 (quoting Mot. 6).) Even if Israeli witnesses could be compelled to give a deposition *in Israel*, they cannot be compelled to appear *in this Court* in California. (*See* Mot. 6.) Apple has no response to this point.

[3] None of the cases Apple cites (Opp. 7, 8 n.6) addressed similar issues. *See Finjan, Inc. v. Cisco Sys., Inc.*, 2019 WL 667766, at *1 (N.D. Cal. Feb. 19, 2019); *Est. of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 255-56 (D.D.C. 2011); *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 100 (S.D.N.Y. 2014); *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 316 (E.D.N.Y. 2006).

to California—without any appreciation for the disruption this would cause to their lives and to NSO's business. (Opp. 7.) Far from supporting Apple, that argument proves litigation in California is not appropriate. *See Aenergy, S.A. v. Rep. of Angola*, 31 F.4th 119, 135 (2d Cir. 2022) (affirming dismissal for *forum non conveniens* in part because of large number of foreign witnesses); *GE Healthcare v. Orbotech, Ltd.*, 2009 WL 2382534, at *15 (E.D. Wis. July 2, 2009) (dismissing for *forum non conveniens* where "important witnesses who will be necessary for trial are . . . located in Israel"). Israeli witnesses cannot be compelled to appear in person in California. Fed. R. Civ. P. 45(c)(1); *United States v. Pemkova*, 731 F. App'x 620, 623 n.3 (9th Cir. 2018). On the other hand, Apple should have no difficulty persuading its witnesses to come to trial in Israel, where Apple does business and has hundreds of employees.[4] Apple's argument about witnesses' ability to testify through videoconferencing (Opp. 6) ignores the prejudice that would cause NSO, whose witnesses would be testifying remotely from Israel by prerecorded video or during late evening hours due to the ten-hour time difference, while Apple's witnesses would be in the courtroom with the jury.

Finally, contrary to Apple's suggestion (Opp. 8), enforcement of foreign judgments in Israel is not "automatic." Eddy Meiri, *Foreign Judgments Enforcement in Israel*, 31 Int'l L. Practicum 39 (2018). The plaintiff "bears the burden of proving," among other conditions, that the judgment "is not in contrast to public policy." *Id.* Even then, under Israel's Foreign Judgments Enforcement Law, an Israeli court will not enforce the judgment if it "might be detrimental to Israel's sovereignty or security." *Id.* Notwithstanding Israel's national-security interests implicated by Apple's claims (Hulio Decl. ¶¶ 5-8), Apple ignores these conditions necessary for enforcement in Israel of a judgment issued by this Court. (Opp. 8.)

In addressing the "public factors," Apple paints itself as just another California citizen litigating in its home state. (Opp. 8.) But this action has nothing to do with California. (Mot. 7, 13.) And Apple is a "multinational company"—one of the largest companies in the world—with a "significant business presence" in Israel. *Facebook, Inc. v. Studivz Ltd.*, 2009 WL 1190802, at *2

---

[4] David Shamah, *Tim Cook: Apple's Herzliya R&D Center Second-Largest In The World*, The Times of Israel (Feb. 27, 2015), https://bit.ly/3NmF2KZ.

(N.D. Cal. May 4, 2009). Accordingly, its "choice of forum must be discounted substantially." *Id.*[5] As for the other public factors, it goes without saying that retaining this lawsuit would burden the Court and a local jury exponentially more than if it were dismissed. Moreover, Apple's attempt to downplay Israel's strong national-security interests ignores its export control laws and role in approving licenses to allow marketing and export to NSO customers. (Hulio Decl. ¶¶ 5-9.)

The Court should dismiss Apple's entire complaint for *forum non conveniens*. At a minimum, it should dismiss Apple's CFAA, UCL, and unjust enrichment claims.

### B.    The Court Should Dismiss for Failure to Join Indispensable Parties.

Seeking to avoid dismissal under Rule 19 for failure to join NSO's foreign-government customers, Apple says its "requested relief, by its terms, only contemplates conduct by *Defendants*." (Opp. 9.) That simply isn't true. Apple seeks injunctive relief "requiring Defendants to identify the location of *any and all information* obtained from *any* Apple users' Apple devices, hardware, software, applications, or other Apple products—and to delete *all such information*." (Compl., Prayer for Relief ¶ B (emphasis added).) That injunction would require NSO to delete *all* "information," without regard to who obtained or possesses it. Apple would also require NSO to "identify the location of any and all information obtained from any" Apple user (*id.*), which is *not* "obtainable from Defendants alone" (Opp. 9; Mot. 8).[6] That relief would, at a minimum, require NSO's customers to turn over any information they collected during their anti-terrorism and law-enforcement operations—which they cannot be required to do. (Mot. 8-9; Hulio Decl. ¶ 19.)[7]

---

[5] Apple's attempt to distinguish *Studivz* (Opp. 8 n.7) is misguided because that case did not hinge on any lack of clarity as to what law might apply to the plaintiff's claims. And Apple has plenty of experience litigating in Israeli court. *E.g.*, *Apple Inc. v. S.A. Phonix Ltd.*, No. 23085-10-19 (Isr.); *Dahan v. Apple Inc.*, No. 27340-09-19 (Isr.); *Bram v. Apple Inc.*, No. 47104-12-17 (Isr.); *Zioni v. Apple Inc.*, No. 50640-01-21 (Isr.); *Eini v. Apple Inc.*, 58578-12-20 (Isr.); *see* Marcy Oster, *Woman Claims Apple Used Her Voice for Hebrew Siri Without Permission*, Jerusalem Post (Jan. 1, 2019), https://bit.ly/3ksVPMK; Refaella Goichman, *Apple Slapped with Class Action Suit in Israel for Deliberately Slowing Older iPhones*, Haaretz (Dec. 25, 2017), https://bit.ly/42nPdDw.

[6] Apple's reliance on *Broidy Capital Mgmt., LLC v. Qatar*, 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018), is inapt because *Broidy* found it "unlikely that an alternative forum would be available." *Id.* at *10. Here, Apple does not dispute Israel is an adequate alternative forum.

[7] Apple also ignores NSO's argument that proceeding without NSO's customers would prejudice NSO because sovereign immunity bars NSO from seeking from its customers discovery essential

### C. The Court Should Dismiss Apple's CFAA Claim.

Apple misinterprets NSO's argument for why Apple does not state a CFAA claim. (Opp. 10.) NSO does not argue the CFAA has an "ownership or control requirement." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004). Instead, NSO relies on the CFAA's clear requirement that a plaintiff must suffer "damage" or "loss" from the defendant's alleged access to a third party's computer. 18 U.S.C. § 1030(g). Apple does not plead the existence of any such damage or loss, as the CFAA defines those terms. (Mot. 9-12.) That means Apple is not "within the class of persons who may bring suit under the CFAA." *Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*, 2023 WL 2709646, at *6 (D. Or. Mar. 29, 2023) (dismissing CFAA claim where plaintiff did "not allege[] any unauthorized access to his own computer" or "damage to [p]laintiff's computer").

There is nothing "remarkable" (Opp. 11) about NSO's position. The CFAA is a "narrow . . . criminal statute," limited by the rule of lenity, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200 (9th Cir. 2022), and a "limited conception of loss," *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019). The CFAA's "definitions of 'damage' and 'loss' . . . focus on *technological harms*—such as the corruption of files." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (emphasis added); *accord hiQ*, 31 F.4th at 1195 n.12. But Apple does not allege NSO corrupted any Apple file or caused Apple any other *technological* harms, so Apple does not plead it suffered any "damage" under the statute. In fact, Apple does not even allege NSO damaged Apple users' devices, the only "computers" at issue. The "mere copying of data" from those devices does not qualify as "damage." *Calendar Res. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *22 (C.D. Cal. May 13, 2020); *see Andrews*, 932 F.3d at 1262-63.

As for "loss," Apple's alleged investigatory and remedial costs do not qualify because the CFAA limits investigatory "loss" to costs specifically from "damage assessment[s]" or "restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11); *see Saffron Rewards, Inc. v. Rossie*, 2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022) (holding investigatory "loss" requires "damages assessments or data restorations"). More

---

to its defense. (Mot. 9 n.4.) Apple's "failure to address" this argument concedes the point. *Henry v. Napa Valley Unif.*, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016).

6

specifically, such costs only count as "loss" if they were incurred "investigating or remedying damage *to a computer*." *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) (emphasis added); *accord Fraser v. Mint Mobile, LLC*, 2022 WL 2391000, at *2 (N.D. Cal. July 1, 2022). But Apple's investigation did not assess "damage" as the CFAA defines that term—Apple suffered no "technological harms." *Van Buren*, 141 S. Ct. at 1660; *see Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *4 (S.D.N.Y. July 26, 2021) (holding investigation into "download[ing] and cop[ying] of [plaintiff's] data" was not "loss" absent "alleg[ation] that it lost service or access to its data, or that its systems were otherwise harmed"). Apple's investigation did not relate to a computer—it related to a preexisting vulnerability in Apple's *software*, which is not a "computer." 18 U.S.C. § 1030(e)(1).[8] And Apple did not "restor[e]" its software "to its condition prior to the offense. *Id.* § 1030(e)(11). Apple *improved* its software by repairing a preexisting vulnerability that existed before NSO's alleged conduct. (Compl. ¶¶ 7, 37, 53, 58.) That is not the sort of "damage" or "loss" the CFAA covers.

Contrary to Apple's assertion (Opp. 13), *Van Buren* does not identify costs to "operating system software" as a "loss" under the CFAA; the word "software" does not appear anywhere in *Van Buren*. In any event, Apple does not allege NSO "harm[ed]" Apple's software, which would be required even under Apple's misreading of *Van Buren*. 141 S. Ct. at 1660. NSO did not *create* the vulnerability that Apple allegedly repaired. By *fixing* that preexisting vulnerability, therefore, Apple was not "restoring" its software "to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). It was simply engaging in its routine business practice of pushing out regular software updates to fix bugs and enhance security. (*See* Compl. ¶ 37.) The CFAA is not a cost-shifting statute that allows a tech company worth over $2 trillion to "investigate possible vulnerabilities" and "update" its software at someone else's expense. (*Id.* ¶¶ 53, 58.)

### D. The Court Should Dismiss Apple's UCL Claim.

Apple argues the UCL applies solely because Apple "is based in California and suffered harm" there. (Opp. 14.) But that is irrelevant; what matters is that none of NSO's alleged *conduct*

---

[8] The CFAA's civil remedy provision uses the term "computer software," 18 U.S.C. § 1030(g), showing that the software *on* a computer is not itself a "computer."

1  occurred in California. (Mot. 12-15.) "[E]xtraterritoriality . . . concerns legislation that regulates *conduct* that occurs in a foreign jurisdiction—*regardless of the plaintiff's residency*." *English v. Gen. Dynamics Mission Sys.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019) (emphasis added).

Under Apple's argument, the mere location of its headquarters allows it to sue any foreign resident for conduct committed entirely in foreign countries. For example, if a store in Jerusalem sold iPhones stolen from an Apple store in Tel Aviv, Apple's argument here would allow it to sue the store's Israeli owners under the UCL *in California*. The U.S. Constitution forbids that result. The Commerce Clause "'precludes' such extraterritorial application of state law '*whether or not the commerce has effects within the state*.'" *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1359 (Fed. Cir. 2013) (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)) (emphasis added); *see Sajfr v. BBG Commc'ns., Inc.*, 2012 WL 398991, at *4 (S.D. Cal. Jan. 10, 2012) (holding UCL did not apply to international telephone calls, even though plaintiffs were "California residents"). And under the Due Process Clause, the Court cannot apply California law to NSO's alleged foreign conduct because California lacks the necessary "aggregation of contacts" with that conduct. *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 818 (1985). Apple's mere presence in California is not sufficient to constitutionally apply the UCL to extraterritorial activities. *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-25 (9th Cir. 2015) (en banc) (striking down California law requiring art sellers to pay royalties to California artists for out-of-state sales). So, if Apple's interpretation of the UCL is correct, then the UCL is unconstitutional. This Court should not interpret the UCL to create such "serious constitutional problems." *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 901 (C.D. Cal. 2009).[9]

As a fallback, Apple vaguely suggests NSO "interacted with Apple infrastructure in California." (Opp. 14.) But the allegations Apple cites do not support that claim. (Compl. ¶¶ 45-51.) Those allegations do not even mention California; they broadly assert NSO took advantage of "Apple servers in the United States and abroad." (*Id.* ¶ 51.) Those servers could have been in New York, China, or any other number of places. And even if messages transmitted between foreign

---

[9] The few cases Apple cites overlooked the constitutional implications of its position. (Opp. 14.)

8

countries happened to pass through Apple's California-based servers, that still would not show NSO engaged in any conduct in California. *See Sajfr*, 2012 WL 398991, at *4 (holding UCL did not apply to international telephone calls "rated and billed from San Diego"). NSO does not control which servers Apple messages pass through. (Hulio Decl. ¶ 18.) And "[t]he mere fact that some nexus" to California "exists will not justify regulation of wholly out-of-state" conduct. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018).

Finally, it would not be "premature" to dismiss Apple's UCL claim to the extent it seeks damages, disgorgement, or an extraterritorial injunction. (Opp. 14-15.) Courts regularly dismiss UCL claims to the extent they seek unrecoverable relief. *E.g.*, *Hyp3r Inc. v. Mogimo Inc.*, 2017 WL 11515712, at *2-3, 6 (N.D. Cal. Nov. 8, 2017). The California Supreme Court has made clear that "damages cannot be recovered" under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Neither can "disgorgement of profits," except for "restitution" of money or a benefit given to the defendant by the plaintiff or in which the plaintiff had an "ownership interest." *Id.* The restitution Apple seeks is not for any money or benefits it provided NSO or in which it had an ownership interest. The UCL indisputably does not authorize that relief.

### E.   The Court Should Dismiss Apple's Unjust Enrichment Claim.

Apple's defense of its unjust enrichment claim ignores that it "may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim" unless it "also pleads facts suggesting that the contract may be unenforceable or invalid." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020) (cleaned up). That rule is fatal here because Apple alleges it has "binding and enforceable contracts" with NSO, but it does *not* allege those contracts may be unenforceable or invalid. (Compl. ¶ 87.) Apple's failure to address this point is striking, since in *Brodsky* Apple successfully made the same argument that NSO makes here. The *Brodsky* court agreed with Apple that the plaintiffs' unjust enrichment claim should be dismissed because the complaint did not "suggest[] that" Apple's Terms of Use were "unenforceable or invalid." 445 F. Supp. 3d at 133. The same is true here. *See also Tsai v. Wang*, 2017 WL 2587929, at *8 (N.D. Cal. June 14, 2017) (dismissing unjust enrichment claim because plaintiff did not allege contract "was unenforceable or invalid"); *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*,

2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014) (dismissing unjust enrichment claim where plaintiff "pleaded the existence of enforceable agreements").

Apple also ignores that it does not plead a lack of an adequate legal remedy, which it must do to seek equitable relief. *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Apple's reliance on *In re California Gasoline Spot Market Antitrust Litigation* (Opp. 15) is misplaced because the plaintiffs there "affirmatively allege[d] no alternative remedy at law." 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021). Apple's complaint does *not* allege its claimed damages are inadequate. (Compl. ¶¶ 92-97.)

### III.   CONCLUSION

For the reasons explained here and in NSO's Motion, the Court should dismiss Apple's complaint with prejudice.

Dated:  May 5, 2023                               KING & SPALDING LLP

                                                  By:    /s/Joseph N. Akrotirianakis
                                                         JOSEPH N. AKROTIRIANAKIS

                                                  Attorneys for Defendants
                                                  NSO GROUP TECHNOLOGIES LIMITED
                                                  and Q CYBER TECHNOLOGIES
                                                  LIMITED