1   JOSEPH N. AKROTIRIANAKIS (SBN 197971)
      *jakro@kslaw.com*
2   AARON S. CRAIG (SBN 204741)
      *acraig@kslaw.com*
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1700
4   Los Angeles, CA 90071
    Telephone: (213) 443-4355
5   Facsimile: (213) 443-4310

6   Attorneys for Defendants
    NSO GROUP TECHNOLOGIES LIMITED and
7   Q CYBER TECHNOLOGIES LIMITED

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  APPLE INC.,                          Case No. 3:21-cv-09078-JD

13        Plaintiff,                      Honorable James Donato

14        v.                              **DEFENDANT NSO GROUP
                                          TECHNOLOGIES LTD. AND Q CYBER**
15  NSO GROUP TECHNOLOGIES LIMITED        **TECHNOLOGIES LTD.'S**
    and Q CTBER TECHNOLOGIES LIMITED,     **SUPPLEMENTAL MEMORANDUM IN**
16                                        **SUPPORT OF RENEWED MOTION TO**
          Defendants.                     **DISMISS**
17
                                          **HIGHLY CONFIDENTIAL—**
18                                        **ATTOREYS' EYES ONLY**

19

20                                        Date:  None set
                                          Courtroom:  11
21
                                          Action Filed:  November 23, 2021
22

23

24

25

26

27

28

## I.     INTRODUCTION

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively, "NSO") filed their Renewed Motion to Dismiss on March 10, 2023.  (*See* Dkt No. 48.)   Since that time, several significant events have occurred, all of which support NSO's argument that this litigation should be dismissed under the doctrine of *forum non conveniens*.

*First*, as described in NSO's papers, Israeli export-control laws prohibit NSO from exporting transferring any "defense know how" outside of Israel.  This includes information about NSO's technologies, which are regulated under Israel's Defense Export Control Law ("DECL").  Absent an export license from the Israeli Ministry of Defense, NSO is precluded from sharing information about Pegasus with Apple—and even from sharing such information with its own U.S. litigation counsel.  Since renewing its motion to dismiss, NSO applied to the Israeli Ministry of Defense for an export license, but the license has not yet been granted.  NSO is thus prohibited from producing protected documents in discovery, from conveying information needed to defend itself in this lawsuit to its own U.S. litigation counsel, and from offering testimony in its defense about Pegasus for use outside of Israel.

*Second*, NSO's ability to participate in discovery—and in its own defense—is further limited by ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*Third*, U.S. export laws have created unmanageable practical difficulties and have drastically limited NSO's ability to participate in its own defense.  In 2021, as the Complaint

discusses, the U.S. government placed NSO on a Department of Commerce "Entity List" that precludes individuals or entities from transferring export-controlled items to NSO.  This prevents NSO's counsel of record in this litigation from communicating with NSO about even its own technologies, prevents counsel from disclosing technological information received in discovery to NSO, and prevents NSO from obtaining e-discovery software needed to comply with U.S. discovery obligations.  After the stay in his matter was lifted and NSO renewed its motion to dismiss, King & Spalding applied to the U.S. government for a license that would allow it to represent NSO effectively by discussing technological aspects of the case with NSO.  The U.S. government did not grant the request and returned the application without action.  Similarly, NSO's e-discovery vendor in collateral litigation applied for a license to provide NSO with basic e-discovery software and related technology.  That license application has not been granted.

These recent developments further confirm that this matter should be litigated in Israel, where NSO would not be prohibited from participating in its own defense by Israeli and U.S. export laws.  NSO and Q Cyber therefore respectfully submit this supplemental memorandum in support of their request that this lawsuit be dismissed in favor of proceedings in Israel.

## II.   SUPPLEMENTAL BACKGROUND AND CONTEXT

**A.**   ███████████████████████████████████

The first U.S. lawsuit against NSO was filed on October 19, 2019.  (Declaration of Joseph N. Akrotirianakis ("Akro. Decl.") ¶ 2.)

████████████████████████████████████████████

████████████████████████████████████████████

(Supplemental Declaration of Roy Blecher ("Supp. Blecher Decl.") ¶ 2.) ████████████

████████████████████████████████████████████

████████████████████████████████████████████

(*Id.* ¶ 3 & Exh. A.)[1]  The same day, ███  ███████████████████████████████

███████████████████████████████████ (*Id.* ¶ 4 & Exh. B.) ██████

---

[1] Copies of the materials attached to Mr. Blecher's supplemental declaration were previously provided to the Court under seal on September 11, 2023.  (*See* Dkt. No. 62.)

1 ████████████████████████████████████████████████

2 ██████████████████████ (*Id.* Exh. B at 1.) ███████████████

3 ██████████████████████.[2] (*Id.*) Finally, ████████████████

4 ████████████████████████████████████████████████

5 ████████████████ (*Id.* ¶ 5.)

**B.    The United States Subjects NSO to Export Controls**

On November 4, 2021, the U.S. Department of Commerce restricted certain U.S. exports to NSO. *See* 15 C.F.R. § 744, Supp. 4. The Department's Bureau of Industry and Security ("BIS") entered the "NSO Group" on its Entity List, which prohibits any U.S. entity from exporting items subject to Export Administration Regulations ("EAR") to NSO. *See id.* Under the EAR, "items" include hardware, software, technology, and related technical information that is currently located in—or comes into—the United States. *See id.* §§ 734.3(a)(1), 772.1. BIS may grant licenses authorizing the transfer of items subject to the EAR to NSO, but it indicated that licenses pertaining to NSO would be subject to a presumption of denial. *See id.* § 744, Supp. 4.

**C.    NSO and Its Counsel Have Been Unable to Obtain Licenses Under Israeli or U.S. Law**

In early 2023, after the stay in this matter was lifted, the NSO Defendants and their defense counsel sought export licenses from the Israeli and U.S. governments, respectively.

On February 21, 2023, King & Spalding applied to BIS for an export license. (Akro. Decl. ¶ 3.) The license was intended to permit King & Spalding to discuss the Pegasus software, technology, and related technical information with NSO, as well as similar items and information received from third parties, so that King & Spalding could prepare NSO's defense in this litigation. (*Id.*) The license application was returned without action on April 20, 2023. (*Id.*) Subsequent discussions with BIS have not resulted in a license being granted. (*Id.*)

Similarly, on May 26, 2023, NSO's e-discovery consultant in other U.S. lawsuits involving NSO's Pegasus technology—Deloitte—applied to BIS for a license to provide NSO and Q Cyber

---

[2] ████████████████████████████████████████████████ (Supp. Blecher Decl. ¶ 6.)

with industry-standard e-discovery technology.  (*Id.* ¶ 4.)  Deloitte's application also has not been granted.  (*Id.*)

On June 8, 2023, NSO applied to the Israeli Ministry of Defense ("MoD") for a license to export information relating to Pegasus to the Court, King & Spalding, Apple, and Apple's counsel. (*Id.* ¶ 5.)  To date, the MoD has not granted that license.  (*Id.*)

**D.** ██████████████████████████████

Finally, ████████████████████████████████████████

████ .[3]  (Supp. Blecher Decl. ¶ 7 & Exh. C ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██ ██████████████████████████████████████████

████████████████████████████████████████

These recent developments create additional hurdles that NSO faces in producing evidence that will be exported outside of Israel and in communicating with their counsel of record in this litigation.

[3] ████████████████████████████ (Supp. Blecher Decl. ¶ 7 & Exh. D ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

As relevant here, ████████████████████████

████████████████████████████████████████████

### III.    SUPPLEMENTAL ARGUMENT

In its motion to dismiss, NSO (among other arguments) moved to dismiss Apple's Complaint under the doctrine of *forum non conveniens*.  (Renewed Mot. at 4:25-8:9; Reply at 2:8-5:7.)  That argument is now further supported by NSO's and its counsel's inability to obtain Israeli and U.S. export licenses, combined with ████████████████████████████████████ Those developments (1) cause the private factors to weigh more heavily in favor of dismissal, (2) cause the public factors to weigh more heavily in favor of dismissal, and (3) render any purported forum selection clause unenforceable.  (*See* Reply at 2:8-5:7.)[4]

### A.    Given Recent Developments, the Private Factors Weigh Even More Heavily in Favor of Dismissal

As discussed in NSO's initial briefing, the private factors favor dismissal, including "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." (Mot. at 5:21-26 (quoting *Umeda v. Tesla, Inc.*, 2022 WL 18980, at *1 (9th Cir. Jan. 3, 2022).).  The recent developments described above reinforce the need for dismissal under the relevant private factors.

With respect to the ***third factor***, all of the parties would be deprived of access to critical evidence located in Israel should these claims proceed in California.  As an initial matter, under the ██████████████████████████████████████ ████████████████████████████████████████ ██████ Documents likely to be produced in this litigation may show the identity of NSO's government customers who obtained a license from Israel; Israel's assessment of those customers; any limited information that NSO possesses about its customers' use of Pegasus; and other highly sensitive information.  These materials are directly relevant to significant issues in this case,

---

[4] Apple does not dispute that Israel presents an adequate alternative forum.  (*See* Opp. at 3:10-9:7.)

1   including Apple's allegation that NSO was directly involved in "attacking" various journalists,

2   human rights activists, and others, and that NSO controls Pegasus once installed on Apple devices.

3   (*See, e.g.*, Compl. ¶¶ 41-42.) ███████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████   by U.S. policies favoring public disclosure of court documents

8   and trial exhibits.

9       Furthermore, as discussed in NSO's initial briefing, DECL expressly prohibits Israeli

10   citizens from transferring "defense know how" outside of Israel or to non-Israelis in the absence

11   of a government license.  (Reply at 3:1-20.)  NSO applied for licenses under DECL so that it could

12   participate in discovery and could produce evidence in its defense.  (Akro. Decl. ¶ 5.)  That license

13   application has not been granted, prohibiting NSO from producing broad swaths of documents or

14   witness testimony relating to its operations and to its Pegasus technologies.  In the absence of an

15   export license, this Court's and the parties' access to critical documents and witnesses in Israel

16   will be severely curtailed, and NSO's due process right to defend itself will be impaired.  These

17   same problems would not exist in an Israeli forum, where no export license would be required for

18   NSO, and the ███████████████████████████████████████████████████████████████

19   ██████████████████   because it is comfortable with the ability of Israeli courts to preserve the

20   confidentiality of that testimony.  (*See* Dkt. No. 48-3 ¶ 5.)   As a result, this factor strongly favors

21   dismissal.

22       With respect to the ***fourth factor***, even if Israeli witnesses were eventually compelled to

23   appear for depositions, the lack of an export license prohibits the witnesses from testifying about

24   matters subject to DECL.  The ███████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26       With respect to the ***seventh factor***, additional "practical" concerns favor trial in Israel.

27   Chief among those, NSO was placed on the Department of Commerce's BIS Entity List in late

28   2021.  *See* 15 C.F.R. § 744, Supp. 4.  As a result, all persons—in particular, individuals and entities

in the United States—are prohibited from exporting, re-exporting, or transferring various items to NSO.  *See id.* § 744.11(a).  This includes information about NSO's own proprietary technology.  Indeed, the list of prohibited items includes both "software" and "technology" that currently are located in, or could come into, the United States.  *Id.* §§ 772.1, 734.3(a)(1).  "Technology" is defined broadly to include any "[i]nformation necessary for the 'development,' 'production,' 'use,' operation, installation, maintenance, repair, overhaul, or refurbishing . . . of an item."  *Id.* § 772.1.  There is no exception for technology created and owned by NSO itself.  The practical effect of these regulations is that NSO's U.S. litigation counsel cannot communicate with NSO regarding any of NSO's own technology—the core subject matter of this litigation—or share with NSO any technical discovery received from Apple or third parties.  Exports could be permitted with a license, *id.* § 744.11(a), but King & Spalding's application for a license so that it could defend NSO in this litigation has not been granted.  (*See* Akro. Decl. ¶ 3.)  Even Deloitte, a well-known and respected e-discovery vendor, has not been able to obtain a license to provide NSO with basic e-discovery software.  (*See id.* ¶ 4.)  In this age of electronic discovery, document review and production are all but impossible without e-discovery software.  Accordingly, if this litigation were to proceed in the United States, NSO's counsel would be unable to communicate fully with its clients about the case and its basic subject matter, and NSO would have difficulty meeting its discovery obligations.  That severe prejudice strongly favors dismissal.

In sum, the lack of export licenses and the ███████████████████████████ ██████████████████████████ cause the private factors to weigh even more heavily in favor of dismissal.  Litigating this matter in the United States would effectively prohibit NSO from producing critical evidence (both documents and witnesses) and from assisting its U.S. defense counsel in preparing its defense.  This matter should therefore be dismissed and brought in Israel, an adequate alternative forum, to avoid disproportionate "oppressiveness and vexation" to NSO.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).

**B.     Given Recent Developments, the Public Factors Also Weigh Even More Heavily in Favor of Dismissal**

The issues raised above also cause the public factors to weigh more heavily in favor of

1  dismissal.  The public factors to be considered include "(1) the local interest in the lawsuit, (2) the

2  court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion

3  in the court, and (5) the costs of resolving a dispute unrelated to a particular forum."  (Reply at

4  7:6-10 (quoting *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 12740596, at \*11 (C.D. Cal.

5  Jan. 17, 2020)).)

6  Here, the ███████████████████████████████████████

7  ████████████ speak directly to the ***first factor***.  Israel's interest in this lawsuit far outweighs that

8  of California.  NSO's conduct is closely regulated by the Israeli government. ████████████

9  █████████████████████████████████████████████████

10 █████████████████████████████████████████████████

11 ████████████████████████████ The █████████████████

12 █ Israel's substantial interest in this lawsuit ██████████████████████

13 ████████████████████████ (*See* Opp. at 8:20-9:1.)  Apple cites no ████████ statements

14 or actions by California or by the United States concerning these specific lawsuits.  Accordingly,

15 "the local courts in [Israel] would likely have a greater understanding of the circumstances

16 surrounding the dispute" and a greater interest in the action.  *See Contact Lumber Co. v. P.T.*

17 *Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990).

18 Furthermore, under the ***third factor***, the lack of export licenses and ██████████████

19 ████████ would render the suit burdensome to try—particularly given the sensitivity of the

20 documents, the complications involved in managing discovery under potentially conflicting Israeli

21 and U.S. legal regimes, and California's relatively limited and generic interest in this lawsuit

22 compared to Israel's ██████████████ interest.

23 ## C.    Given Recent Developments, Any Purported Forum Selection Clause Is Not

24 ## Enforceable

25 Finally, even assuming that Apple had offered evidence of NSO agreeing to a forum

26 selection clause (which it did not), enforcing the clause would be "unreasonable under the

27 circumstances."  *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d

28 931, 944 (S.D. Cal. 2019) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

*First*, if the clause were enforced, the cumulative effects of Israeli export restrictions, █████████████████, and U.S. export restrictions would essentially deprive NSO of its day in court.  *See id.* at 947-48.  Without Israeli and U.S. export licenses, NSO and its U.S. litigation counsel are unable to communicate meaningfully about NSO's technology, the core subject matter of this litigation.  Israeli export restrictions ████████████ further limit NSO's ability to produce documentary evidence or witness testimony in its defense.  NSO is thus precluded from participating in, or even mounting, key portions of its own defense.  There is also no dispute that the relevant witnesses are not located in California. *See id.*

*Second*, for the same reasons discussed above, the public factors overwhelmingly disfavor enforcement of the forum selection clause.  *See id.* at 948-49.  There is no "strong local interest" in this dispute, particularly compared to Israel's interests.  *Cf. id.* at 949.  Accommodating those concerns would render any trial unduly burdensome to California given its interest in this litigation is limited and generic.  *Cf. id.* at 949.  As a result, it would be unreasonable in the circumstances to enforce Apple's forum selection clause, even had Apple established that NSO agreed to it in a valid, enforceable contract.

## IV.    CONCLUSION

For the reasons stated in NSO's initial briefing, and in this supplemental memorandum, the Court should dismiss these proceedings in favor of Israeli litigation under the doctrine of *forum non conveniens*.

DATED: October 12, 2023

KING & SPALDING LLP

By: */s/    Joseph N. Akrotirianakis*
    JOSEPH N. AKROTIRIANAKIS
    AARON S. CRAIG

    Attorneys for Defendants NSO GROUP
    TECHNOLOGIES LIMITED and Q
    CYBER TECHNOLOGIES LIMITED