WILMER CUTLER PICKERING
  HALE AND DORR LLP
BENJAMIN A. POWELL (SBN 214728)
  benjamin.powell@wilmerhale.com
DAVID W. BOWKER (SBN 200516)
  david.bowker@wilmerhale.com
WHITNEY RUSSELL (*pro hac vice*)
  whitney.russell@wilmerhale.com
NATALIE BILBROUGH (*pro hac vice*)
  natalie.bilbrough@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

WILMER CUTLER PICKERING
  HALE AND DORR LLP
MARK D. SELWYN (SBN 244180)
  mark.selwyn@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
  allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94301
Telephone: (650) 858-6000

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>    Plaintiff,<br><br>v.<br><br>NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LIMITED,<br><br>    Defendants. | Case No. 3:21-cv-09078-JD<br><br>**PLAINTIFF APPLE INC.'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS**<br><br>Hon. James Donato<br>Date:  None set<br>Courtroom:  11<br><br>Complaint Filed:  November 23, 2021 |

**PUBLIC VERSION OF DOCUMENT FILED UNDER SEAL**

1  None of Defendants' claimed "recent developments" (Dkt. 74 ("Supp. Br.") at 5) helps to meet their heavy burden to obtain dismissal on *forum non conveniens* grounds—and they certainly do not overcome the valid and enforceable forum selection clause to which Defendants agreed or Apple's choice to bring suit in this District, where it is headquartered and has suffered harm.

Defendants' supplemental brief focuses on three things: (1) U.S. export restrictions; (2) Israel export restrictions; and (3) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. As a threshold matter, Defendants merely speculate that their ability to litigate in this Court may be restricted because of any of these "developments." Whether or not export licenses are required for certain documents in this litigation, if at all, is still unknown. It also appears that no export license application has actually been denied. Defendants also overstate the impact of the ▓▓▓▓▓▓▓▓▓▓ on litigating here. They concede that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and they ignore that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Any potential impact of ▓▓▓▓▓▓▓▓▓▓▓▓ can be addressed by the parties—and, if necessary, by this Court—at the appropriate time, in response to specific discovery requests once discovery has begun in this case.

Next, none of these purported "recent developments" affects (much less invalidates) Defendants' agreement to litigate in California when they accepted the forum selection clause. They rely on two grounds to challenge that clause, but their above-mentioned speculative concerns do not satisfy their heavy burden to show either that they would be deprived of their day in court or that any public interest factor favors the exceptional move of transferring this case to Israel.

Last, while the Court need not consider any private interest factors because Defendants agreed to a valid forum selection clause, none of the purported recent developments "strongly favors" disturbing the choice of Apple—a California resident that suffered injury in California—to litigate in its home forum. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). Moreover, to the extent U.S. and Israeli export laws or ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ would restrict

1  Defendants' ability to litigate in this Court, such restrictions would still apply if the case were
2  moved to Israel and likely impose an even greater burden on Apple. As a result, the three private
3  interest factors raised in Defendants' supplemental brief actually favor Apple, not Defendants.
4      The supplementary materials thus do not help Defendants meet their high burden to
5  overcome either the forum selection clause or Apple's choice to litigate in its home forum. The
6  Court should reject Defendants' attempt to hide behind export control restrictions, including those
7  imposed by the United States *due to Defendants' own misconduct* that is the very basis of this suit.
8  Instead, the Court should allow this litigation—by which Apple seeks to hold Defendants to
9  account for cyberattacks in violation of U.S. law—to proceed in this Court.

**I.   DEFENDANTS' PURPORTED "RECENT DEVELOPMENTS" DO NOT JUSTIFY DISREGARDING THE FORUM SELECTION CLAUSE**

    Contrary to Defendants' contention (Supp. Br. at 8), Apple has adequately alleged that Defendants—highly sophisticated companies with international operations and clients—agreed to a forum selection clause in the iCloud Terms when they created Apple IDs. Compl. ¶¶ 11, 46, 86; *see also* Dkt. 50, Apple's Opp. to Defs' Renewed MTD ("Apple's Opp.") at 3 n.3 (citing cases demonstrating that standardized terms of service bind sophisticated parties that voluntarily agree to such terms when they sign up for services).[1] The U.S. Supreme Court has made clear that forum selection clauses are to be "given *controlling weight* in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (emphasis added). Defendants have cited no case where a court refused to enforce a forum selection clause due to export control laws, and they fail to demonstrate that this lawsuit is one of the "most exceptional cases" where a party can evade its agreement to litigate in the agreed-upon forum. *Id.*

    **A.   Defendants Have Not Shown They Will Be Deprived Of Their Day In Court**

Defendants have not shown that ███████████████ or the export laws will deprive them of their "day in court." *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 944 (S.D. Cal. 2019). *First*, Defendants misstate the impact of ███

---

[1] For the purpose of their motion, Defendants do not challenge that "NSO signed the iCloud Terms" or that "the forum-selection clause [is] enforceable." Dkt. 51 ("Defs' MTD Reply") at 2.

1  ▮ on their ability to produce documentary evidence or witness testimony (Supp. Br. 9). Far

2  from showing that ▮

3  ▮ demonstrate ▮

4  ▮ with the need to disclose information in U.S. judicial proceedings.

5  Notably, ▮

6  ▮

7  ▮

8  ▮.

9  *See* Dkt. 62-4, ¶¶ 5-6. ▮

10  ▮

11  ▮

12  ▮

13  ▮ Dkt. 62-5, ¶ 7. ▮

14  ▮

15  ▮

16  ▮

17  ▮ Dkt. 73-4 at Ex. C, ¶ 5. ▮

18  ▮

19  ▮ *Id.* In

20  sum, these ▮ support Apple's—not Defendants'—position and further demonstrate ▮

21  ▮

22  ▮ Defendants'

23  assertions to the contrary are, at best, speculative and premature, as discovery in this case has not

24  started and it is too early to know what (if any) restrictions would apply to discovery in this case.

25      *Second*, Defendants speculate that they and their U.S. litigation counsel would be "unable

26  to communicate meaningfully about NSO's technology" "[w]ithout Israeli and U.S. export

27  licenses." Supp. Br. 9. But they have not shown that Israeli or U.S. export license requirements

28

even apply to any technological information that might be relevant to this case.[2] And to the extent Israel's Defense Export Control Law (DECL) would apply to disclosure in this case, ███████████████████████████████████████████████████ (*supra* 3).

Defendants do not say that any of these licenses has actually been denied. Supp. Br. 3-4, 6 (license application to the U.S. government was either "returned without action" or "has not been granted"; application submitted under DECL "has not been granted"); *see* EAR § 772.1 ("Return Without Action" signifies that a license application is withdrawn, unnecessary or deficient, not that it is denied). Defendants' sole authority confirms that this kind of speculation does not meet their burden to overcome the forum selection clause. *White Knight*, 407 F. Supp. 3d at 948 (enforcing forum selection clause because challenging party "does not provide sufficient allegations to prove that the enforcement of the [] forum selection clause would deprive it of its day in court") (cited at Supp. Br. 8); *accord Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991).

*Third*, Defendants have no basis for their assertion that there are no "relevant witnesses" in California (Supp. Br. 9). Defendants' assertion ignores that Apple is headquartered here, and of course Defendants cannot demonstrate that Apple lacks witnesses in California—where Apple was attacked and suffered injury in this forum (Compl. ¶¶ 15, 54-61). On Defendants' side, contrary to their assertion, discovery in the *WhatsApp* Litigation has revealed that NSO and its affiliate(s) may have witnesses here as well, as they evidently marketed and tested Pegasus products and services in the United States on phones within the United States. *See* Ex. 1 to Declaration of Benjamin A. Powell. Even assuming *arguendo* that Defendants' witnesses are located elsewhere (whom Defendants have failed to identify), U.S. discovery rules provide for such circumstances (Apple's Opp. 7) and thus do not justify depriving a U.S. party of its day in a U.S. court. In a cross-border litigation, the U.S. caselaw is clear that the place of residence of

---

[2] Defendants cite (Supp. Br. 7) section 734.3(a)(1) of the EAR, which provides that "items in the United States" may be "subject to the EAR," but ignore the predicates that not all information constitutes "technology" under the EAR (EAR § 734.3(b)(2), (3)) and that not all technology is subject to the EAR (EAR § 734.3 (b)(3) note). Likewise, as to Deloitte's technology, it is unclear what EAR rationale Defendants intend to put forward to satisfy their burden.

witnesses does not favor either side. *See Cooper v. Tokyo Elec. Power Co.*, 166 F. Supp. 3d 1103, 1133 (S.D. Cal. 2015), *aff'd*, 860 F.3d 1193 (9th Cir. 2017). Moreover, "in this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale." *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015).

### B. Defendants Have Not Shown Any Public Interest Factor Overcomes The Enforceable Forum Selection Clause

The two public interest factors cited in Defendants' supplemental brief (Supp. Br. 9; *id.* at 7-8)—local interest in the lawsuit and the burden on local courts and juries—ignore California's and the United States's overwhelming local interests in this lawsuit and, in any case, fail to overcome the controlling weight of the forum selection clause.

*Local Interest in the Lawsuit.* Defendants focus on Israel's purported "local" interest, but ignore California's and the United States' own local interests, which are overwhelming and controlling. Indeed, this "local interest" factor "ask[s] only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon v. R.J. Reinolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006); *accord Boston Telecmms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009); *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011). In addition, Defendants are wrong in asserting that there are "no ▇ statements or actions by California or by the U.S. concerning these specific lawsuits." Supp. Br. 8. In fact, there are many. For one, California has a compelling interest in adjudicating this dispute as it involves one of its own citizens (Apple) bringing claims under California's unfair competition statute and contract laws. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336-1337 (9th Cir. 1984) (cited at Apple's Opp. 8). The court in the *WhatsApp* Litigation already found a "strong interest in providing an effective means of redress for its residents tort[i]ously injured in California." *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 Supp.3d 649, 677 (N.D. Cal. 2020).

The United States also has a compelling interest in this litigation. The U.S. Congress has expressed its clear interest in opposition to cyber-hacking, for which perpetrators can be held both criminally and civilly liable under the Computer Fraud and Abuse Act. Congressional Res. Serv.,

*Cybercrime and the Law: Computer Fraud and Abuse Act (CFAA) and the 116th Congress* (Sept. 21, 2020), https://tinyurl.com/47stsw4f; *see also Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 785 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) (recognizing U.S. public's "interest in ensuring that computers are not accessed without authorization" with respect to a CFAA claim). The United States has likewise expressed its strong national security interest in the issues at the heart of this lawsuit. The United States added NSO to the Entity List "based on evidence that [it] developed and supplied spyware to foreign governments that used these tools to maliciously target government officials, journalists, businesspeople, activists, academics, and embassy workers" and that the organizations listed on the Entity List are "reasonably believed to be involved, have been involved, or pose a significant risk of being or becoming involved in activities *contrary to the national security or foreign policy interests of the United States*." U.S. Dep't of Comm., *Commerce Adds NSO Group and Other Foreign Companies to Entity List for Malicious Cyber Activities* (Nov. 3, 2021), https://tinyurl.com/445kfvzk (emphasis added); *see also* Compl. ¶ 3 n.1. The President also condemned NSO's cyber hacking activities and issued an Executive Order banning the U.S. Government from using NSO-type commercial spyware due to the "risks to national security." The White House, *Executive Order on Prohibition on Use by the United States Government of Commercial spyware that poses Risks to National Security* (Mar. 27, 2023), https://tinyurl.com/9usc9brs. Thus, unlike the case in which the marine casualty causing the damages occurred in foreign waters, *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1453 (9th Cir. 1990) (Supp. Br. 8), here, the United States and California have clearly articulated strong local interest in holding cyber-hackers like NSO to account for the very type of misconduct that injured Apple here in California and now forms the basis of Apple's lawsuit in this Court.

Indeed, ███████████████████████████████████████████████

███████████████████████████████████████████████████████ (*supra* 3)

—a far cry from asserting an interest that would overcome a local interest or valid contractual obligation to litigate here. Whatever interest Israel may possess does not diminish the

unquestionable interest of California and the United States and is certainly not strong enough to overcome operation of the forum selection clause.

***Burden on Local Courts and Juries.*** Nor does a potential trial burden due to export control restrictions or ▬▬▬ justify dismissal in favor of a suit in Israel. Defendants have articulated only a hypothetical burden based on their speculation regarding pending export license applications. *Supra* 4. Even if some burden existed, "any burden on this Court and the local jury pool would be justified because this case has a significant connection to California," including because it "involves claims brought by a resident of California" under California's unfair competition statute and contract laws. *Bluestar Genomics v. Song*, 2023 WL 4843994, at *30 (N.D. Cal. May 25, 2023); *see also Gates*, 743 F.2d at 1336-1337 (Apple's Opp. 8). Defendants' apparent lack of confidence in this Court to manage discovery and trial (Supp. Br. 8) is unfounded. Courts in this District are well-equipped to handle cross-border discovery, including those involving Israeli parties and national security laws. As Apple has explained, to the extent Israeli law becomes relevant, this Court is fully capable of interpreting foreign law as contemplated by Federal Rule of Civil Procedure 44.1 and navigating discovery issues implicated by the same. Apple's Opp. 7 n.5. Defendants' remaining argument—which cites the various purported difficulties they themselves might encounter if litigating in this forum—has nothing to do with any burden on "local courts and juries."

Given the existence of a valid and enforceable forum selection clause and Defendants' failure to establish that public interest factors disfavor litigating this case here, the Court need not go further to address private interest factors. *White Knight*, 407 F. Supp. 3d at 943 (Supp. Br. 8) ("[A] valid forum selection clause renders the private interest factors irrelevant, thereby leaving the court to consider only the public interest factors" and "[t]he practical result is that forum-selection clauses will almost always control."). In any event, as demonstrated below, Defendants have again failed to demonstrate that the private interest factors justify dismissal.

## II. DEFENDANTS FAIL TO SHOW THE PRIVATE INTEREST FACTORS "STRONGLY FAVOR" ISRAEL

Even if the Court were to consider the private interest factors, the three factors addressed

1  in Defendants' supplemental brief arguably favor Apple and thus do not "strongly favor" dismissal, which Defendants must demonstrate to overcome Apple's choice of forum. *Bluestar*, 2023 WL 4843994, at *31 (neutral factors "do[] not weigh strongly in favor of dismissal").[3]

**Access to Physical Evidence and Other Sources of Proof.** This factor weighs in favor of Apple or is at most neutral. The "recent developments" Defendants rely upon do not prove the parties will be unable to access relevant evidence. ████████████████████████████ ████████████████████████████████████████ *Supra* 3. And it is unknown whether the export laws will have any impact at all on the access to physical evidence as Defendants' license applications remain pending.

In any event, the difficulties asserted by Defendants (Supp. Br. 5-6) would likely exist even if this case were litigated in Israel, and Defendants have failed to show otherwise. *First*, the barriers supposedly imposed by the DECL would remain in place even if the case were moved to Israel. By Defendants' own admission, the DECL prohibits any transfer "to a person who is neither an Israeli citizen or an Israeli resident, or to a foreign corporation." Defs' MTD Reply 3. For this reason, moving this litigation to Israel would not resolve or address the various licensing and other DECL restrictions that Defendants claim to be problematic.

The same is true of ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Dkt. 73-4 at Ex. C, ¶¶ 4-5. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ *Id.* Moving this litigation to Israel is not the solution.

*Second*, contrary to Defendants' assertion (Supp. Br. 8), transferring this litigation to Israel likewise would not solve any of Defendants' asserted difficulties arising from U.S. export control

---

[3] This is why Defendants' authority, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) (cited at Supp. Br. 7), is inapposite because both parties there were foreign companies and "[w]hen the plaintiff's choice is not its home forum …, the presumption in the plaintiff's favor 'applies with less force,'" *id.* at 430.

sanctions against Defendants. Defendants expressly contend that their placement on the Entity List prohibits "any U.S. entity" from exporting certain items to them, including "hardware, software, technology, and related technical information that is currently located in—or comes into—the United States." *Id.* at 3. According to Defendants, the EAR "prevents NSO's counsel of record in this litigation from communicating with NSO about even its own technologies" and "prevents counsel from disclosing technological information received in discovery to NSO." *Id.* at 2, 7. Even if it were true (and it is not, *supra* 4 n.2), the very same restrictions would apply if the litigation were conducted in Israel, because *Apple*—indisputably a "U.S. entity"—could not produce its evidence concerning Defendants' technological exploits directly to Defendants. If anything, the restrictions cited by Defendants would be even less manageable and more burdensome in Israel for Apple, because at least in the U.S., Apple can produce the documents to Defendants' U.S. counsel on an attorneys-eyes-only basis, and Defendants can retain U.S. experts to review those materials as their proxy. Similarly, assuming Deloitte's e-Discovery software is subject to the EAR as Defendants suggest (Supp. Br. 7), the same restriction would still apply if the case were litigated in Israel; whereas if the case stays in this forum, Deloitte can work directly with Defendants' U.S. counsel.

Accordingly, these purported export restrictions are at most neutral, if not favorable for Apple, for the *forum non conveniens* analysis, given that they apply in either forum. *See Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 729 (W.D. Tex. 2008) (in case involving need to obtain export license, noting that "challenges will exist in either forum with respect to the ease of access to sources of proof" and thus "find[ing] that this factor is [in] equipoise between the two fora").

Defendants' arguments are further flawed because they have ignored that at least certain key evidence and witnesses are located here in California. *Supra* 4. Apple—a California plaintiff headquartered in this District—was attacked and suffered injury in this forum and has witnesses and evidence in this forum. *See* Apple's Opp. 5 (citing Compl. ¶¶ 15, 54-61). Thus, dismissal of this case on *forum non conveniens* grounds would be improper for the additional reason that relevant evidence and witnesses are located here, where Apple suffered injury. *See Carijano*, 643

F.3d at 1230 (reversing dismissal when district court "failed to consider how critical such locally-based evidence is to the litigation"); *Salebuild*, 633 F. App'x at 643 (reversing dismissal for failure to consider that injury was suffered in United States, among other factors).

***Whether Unwilling Witnesses Can be Compelled to Testify.*** Defendants speculate that witnesses in Israel may be unwilling or unable to testify as to certain matters covered by the DECL ▮▮▮▮▮▮▮▮▮▮. Supp. Br. 6. This speculation seems unwarranted given that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 73-4 at Ex. C, ¶¶ 4-5 & Ex. D, ¶ 5), but even if it were true, the same potential restrictions would equally apply in a proceeding in Israel as explained (*supra* 8). Again, this factor is at most neutral.

***Other Practical Problems.*** Defendants' supplemental argument stems in part from their placement on the Entity List and the resulting export restrictions imposed by the EAR. Supp. Br. 6-7. As explained above (*supra* 3-4 & n.2), it is unclear whether and how those restrictions will apply in this litigation and what the outcome to Defendants' counsel's and vendor's license applications will be. In addition, it would turn the U.S. export regulations on their head to permit Defendants to use those restrictions to force Apple into a forum where Apple not only may be unable to obtain Defendants' documents, but also could not use its own documents to hold Defendants accountable. Defendants were put on the Entity List because of their own misconduct. It would be unfair to allow Defendants to use the U.S. export restrictions as a shield and claim they would be deprived of their day in a U.S. court. As such, this factor still weighs in favor of Apple.

Even if Defendants' incorrect interpretation of the EAR were adopted, those restrictions would nonetheless exist if the case were litigated in Israel and apply to not only Defendants' document production but also Apple's, thus rendering this factor at most neutral. *See supra* 8.

**III.  CONCLUSION**

Defendants' supplemental brief does not address any remaining public and private interest factors, all of which weigh overwhelmingly in favor of this Court as Apple explained in its original opposition. For the reasons stated above and in Apple's Opposition to Defendants' Renewed Motion to Dismiss (Dkt. 50), the Court should deny Defendants' Renewed Motion to Dismiss.

Dated:  October 19, 2023

WILMER CUTLER PICKERING
 HALE AND DORR LLP

By: */s/ Benjamin A. Powell*
BENJAMIN A. POWELL
*Attorney for Plaintiff Apple Inc.*