# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHATSAPP INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, et al.,<br><br>    Defendants. | Case No. 19-cv-07123-PJH<br><br>**ORDER DENYING MOTION TO DISMISS, MOTION FOR PROTECTIVE ORDER, AND JOINT DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 186, 208, 215, 220, 225 |

Before the court are defendants' NSO Group Technologies, Ltd. and Q Cyber Technologies Ltd. ("defendants") motion to dismiss and motion for protective order. The motions came on for hearing on November 2, 2023. Plaintiffs WhatsApp Inc. and Facebook, Inc. ("plaintiffs") appeared through their counsel, Greg Andres, Craig Cagney, Micah Block, Jeffrey Kopczynski, and Antonio Perez-Marques. Defendants appeared through their counsel, Joseph Akrotirianakis and Aaron Craig. Also before the court is the parties' joint discovery letter brief. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

## BACKGROUND

On October 29, 2019, plaintiffs filed this lawsuit, alleging that defendants sent malware, using WhatsApp's system, to approximately 1,400 mobile phones and devices designed to infect those devices for the purpose of surveilling the users of those phones and devices. Dkt. 1, ¶ 1. The complaint alleges four causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) violation of the California

Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; (3) breach of contract; and (4) trespass to chattels.[1]  The allegations underlying the complaint are set forth in detail in the court's previous order on defendants' motion to dismiss.  See Dkt. 111.

Before the court are defendants' motion for protective order and motion to dismiss for forum non conveniens.  Although the motion for protective order was filed first, the court will first consider the motion to dismiss, because if it is granted it would moot the motion for protective order.

And as an initial matter, as stated at the hearing, the parties' motions to seal (Dkt. 220, 225) are GRANTED.

**DISCUSSION**

A.   Motion to dismiss

  1.   Legal standard

Under the doctrine of forum non conveniens, the district court has discretion to dismiss an action, even if jurisdiction and venue are properly established, when (1) a foreign country also has jurisdiction to hear the case, and either (2) trial in the chosen American forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience; or (3) the chosen American forum is inappropriate because of considerations affecting the court's own administrative and legal problems. See American Dredging Co. v. Miller, 510 U.S. 443, 447-49 and n.2 (1994)

More generally, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)).

Courts employ a two-step analysis in determining whether to dismiss based on

---

[1] The court dismissed plaintiffs' fourth cause of action under Rule 12(b)(6), and no amended complaint was filed.  See Dkt. 111.  That leaves only the first three causes of action as operative claims in this case.

2

forum non conveniens. The defendant must first "satisfy a heavy burden of proof" to establish that there is an adequate alternative forum where the case can be litigated. Lueck, 236 F.3d at 1143; Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n. 22 (1981). Then, the defendant must show that the balance of the applicable private and public factors "is strongly in favor of the defendant." Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir. 1983) (quoting Gulf Oil, 330 U.S. at 508).

Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Lueck, 236 F.3d at 1145 (internal citations omitted).

Courts also consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. Lueck, 236 F.3d at 1147.

2. Legal Analysis

    a. Adequacy of Israel as an alternative forum

The Ninth Circuit has held that the test for determining the adequacy of an alternative forum is "easy to pass," and that "typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'" Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1226 (9th Cir. 2011) (internal citations omitted).

Defendants cite numerous cases in which Israel was determined to be adequate as an alternative forum. See, e.g., Corrie v. Caterpillar, Inc., 403 F.Supp.2d 1019, 2016 (W.D. Wash. 2005) (aff'd 503 F.3d 974 (9th Cir. 2007); Israel Discount Bank Ltd. v. Scnapp, 505 F.Supp.2d 651, 659 (C.D. Cal. 2007) (aff'd sub nom. 321 Fed App'x 700 (9th Cir. 2009)).

3

1    Overall, the court concludes that defendants have provided sufficient authority to
2    conclude that Israel is adequate as an alternative forum.

    b.  Private factors

The court then analyzes the private factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Lueck, 236 F.3d at 1145.

      (1) the residence of the parties and the witnesses

This factor is largely neutral. Plaintiffs and their witnesses are more likely to be located in close proximity to this district, while defendants and their witnesses are more likely to be in Israel. There is some merit to the argument that defendants' witnesses may make up a larger share of the witness group, given that it is defendants' conduct at issue in this case, but this factor overall does not strongly favor either party.

      (2) the forum's convenience to the litigants

This factor is similarly neutral. California is more convenient for the plaintiffs, Israel more convenient for the defendants. This factor does not favor either party.

      (3) access to physical evidence and other sources of proof

Much of the parties' arguments centers around this factor. Defendants argue that litigating in California would restrict the parties' access to evidence, due to Israel's Defense Export Control Law ("DECL") and other Israeli restrictions. See Dkt. 215 at 17-18. Defendants argue that, if the case were to be litigated in Israel, then the DECL's restrictions on exports would no longer be applicable. However, as the court stated at the hearing, defendants have provided no basis for concluding that the other Israeli restrictions would apply with any less force if the case were to be litigated in Israel. In other words, on the record before the court, the Israeli restrictions would impose similar limits on the parties' access to evidence regardless of whether the case is litigated in

4

1 California or in Israel. For that reason, the court finds that this factor does not favor dismissal.

In addition, the parties' papers also make reference to U.S.-based restrictions imposed by the Department of Commerce's Bureau of Industry and Security ("BIS"), placing defendants on an "entity list" to which certain items, including hardware and software, cannot be exported. See, e.g., Dkt. 215 at 11. However, defendants acknowledge that the BIS restrictions require "the same export license in this litigation" that would be needed "in connection with any Israeli proceedings." Dkt. 226 at 12-13. The court agrees that the BIS restrictions would apply equally in either country, as would the aforementioned Israeli restrictions. For that reason, the court concludes that this factor does not support dismissal.

(4) whether unwilling witnesses can be compelled to testify

Defendants argue that "16 of the 23 document custodians are Israelis who are no longer employed by NSO and could not be compelled to testify." Dkt. 215 at 19. Defendants further argue that "the parties would thus be unable to compel the attendance of key trial witnesses or effectively preserve their testimony for presentation at trial." Id.

Plaintiffs respond by arguing that none of the claimed Israeli document custodians were identified in defendants' initial disclosures, and that defendants' motion "fails to explain who those witnesses are, why they are significant witnesses, or why the substance of their testimony could not be covered by a Rule 30(b)(6) deposition by NSO if necessary." Dkt. 221 at 27.

While "[a] defendant need not specify in great detail the contents of each witness's testimony," that defendant "must provide enough information to enable the District Court to balance the parties' interests." Boston Telecom. Group, Inc. v. Wood, 588 F.3d 1201, 1210 (9th Cir. 2009) (citing Piper Aircraft, 454 U.S. at 258). Overall, the court concludes that defendants' arguments regarding unwilling witnesses are largely speculative, and thus this factor is neutral as to dismissal.

5

(5) the cost of bringing witnesses to trial

The court analyzes this factor very similarly to the way it analyzed factors (1) and (2). Plaintiffs incur fewer costs if the trial is in this court, defendants incur fewer costs if it is in Israel. This factor does not favor either party.

(6) the enforceability of the judgment

Defendants argue that any judgment against them would be "more easily enforced in Israel," but provide no reason why a judgment from this court would be less easily enforced. As plaintiffs point out, this court has already concluded that defendants are subject to personal jurisdiction in this court, and thus are bound by the judgments of this court. The court finds that this factor does not favor dismissal.

(7) all other practical problems that make trial of a case easy, expeditious, and inexpensive

Defendants' argument here focuses on the U.S. Department of Commerce's BIS restrictions, which were discussed above in the context of factor (3). However, as stated above, defendants have acknowledged that the BIS restrictions would apply equally regardless of whether the case is litigated in California or in Israel. See Dkt. 226 at 12-13 ("Plaintiffs already need the same export license in this litigation" that they would need "in connection with any Israeli proceedings."). Thus, this factor does not favor dismissal.

    c.    Public factors

The next step is balancing the public factors: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. Lueck, 236 F.3d at 1147.

(1) local interest in the lawsuit

Defendants argue that Israel's interest in the lawsuit "substantially outweighs" local interest. Dkt. 215 at 22-23. Plaintiffs respond by arguing that California has an interest in providing a means of redress to tortiously injured citizens, and that the U.S. public in general has an interest in ensuring online safety and security. Dkt. 221 at 30. The court

concludes that both California and Israel have substantial interests in the lawsuit, and that this factor, at most, slightly favors defendants.

### (2) the court's familiarity with governing law

This case is brought under US federal law and California state law. This court will be far more familiar with the governing law than any Israeli court. In their reply, defendants argue that they "do not necessarily agree that California law applies," but provide no basis for concluding that foreign law should apply, nor do they argue against this court's familiarity with the laws cited in the complaint's causes of action. Accordingly, the court concludes that this factor counsels strongly against dismissal.

### (3) burden on local courts and juries and (4) congestion in the court

Defendants group these factors together, arguing that "this district should not bear the burden of this dispute." Dkt. 215 at 24. Defendants correctly point out the high caseload in this district, but provide no basis for concluding that any court burden or congestion would be decreased if the case were transferred to Israel. Similarly, while defendants invoke "the complications involved in managing discovery under potentially conflicting Israeli and U.S. legal regimes" (see id.), they provide no reason why it would be any less complicated to manage discovery if the case were to proceed in Israel. Moreover, a trial date has already been scheduled in this case for December 2024, and defendants have provided no indication of when a trial would be held in Israel, or whether a trial would be held at all. So, overall, the court finds no basis for concluding that trying the case here would be any more burdensome than in Israel, or that this court is more congested than courts in Israel, and thus concludes this factor is neutral.

### (5) the costs of resolving a dispute unrelated to this forum

Defendants' motion does not mention this factor, and plaintiffs argue that this factor does not apply because there is no "dispute unrelated to this forum." (emphasis added). The court agrees that this factor is inapplicable to the present motion.

Having considered all of the private and public factors, the court concludes that defendants have not met their burden on this motion of "show[ing] that the balance of the

7

1  applicable private and public factors 'is strongly in favor of the defendant[s].'" See
2  Cheng, 708 F.2d at 1410 (quoting Gulf Oil, 330 U.S. at 508). As discussed above, the
3  bulk of the factors are neutral, and the only factor that strongly points in one direction is
4  public factor (2), the court's familiarity with governing law, which strongly cuts against
5  dismissal. Most importantly, while defendants do identify bona fide restrictions that will
6  limit the parties' access to evidence, they provide no basis for concluding that those
7  restrictions would provide less of an obstacle if the case were to proceed in Israel. Thus,
8  for the reasons set forth above, defendants' motion to dismiss based on forum non
9  conveniens is DENIED. Because the motion to dismiss is denied on the merits, the court
10 need not consider plaintiffs' alternative argument that the motion is untimely.

  2. Motion for protective order

  As stated at the hearing, defendants' motion for protective order is DENIED in its present form, which seeks near-total insulation against producing any discovery in this case. Instead, the court finds that the effect of the various U.S. and Israeli restrictions must be analyzed under Richmark Corp. v. Timber Falling Consultants, which sets forth the circumstances under which a foreign defendant should (or should not) be excused from discovery compliance based on foreign laws. See 959 F.2d 1468, 1475 (9th Cir. 1992).

  Specifically, the Richmark court set forth the following factors for a court to consider "in deciding whether or not foreign statutes excuse non-compliance with discovery orders:" (1) the importance to the investigation or litigation of the documents or other information requested, (2) the degree of specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the information, (5) and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. 959 F.2d at 1475.

  As discussed at the hearing, the first two factors are most properly analyzed as

part of a motion to compel responses to specific discovery requests[2], rather than as an anticipatory motion for protective order seeking blanket protection against all discovery requests. However, the third, fourth, and fifth factors can be analyzed on a broader basis, as the relevant arguments apply equally to nearly all of the discovery sought by plaintiffs.

Starting with factor (3), plaintiffs concede that "many of the materials plaintiffs have requested may have originated in Israel," but argue that "a non-U.S. origin is not an absolute bar to production." Dkt. 189 at 28.

As to factor (4), defendants argue that The Hague Convention provides an alternative means of obtaining discovery, while plaintiffs argue that option is "practically unavailable" given the slow and unreliable nature of pursuing discovery through those means. See Dkt. 186 at 21-22, Dkt. 189 at 25-26.

Finally, as to factor (5), the parties' arguments somewhat overlap with the arguments made in connection with defendants' motion to dismiss. Specifically, defendants argue that the existence of the DECL and other Israeli restrictions show that Israel has a strong interest in preventing disclosure, such that it outweighs any U.S. interest.

Considering factors (3), (4), and (5) together, the court concludes that factors (3) and (5) do slightly favor defendants, but not to the extent that they argue. To the extent that plaintiffs are able to identify discovery that is sufficiently specific and important to the asserted claims in this case, the court will not excuse non-production of that discovery.

As to (3), the court agrees with plaintiffs that the foreign origin of discovery is not an absolute bar against production. See, e.g., Richmark, 959 F.2d at 1478 ("The only factors weighing against compelling disclosure are that Beijing has the information in the PRC and may choose not to disclose it in spite of the court's order. Were these factors alone sufficient, a foreign corporation could avoid its discovery obligations in almost every

---

[2] Plaintiffs have moved to compel regarding one discovery request, in the form of a discovery letter brief, which will be discussed below. See Dkt. 208.

9

instance.").

As to (5), while Israel has a demonstrated interest in limiting discovery, the United States has an interest in ensuring online safety and security and that viable claims are fully and fairly litigated. See also, e.g., Richmark, 959 F.2d at 1477 (Foreign state's interest in confidentiality "must be weighed against the United States' interests in vindicating the rights of American plaintiffs and in enforcing the judgments of its courts.").

And as to (4), the court concludes that the cumbersome nature of The Hague Convention's process renders it something less than a true alternative means of seeking discovery in this case. See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig., 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014) ("while these documents are nominally available through Hague Convention procedures, at this stage they may be unavailable as a practical matter.").

Accordingly, to the extent that discovery disputes arise between the parties, the court's analysis will focus on factors (1) and (2), and in instances where the requested discovery is sufficiently important and specific, the court will order compliance with those discovery requests despite the DECL and other Israeli restrictions.

As briefly mentioned above, plaintiffs have moved to compel on one discovery request, in the form of a joint discovery letter brief regarding request for production no. 30. See Dkt. 208. However, the letter brief was filed in August, without the benefit of the court's guidance on this motion, and thus does not focus its arguments on Richmark factors (1) and (2). Accordingly, the discovery letter brief is DENIED without prejudice, and may be re-presented to the court under the streamlined discovery procedure described below.

As discussed at the hearing, the court anticipates that plaintiffs will move to compel responses to certain discovery requests, and that the parties will make arguments as to whether the Richmark factors weigh in favor of ordering compliance or excusing non-compliance. And the court has stated, at the hearing and in this order, that the outcome of any motion to compel will be largely dependent on factors (1) and (2) of

10

the Richmark test.  Thus, to facilitate the efficient resolution of any discovery disputes, the court sets forth the following streamlined briefing schedule for any upcoming motions to compel: the moving party shall file its opening motion, not to exceed fifteen (15) pages; then the opposing party shall file a response within seven (7) days, not to exceed fifteen (15) pages; then the moving party shall have three (3) days to file a reply, not to exceed ten (10) pages.  After briefing is complete, the court will determine whether a hearing is necessary and will set a hearing by videoconference if so.

Alternatively, if the parties do not wish to file sequential briefs and would prefer to file a single joint letter brief, they may do so, with the letter not to exceed ten (10) pages.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Dkt. 215) is DENIED, defendants' motion for protective order (Dkt. 186) is DENIED, the parties' motions to seal (Dkt. 220, 225) are GRANTED, and the joint discovery letter brief (Dkt. 208) is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated:  November 15, 2023

          /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge