WILMER CUTLER PICKERING
  HALE AND DORR LLP
BENJAMIN A. POWELL (SBN 214728)
  benjamin.powell@wilmerhale.com
DAVID W. BOWKER (SBN 200516)
  david.bowker@wilmerhale.com
WHITNEY RUSSELL (*pro hac vice*)
  whitney.russell@wilmerhale.com
2100 Pennsylvania Ave NW
Washington, DC 20037
Telephone: (202) 663-6000

MARK D. SELWYN (SBN 224180)
  mark.selwyn@wilmerhale.com
ALLISON BINGXUE QUE (SBN 324044)
  allison.que@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94301
Telephone: (650) 858-6000

*Attorneys for Plaintiff Apple Inc.*

*Counsel for Defendants listed on signature page*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NSO GROUP TECHNOLOGIES LIMITED, and Q CYBER TECHNOLOGIES LIMITED,<br><br>　　　　　Defendants. | Case No. 3:21-cv-09078-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Hearing Date: May 16, 2024<br>Time: 10:00 am<br>Judge: Hon. James Donato |

Pursuant to Civil Local Rule 16-9, Plaintiff Apple Inc. and Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO") respectfully submit this Joint Case Management Statement.

**1.   Jurisdiction and Service.**  Jurisdiction remains contested; the parties' respective positions are summarized below.  The parties agree that Defendants have waived service.  Dkt. No. 17.

**Apple's Position:**  In denying Defendants' motion to dismiss on *forum non conveniens* grounds, the Court found that it had subject matter jurisdiction over this litigation and that this Court is the proper venue for this action.  *See* Dkt. 87.

Defendants' sovereign immunity defense lacks merit and is foreclosed by the Ninth Circuit's decision in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021). Even if Defendants could claim immunity as a general matter, which they cannot, this Court would still have subject matter jurisdiction because there are well-settled exceptions to sovereign immunity in cases of waiver, commercial activities, and torts in the United States.

Similarly, Defendants' affirmative defense alleging that the Court lacks personal jurisdiction over them lacks merit for two independent reasons.  *First*, Defendants agreed to Apple's iCloud Terms and Conditions ("iCloud Terms"), including a mandatory and enforceable forum selection and exclusive jurisdiction clause that constitutes express consent to this Court's jurisdiction.  *Second*, Defendants purposefully directed their suit-related conduct to both California and the United States and purposefully availed themselves of those forums.

**NSO's Position:**

1.   The Court lacks subject-matter jurisdiction because Defendants are immune under the common-law doctrine of conduct-based immunity. This argument was addressed by the Ninth Circuit in *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 17 F.4th 930 (9th Cir. 2021). That decision settled the law of the Ninth Circuit, but the same questions are presently the subject of appellate proceedings in the Fourth Circuit. *See Khashoggi v. NSO Group Technologies Ltd.*, No. 23-2234 (4th Cir.)  At this time, NSO's position is included here for preservation purposes only.

2. As set forth in their Answer, Defendants reserve the right to challenge personal jurisdiction. All of Apple's jurisdictional allegations—that Defendants agreed to their iCloud terms of service and that Defendants purposefully directed conduct to California and the United States—are fact-based theories requiring additional investigation and discovery. Indeed, the Court itself concluded that "questions of NSO's acceptance of the iCloud terms of service . . . entail disputed issues of fact that cannot be resolved on the current record." (Dkt. No. 87 at 6:7-8.)

3. In accordance with the Court's ruling, Defendants reserve the right to renew their motion to dismiss for *forum non conveniens* should the Israeli legal restrictions and other issues referenced in their Rule 12 briefing restrict their ability meaningfully to defend themselves in this action.

**2.  Facts.**

**Apple's Position:** Defendants NSO Group and Q Cyber are notorious hackers, renowned for their creation, development, and deployment of highly sophisticated and destructive spyware technology. Apple asserts that Defendants designed, developed, tested, deployed, marketed, sold, operated, maintained, and facilitated the use of their technology to maliciously target and harm Apple users, Apple products, and Apple itself. Defendants knowingly sold and facilitated the use of their malware and spyware to enable attacks on a significant number of victims, including journalists, activists, dissidents, and even U.S. citizens. Defendants' misconduct has resulted in the U.S. Government blacklisting NSO Group, and instigated calls around the world for the imposition of additional sanctions and investigations into the pervasive use of Defendants' products to commit human rights abuses and other violations of law. Defendants' misconduct remains ongoing today.

Apple's commitment to protect Apple users with cutting-edge product security and privacy is at the core of its products and services—and one of the reasons why Apple's customers continue to invest in and rely upon Apple's products and services. In light of Apple's formidable security features and defenses, it is very difficult to deploy Defendants' Pegasus spyware on any individual Apple device. Nonetheless, NSO has developed, tested, marketed, sold, deployed, used, and serviced Pegasus to enable targeting of Apple equipment and devices to surveil Apple users,

including human rights advocates and journalists.  Beginning in at least February 2021, Defendants enabled and facilitated the deployment of their Pegasus spyware through an exploit that security researchers named "FORCEDENTRY."  Unlike exploits that require some action by the victim for the victim's device to be compromised, FORCEDENTRY is a "zero-click" exploit, meaning that Defendants and their clients can hack into the victim's device without any action—or awareness—by the victim.

Apple has reason to believe that Defendants created or facilitated the creation of more than one hundred Apple IDs using Apple's systems and servers to deploy FORCEDENTRY.  After obtaining these Apple IDs, Defendants executed or facilitated the execution of the FORCEDENTRY exploit first by using their computers to contact Apple servers in the United States and abroad to identify other Apple devices.  After confirming that a target was using an Apple device, Defendants sent abusive data through Apple servers in the United States and abroad using Apple's iMessage service.  The abusive data disabled logging on a targeted Apple device so that Defendants could surreptitiously deliver the Pegasus payload via a larger file.  That larger file was temporarily stored in an encrypted form unreadable to Apple on one of Apple's iCloud servers in the United States or abroad for delivery to the target.  Once Pegasus was installed, Pegasus began transmitting personal data to a command-and-control server supplied by Defendants and operated by Defendants and/or their clients.  The operator then illegally and without permission extracted and stole private data and issued further commands to the device, including turning on the device's microphone or camera to record, to enable additional unlawful surveillance and extraction of private activities, information, and/or communications.

Defendants' exploitative activities have harmed Apple users and damaged Apple.  Apple has devoted significant resources and thousands of hours to investigate Defendants' attacks, diagnose the extent of the impact and exploitation, and develop and deploy the necessary patches to ensure that Apple servers, products, platforms, and applications remain safe and secure for the more than a billion individuals and entities who comprise the global Apple community.

**NSO's Position:** Defendants are not hackers. NSO is an Israeli defense manufacturer that designs and markets highly regulated cyber technologies to governments and government

agencies. NSO's technologies are sold solely to governments and are used in military, law enforcement and intelligence activities, counterterrorism investigations, and investigations of child exploitation, cartel drug trafficking, and other serious crimes. The market for NSO's technologies exists, in part, because violent criminals and some of the world's most dangerous terrorists use Apple's products and services to commit crimes, while Apple disclaims responsibility and has (in several high-profile cases) refused to cooperate with law enforcement. NSO's technology allows government agencies to prevent crimes that Apple's technology would otherwise facilitate and to bring criminals to justice.

The marketing and export of NSO's Pegasus technology, which is recognized by the State of Israel as a defense technology, is heavily regulated by the Israeli Ministry of Defense. The Ministry of Defense, under the auspices of Israel's Defense Export Control Law, only permits NSO to license Pegasus to governments and government agencies.  The Ministry of Defense further requires NSO's customers to agree—and commit in a government-to-government undertaking—that they (1) will use NSO's Pegasus technology "only for the prevention or investigation of crimes and terrorism and ensure that the [technology] will not be used for human rights violations" and (2) will immediately notify NSO of any misuse.  The Ministry of Defense also prohibits NSO from participating in the operation of any installed Pegasus system, other than to provide technical support.  Defendants can contractually suspend or terminate—and *have* suspended and terminated—service to customers who they learn are engaged in improper use of NSO's technology, such as a use of the technology to violate human rights.

Plaintiffs' allegations about Defendants' conduct are false. Most importantly, Defendants do not operate their technology to surveil devices of third parties. Instead, the technology is operated exclusively by Defendants' government customers, with NSO acting in a purely tech-support capacity at its customers' direction. Defendants do not collect or store any information collected by customers using NSO's technology.

Defendants thus did not target any Apple device user.  To the contrary, Defendants prohibit their customers from using NSO's technology other than to investigate or prosecute suspected

terrorists or criminals. If a government customer ever misused NSO's technology to investigate Apple users other than criminals or terrorists, Defendants would have had no real-time knowledge of that misuse, and it would have been a violation of that government's agreement with NSO. Any installation of technology on the Apple devices of third parties, therefore, was done by Defendants' sovereign customers, not Defendants. And notably, Apple does not claim that Defendants or its customers unlawfully accessed any computer owned by Apple. Apple claims ownership only over its operating system, which is software, not a computer.

**3.  Legal Issues.**

Apple's Legal Issues:

1.  Whether Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a);

2.  Whether Defendants violated California's Business and Professions Code § 17200;

3.  Whether Defendants breached the iCloud Terms;

4.  Whether Defendants' alleged conduct constitutes unjust enrichment of Defendants at Apple's expense;

Defendants' Legal Issues:

5.  Whether Apple's claims are barred because Defendants' conduct was justified;

6.  Whether Apple's claims are barred under the Act of State doctrine and doctrines of international comity;

7.  Whether Apple can assert unjust enrichment as a separate cause of action or seek equitable relief.

The parties reserve the right to identify further legal issues as the case progresses. NSO further reserves the right to raise or renew issues relating to immunity, personal jurisdiction, and *forum non conveniens* as described in Section 1, above.

**4.  Motions.**  The parties anticipate that there will be motions for summary judgment and evidentiary motions. The parties reserve the right to file other motions not identified in this section.

**5.  Amendment of Pleadings.**  Apple has not amended the complaint under Fed. R.

Civ. P. 15(a)(1)(A).  Apple reserves the right to amend its complaint under Fed. R. Civ. P. 15(a)(1)(B), and to seek leave to amend the complaint as needed.  NSO disputes that Apple may amend as a matter of course under Rule 15(a)(1)(B), given that Defendants' Rule 12 motion and their answer were both served more than 21 days ago.

**6.   Evidence Preservation.**   The parties each separately certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.  The parties met and conferred as required by Rule 26(f) on January 31, 2022, and on April 25, 2024, and addressed in detail the requirements to preserve relevant evidence.

**7.   Disclosures.**   The parties have served their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

**8.   Discovery.**   The parties agree that it would be appropriate for the Court to enter a protective order, and intend to file a joint stipulation for the Court's consideration shortly.  On April 30, 2024, Apple provided Defendants with a proposed protective order and a proposed stipulated e-discovery protocol.  Defendants are reviewing Apple's proposals.

**Apple's Position:**  Apple intends to seek documents and testimony from the Defendants regarding, among other things:  Defendants' creation and use of Apple IDs; Defendants' development, testing, marketing, and selling of the FORCEDENTRY exploit and/or Pegasus and other exploits or products targeting Apple servers, equipment, and devices; Defendants' use or deployment of the FORCEDENTRY exploit and/or Pegasus, and any other exploits or products, against Apple servers, equipment, and devices and/or Apple users; Defendants' facilitation of others' use or deployment of the FORCEDENTRY exploit and/or Pegasus, and any other exploits or products, against Apple servers, equipment, and devices and/or Apple users; Defendants' identification of Apple device or operating system vulnerabilities, including the "zero-click" vulnerability; data and information Defendants and their customers obtained from Apple and its users; Defendants' interactions with their clients in connection with the use or deployment of FORCEDENTRY and/or Pegasus, and any other exploits or products, against Apple servers, equipment, and devices and/or Apple users; the identities of Defendants' clients and victims; representations Defendants made concerning FORCEDENTRY and/or Pegasus and/or other

exploits or products; the relationship between NSO Group and Q Cyber; revenue and profits earned from Pegasus and/or other exploits or products; NSO's reported purchase of critical components from the United States; NSO's contacts with U.S.-based clients and potential clients; and financing NSO has received from U.S.-based entities.

**NSO's Position:** Much of the discovery Apple describes is overbroad and includes information that is not relevant to Apple's allegations, information that is not within Defendants' custody or control, or information that Defendants are prohibited from disclosing under applicable law. Once Apple serves discovery requests, Defendants will be better positioned to determine whether they will be able to produce the information Apple describes.

Defendant will seek from Apple information regarding its investigation of the FORCEDENTRY exploit described above, Apple's development and deployment of the computer code that remediated the exploit, and Apple's notification of the affected users.

**9.** **Class Action.** This case is not a class action.

**10.** **Related Cases.** The parties are not aware of any cases that satisfy the standard for relation in L.R. 3-12(a). As the parties have previously informed the Court, NSO is also a party to the action entitled *WhatsApp LLC, et al. v. NSO Group Technologies Limited, et al.*, No. 4:19-cv-7123-PJH (N.D. Cal.), which involves some legal and factual issues that overlap with this case.

**11.** **Relief.**

**Apple's Position:** Apple seeks compensatory damages based on the thousands of hours it spent investigating the attacks, remediating them, and notifying affected users. The formula for calculating those damages includes (but may not be limited to) the total number of hours spent and the value of those hours, which is based on, *inter alia*, the fully-loaded salary expenses for the relevant individuals and the time spent by each individual. The product of this damages formula exceeds the $75,000 minimum for diversity jurisdiction. Apple may rely on expert testimony to calculate the fully-loaded value of those hours. Apple's damages also include hard costs associated with the investigation. Apple provided further detail on its damages computation and supporting evidence in its Initial Disclosures, which it served on March 4, 2022. Apple has continued to sustain damages, which must be added to this computation, because Defendants have continued

their abusive and illegal conduct against Apple.  Apple intends to serve amended initial disclosures reflecting its revised damages computation, and notes that damages will continue to accrue so long as Defendants' wrongful conduct against Apple continues.  Relatedly, Defendants' response to Apple's statement concerning the damages it seeks is inadequate because NSO does not describe the bases on which it contends damages should be calculated if liability is established, as required by this Court's Standing Order for All Judges.

Apple is also seeking punitive damages, an accounting of each Defendant's profits, and disgorgement of the profits associated with Defendants' illegal attacks on Apple, of which the amounts will be informed by discovery.  Apple has suffered additional harms described in the Complaint and also seeks injunctive relief restraining Defendants from accessing and using Apple's products or services; requiring Defendants to identify the location of information obtained from Apple users, to delete that information, and to identify entities with whom Defendants shared that information; and prohibiting Defendants from developing, distributing, using, or enabling others to use malicious software or devices on Apple devices, services, or products.  *See* Compl. 20-21.

**NSO's Position:**  Plaintiffs' statement of the relief sought is inadequate because it does not identify "the amount of any damages sought," as required by this Court's Standing Order for All Judges.  Apple provided some minimal information regarding its damages calculations in its initial disclosures two years ago.  Apple specifically stated, however, that its work was ongoing and that it expected to continue accruing damages.  Apple's position statement above provides no updated figures and Apple has not updated its initial disclosures.  Furthermore, Defendants contend that Apple would not be entitled to most of the damages described in its statement, even if it were successful in proving one or more of its claims.  Apple is also not entitled to the equitable remedy of disgorgement because it alleges it has an adequate legal remedy. Finally, as noted in Defendants' motion to dismiss, the requested injunction described in Apple's complaint seeks relief that only Defendants' government customers can provide.

**12.**  **Settlement and ADR.**  No settlement discussions have occurred.  The parties agree that it may be most efficient to discuss whether and when it may be appropriate for a mediation to

occur with the Court during the case management conference.

13. **Other References.**  This case is not suitable for reference to arbitration, a special master, or the JPML.

14. **Narrowing of Issues.**  The parties do not believe that any issues can be narrowed by agreement at this time.

15. **Scheduling.**  Defendants contend that discovery in this case will be significantly complicated by certain foreign legal obligations, including those described in their sealed filing dated September 11, 2023.  (*See* Dkt. No. 62-1 *et seq.*, and particularly ECF No. 62-7.)  Defendants respectfully submit that it would be impossible for them to produce document discovery within a shorter time frame.  Defendants recognize that the schedule below departs from this Court's usual practice of setting a trial within 18 months of the case management conference, but Defendants' overlapping Israeli legal obligations and the procedures described in Defendants' under-seal filing (Dkt. No. 62-1 *et seq*) justify (and necessitate) such a departure.

| Event | NSO Proposed Deadline |
|---|---|
| Fact discovery cutoff | September 19, 2025 |
| Affirmative expert disclosures | October 20, 2025 |
| Rebuttal expert disclosures | November 17, 2025 |
| Expert discovery cutoff | December 19, 2025 |
| Dispositive motions due no later than | February 5, 2026 |
| Opposition to any dispositive motion due | February 26, 2026 |
| Reply in support of any dispositive motion due | March 12, 2026 |
| *Daubert* motions due no later than | April 2, 2026 |
| Opposition to any *Daubert* motion due | April 23, 2026 |
| Reply in support of any *Daubert* motion due | May 7, 2026 |
| Pretrial conference | June 10, 2026 |
| Jury trial | June 29, 2026 |

To minimize the parties' disputes and prevent one-sided discovery that would be unduly burdensome for Apple, needlessly inefficient, and prejudicial to Apple's ability to obtain information relevant to the claims and defenses in this case, Apple does not oppose NSO's proposed discovery schedule. The parties have agreed to work together on a discovery plan to address Apple's concerns about mutuality and reciprocity of discovery and that discovery does not proceed in a one-sided manner.

16. **Case Management Conference.** Should the Court wish to discuss the details of the proposed schedule, the parties agree that a non-public hearing may be necessary, as there may be a need to discuss the content of purported foreign legal obligations described in Defendants' sealed filings (*see* Dkt. No. 62-1 *et seq.*, ECF No. 62-7).

17. **Trial.** Apple requests a jury trial and the parties estimate that the trial will take two weeks.

18. **Disclosure of Non-Party Interested Entities or Persons.** Both parties have filed disclosures.

19. **Professional Conduct.** All attorneys of record have reviewed the District's Guidelines for Professional Conduct.

Dated: May 9, 2024

WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ Mark D. Selwyn*
MARK D. SELWYN (SBN 224180)

Dated: May 9, 2024

KING & SPALDING LLP

By: */s/ Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS (SBN 197971)
jakro@kslaw.com
AARON S. CRAIG (SBN 204741)
acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
(t) 213-443-4355
(f) 213-443-4310

*Attorneys for Defendants*
NSO GROUP TECHNOLOGIES LIMITED and Q CYBER TECHNOLOGIES LTD

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing. Pursuant to Civil Local Rule 5-1(i), I hereby attest that the other signatories have concurred in this filing.

Dated: May 9, 2024                            By:    /s/  Mark D. Selwyn
                                                              MARK D. SELWYN